## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>                    Defendants. | Court No. \_\_\_\_1:26-cv-1088_____ |

## CLASS ACTION COMPLAINT

1. Freestyle World, Inc. ("Plaintiff") is a U.S.-based importer of merchandise subject to the challenged duties.

2. Beginning in February 2025, through a series of executive orders, President Donald J. Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3. IEEPA does not authorize these tariffs and the IEEPA duties imposed by Defendants, and the underlying executive orders that directed them, are unlawful.

4. As of this filing, over 1,000 businesses have brought individual actions in this Court to recover unlawfully collected IEEPA duties. While the actions have largely been paused pending a ruling from the Supreme Court, Defendant United States Customs and Border Protection ("CBP") has "made very clear" in numerous cases "that it will not object to the court

ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful."[1]

5.      Those lawsuits, however, have left a significant gap as smaller businesses subject to IEEPA duties lack the resources to bring individual lawsuits given that small businesses often operate on thin margins. According the National Small Business Association ("NSBA") President Todd McCracken "[s]mall businesses make up over 99% of U.S. companies, employ nearly half of the private sector workforce, and contribute more than 40% of GDP. Unlike larger firms, small businesses often lack the financial cushion and in-house resources needed to absorb sudden policy shocks like tariffs."

6.      According to NSBA member survey data, some small-business owners say they already are feeling the effects of tariffs, both directly and indirectly. One survey found that about one third of respondents use imported goods in their operations. Small-business owners' concerns are high about increased costs, supply chain disruptions, and general economic instability.

7.      Plaintiff seeks to remedy this gap by bringing this action on behalf of itself and a discrete class of importers whose IEEPA duties payments do not exceed $1,000,000 from February 2025 through the date of the filing of this complaint. The proposed Class excludes any entity that has separately filed an action seeking to recover IEEPA duties.

8.      Plaintiff's proposed Class meets this Court's Rule 23(a) criteria of numerosity, commonality, typicality, and adequacy.  Classwide declaratory relief and injunctive relief requiring the return of all IEEPA duties are appropriate because Defendants have acted, or

---

[1] *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection et al.*, No. 25-255, Slip Op. 25-154 at 2-6 & n.1 (Ct. Int'l Trade Dec. 15, 2025).

3400805.1

refused to act, on grounds that apply generally to the Class. In addition, a class action for small businesses facing identical common issues of law and fact is vastly superior to individual actions seeking less than $1,000,000 that will otherwise clog this Court's docket.

9.      Plaintiff, of behalf itself and the proposed Class, seeks (1) a declaration that the IEEPA duties paid by Plaintiff and Class Members are unlawful; (2) an injunction preventing any future liquidations of tariff payments made under the invalidated executive orders; (3) reliquidation of any IEEPA duties payments that have already been liquidated; (4) refund of all unlawfully levied IEEPA duties payments; and/or (5) any other relief as this Court deems proper. Plaintiff understands that United States Customs and Border Protection has agreed that it will not contest reliquidation and is estopped from doing so. *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection et al.*, No. 25-255, Slip Op. 25-154 at 2-6 & n.1 (Ct. Int'l Trade Dec. 15, 2025).

## **PARTIES**

10.     Plaintiff Freestyle World, Inc. is a U.S. Company headquartered in California and incorporated in the State of Delaware.

11.     Defendant CBP is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

12.     Defendant Rodney S. Scott is the Commissioner of CBP ("Scott") and is sued in his official capacity.

13.     Defendant United States of America ("USA") received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14.     Defendants CBP, Scott, and USA are collectively referred to in this complaint as "CBP".

## JURISDICTION

15.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

16.     The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under Section 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

17.     Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the invalid executive orders, Plaintiff has paid IEEPA duties to the United States and thus have suffered injury caused by those orders. Declaratory relief, injunctive relief, and damages from this Court would redress those injuries.

## GENERAL PLEADINGS

### A.     Executive Orders Implementing the IEEPA Duties

18.     On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders."

19.     The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff

Order"),[2] imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was purportedly based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

20.     The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[3] declared an emergency purportedly because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

21.     Finally, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"), also declared an emergency purportedly because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce."[4] The President's claim of emergency powers was purportedly based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

---

[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

[3] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[4] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

22.     The China Tariff Order imposed an additional 10% ad valorem tariff on products from China imported into the United States on top of existing duties.

23.     Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*. ("February 5 Amendment").[5]

24.     The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China ("March 3 Amendment").[6] The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

25.     On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[7] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

---

[5] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

[6] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[7] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

26.    The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

27.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14,259, 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.[8]

28.    The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025), *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*.[9] Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

29.    In implementing his Executive-Order-based tariff regime, Defendants directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

30.    On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

---

[8] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).
[9] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

31.     In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. By this complaint, however, Plaintiff challenges only those orders the Federal Circuit already held to be unlawful ("Challenged Tariff Orders").

**B.     CBP's Implementation of the IEEPA Duties**

32.     CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

33.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

34.     CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings").

35.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

36.     When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

### C.    Liquidation

37.     "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

38.     Typically, when goods enter (i.e., are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

39.     CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

40.     Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

41.     Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

42.     CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

43.     This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

44.     Once liquidation has occurred, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[10] But not all liquidations can be protested: where CBP acts in a ministerial capacity (i.e., without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

45.     This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

46.     However, as this Court noted in *AGS Company Automotive Solutions v. U.S. Customs and Border Protection et al.*, No. 25-255, Slip Op. 25-154 at 2-6 & n.1 (Ct. Int'l Trade Dec. 15, 2025), CBP has "made very clear" in numerous cases "that it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful." *Id.* at 3 (cleaned up) (collecting government filings). The *AGS* Court further noted that "[j]udicial estoppel would prevent the Government from taking an inconsistent approach after a final result in *V.O.S.*" *Id.* at 5. "Having convinced this court to accept that importers who paid IEEPA tariffs will be able to receive refunds after reliquidation, and having benefited from the court's subsequent conclusion that importers will not experience irreparable harm as a consequence of liquidation, the Government cannot later 'assume a contrary position'

---

[10] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

to argue that refunds are not available after liquidation." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

## FACTUAL ALLEGATIONS

### D. Plaintiff Is a Small Business

47.     According to the Small Business Administration, there are over 33 million small businesses in the United States, which collectively employ over 61.7 million workers (46.4% of private sector employees).[11]

48.     Small businesses comprise approximately 236,045 of the 242,515 U.S.-based importers and account for approximately one-third of the total value of all imported goods.[12]

### E. Plaintiff Paid IEEPA Duties

49.     As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

50.     Plaintiff's imports subject to IEEPA duties entered the United States under new HTSUS codes from foreign countries.

51.     Plaintiff has paid IEEPA duties.

52.     On information and belief, some of the entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have already been liquidated.

53.     On information and belief, many small business owners who are directly harmed by the IEEPA duties are reluctant to assert their rights in individual actions, or to participate publicly in challenges to those policies, because they reasonably fear retaliation by the Trump

---

[11] *See* U.S. Small Business Administration Office of Advocacy, *Frequently Asked Questions* (Mar. 2023), *available at* https://advocacy.sba.gov/wp-content/uploads/2023/03/Frequently-Asked-Questions-About-Small-Business-March-2023-508c.pdf (last accessed Feb. 19, 2026).
[12] *See* U.S. Census Bureau, *A Profile of U.S. Importing and Exporting Companies, 2022-2023* (Apr. 3, 2025), *available at* https://www.census.gov/foreign-trade/Press-Release/edb/edbrel2023.pdf (last accessed Feb. 19, 2026).

3400805.1

Administration. This fear includes concern that federal officials may subject them to heightened

scrutiny in regulatory inspections, audits, licensing, or enforcement actions, or may disadvantage

them in the awarding of federal contracts, loans, or other forms of government assistance, if they

are perceived as opposing or criticizing the Administration's policies. As a result, many small

businesses have forgone pursing their own individual actions to seek refunds of IEEPA duties

payments.

## **CLASS ALLEGATIONS**

54.     The purpose of a class action lawsuit under Rule 23 of the Federal Rules of Civil

Procedure is to provide for the efficient administration of justice.  *See Mississippi ex rel. Hood v.*

*AU Optronics Corp.*, 571 U.S. 161, 165 (2014)*.*

55.     Rule 23 furthers that purpose by "select[ing] the method best suited to

adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Tr.*

*Funds*, 568 U.S. 455, 460 (2013).

56.     Federal courts have considerable discretion in making class certification

decisions, but that discretion must be exercised within the framework of Rule 23.  *See, e.g.*,

*Ackal v. Centennial Beauregard Cellular L.L.C.,* 700 F.3d 212, 215 (5th Cir. 2012).

57.     Federal courts accordingly must conduct a "rigorous analysis" to determine

whether a putative class satisfies Rule 23's requirements.  *Amgen*, 568 U.S. at 465-66.

58.     The Supreme Court has observed that Rule 23's class certification requirements

are "readily met" in cases where, as here, common factual questions necessarily center upon the

defendants' course of conduct*.  Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

59.     Applying these same Rule 23 standards, this Court has certified a class action

under the Court's Rule 23.  *See, e.g., Nat'l Bonded Warehouse Ass'n, Inc. v. United States*, 754 F.

Supp. 874, 880 (Ct. Int'l Trade 1990). Specifically, Judge Jane Restani "certified this litigation as a class action" and ordered a common settlement fund to be distributed on a pro-rata basis to all class members who submitted timely and valid claim forms confirming the amount paid in Customs Services fees. *Id.* at 880-81.

60.     Plaintiff and its counsel seek to bring the same efficient administration of justice to this matter. Without a class action mechanism, the Court could be faced with gross inefficiencies from many thousands of individual actions. Such piecemeal individual cases would also be grossly underinclusive, as many small businesses lack the means and ability to bring individual lawsuits in this Court. Nor is there any indication that the Defendants would voluntarily refund the IEEPA duties payments without Court action.

61.     The many administrative hurdles that individual actions would entail make the class action device superior to individual actions—and distinguish this lawsuit from a prior instance where the Court chose not to certify a Rule 23 class. *See Baxter Healthcare Corp. v. United States*, 925 F. Supp. 794, 799 (Ct. Int'l Trade 1996) (declining to certify a class because "anyone who wishes to recover the [harbor maintenance] tax has the opportunity to seek its recovery in court through procedures established by Congress for that purpose").

62.     Notably, while *Baxter* ultimately declined to certify a class based on the distinguishable facts in that lawsuit, Judge Restani was most troubled by the "the proportionally heavier burden on the small claimant", which the Court found "points in favor of certification in this court." *Id.* at 800. Judge Restani reasoned that Congress may "decide whether to create a special procedure to refund small amounts to individuals who choose not to sue or cannot rely on uncertain administrative relief." *Id.* In this case, however, there is no indication that Congress or

the President will enact any procedure to refund IEEPA duties payments to small businesses without this lawsuit.

63.     Plaintiff therefore brings this lawsuit as a class action on behalf of itself and all other similarly situated individuals as a proposed class under federal law pursuant to Rule 23(a) of the Rules of the U.S. Court of International Trade, as well as subparts (b)(2), (b)(3), and (c)(4).

64.     Plaintiff's proposed class is defined as follows: "All importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025, and February 19, 2026, in the total amount of less than $1,000,000, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments."  Plaintiff reserves the right to amend the definition of the proposed class based on factors including discovery or legal developments.

**F.     Rule 23(a) Is Satisfied**

65.     This action satisfies the commonality, numerosity, typicality, and adequacy requirements of U.S. Court of International Trade Rule 23(a).

**1.     Numerosity**

66.     According to a recent filing by the Department of Justice, "As of December 10, 2025, approximately 34 million entries have been filed by over 301,000 importers that are subject to the IEEPA duties challenged in the Supreme Court." *AGS Company Automotive Solutions et al. v. U.S. Customs and Border Protection et al.*, Consol. Court. No. 25-255, Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction at 6 (Ct. Int'l Trade Dec. 11, 2025) (quoting CBP declaration).

67.     Upon information and belief, Class Members number at least several thousand, thereby exceeding any threshold under which joinder is practical, and are readily ascertainable

from information and records in Defendants' possession, custody, or control, and can readily self-identify;

### 2.    **Commonality**

68.    There are several questions in this case with answers common to the class that will drive the resolution of this case, including the following:

a.    whether the Challenged Tariff Orders are unlawful;

b.    whether CBP may liquidate any duties paid under the Challenged Tariff Orders;

c.    whether CBP must reliquidate any previously liquidated duties paid under the Challenged Tariff Orders; and

d.    whether Class Members are entitled to refund of duties paid under the Challenged Tariff Orders.

### 3.    **Typicality**

69.    The claims of Plaintiff are typical of the claims of Class Members in that Plaintiff, like all Class Members, paid IEEPA duties unlawfully imposed by the Challenged Tariff Orders.

70.    Furthermore, the factual bases of Defendants' misconduct are common to Plaintiff and all Class Members and represent a common thread of misconduct resulting in injury to Plaintiff and all Class Members. In short, the claims of Plaintiff and Class Members are based on the same legal and remedial theories and arise from the same pattern of conduct by Defendants, satisfying the typicality requirement.

### 4.    **Adequate Representation**

71.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has paid IEEPA duties and has therefore been injured by the Challenged Tariff Orders. Plaintiff has retained counsel with substantial experience in prosecuting both (a)

class actions, including large-scale actions involving relief to hundreds of thousands of class members, and (b) mass actions on behalf of thousands of individual claimants.[13]

72.    There is no fundamental conflict of interest between Plaintiff and Class Members.

73.    Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the financial resources to do so. Neither Plaintiff nor its counsel have interests adverse to those of the Class.

**G.    Rule 23(b)(2) Is Satisfied**

74.    Class Members seek declarations that the Challenged Tariff Orders are unlawful and equitable relief in the form of suspension of liquidation of paid tariffs and reliquidation of previously liquidated tariff payments. The requirements of Rule 23(b)(2) of the Rules of the U.S. Court of International Trade are satisfied since the claim for declaratory and injunctive relief is based upon Defendants' common actions, making final declaratory and injunctive relief with respect to the class as a whole appropriate.

75.    This action satisfies the requirements of Rule 23(b)(2), because Defendants have acted on grounds generally applicable to the Class through the imposition and implementation of the Challenged Tariff Orders, receipt of tariff payments, and liquidation of such payments, thereby making appropriate final relief with respect to the Class as a whole.

76.    Plaintiff and Class Members seek, among other relief, equitable remedies and declaratory and injunctive relief with respect to the Class as a whole, as outlined below.

---

[13] *See* Lieff Cabraser Firm Resume, *available at* https://lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf (last accessed Feb. 19, 2026).

3400805.1

### H.    The Requirements of Rule 23(b)(3) and 23(c)(4) Are Satisfied

#### 1.    Predominance and Superiority Are Satisfied

77.    There are numerous questions of law and fact common to Plaintiff and the other Class Members, the answers to which will advance the resolution of the litigation as to all Class Members and which predominate over any individual questions.

78.    Plaintiff and the other Class Members have all suffered harm and damages as a result of the Challenged Tariff Orders. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

79.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. This is so because, even if the unlawfulness of the Challenged Tariff Orders is further confirmed by a Supreme Court ruling, the cost of retaining counsel and filing and litigating complaints is likely to near or exceed the potential recoveries for most Class Members. Absent a class action, Class Members will therefore be left without efficient or effective remedy for the losses caused by the payment of unlawful duties.  Instead, this Court's dockets risk being crowded with individual actions from Plaintiff and Class Members seeking less than $1,000,000.

80.    Class treatment of common questions of law and fact would therefore be a superior method to individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants and will promote consistency and efficiency of adjudication.

81.    In the alternative, there are many particular claims, issues, and common questions of law and fact appropriate for certification for classwide adjudication under Rule 23(c)(4).

## CLAIMS

### COUNT I

**THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES***

82.    Plaintiff incorporates paragraphs 1-81 above by reference.

83.    The Challenged Tariff Orders are unlawful.

84.    The Challenged Tariff Orders are materially identical in structure, authority claimed, and effect. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. Those Tariff Orders exceed the President's statutory authority and are therefore unlawful, *void ab initio*, and without effect as applied to Plaintiff and Class Members.

85.    Plaintiff respectfully requests that this Court apply binding court decisions, declare the Challenged Tariff Orders unlawful as to Plaintiff and Class Members, enjoin Defendants from enforcing them as to Plaintiff and Class Members, and order refund of all IEEPA duties collected from Plaintiff and Class Members, with interest as provided by law.

**COUNT II**

**THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL**

86.    Plaintiff incorporates paragraphs 1-81 above by reference.

87.    In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the IEEPA Tariff Orders must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

88.    77. The United States Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

89.    Under separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that

power. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025). And "[t]he guidance needed is greater . . . when an agency action will affect the entire national economy than when it addresses a narrow, technical issue." *Id.* (quotation marks omitted). IEEPA, despite its vast scope and impact on the economy, provides no such intelligible principle to guide the imposition of tariffs (to the extent it authorizes them in the first place).

90.    Plaintiff therefore seeks a declaration that the IEEPA Tariff Orders are unconstitutional as to Plaintiff and Class Members, enjoin Defendants from enforcing them as to Plaintiff and Class Members, and order refund of all IEEPA duties collected from Plaintiff and Class Members, with interest as provided by law.

## COUNT III

### THE CHALLENGED TARIFF ORDERS VIOLATE THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706

91.    Plaintiff incorporates paragraphs 1-81 above by reference.

92.    The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA authorizes judicial review of "final" agency actions. *Id.* § 704. Courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2).

93.    Defendants' agency actions implementing the Challenged Tariff Orders by modifying the HTSUS or otherwise implementing the Challenged Tariff Orders and collecting tariffs, as set forth in paragraphs B.32-B.36, are "final" agency actions because they finally

"determine" the "rights or obligations" of parties and are backed by "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).

94.    These actions implementing the Challenged Tariff Orders are "in excess of statutory jurisdiction, authority, [and] limitations" because Defendants lack statutory authority to implement, collect, or otherwise demand the payment of tariffs that have not been enacted into law by Congress, have not been duly promulgated pursuant to a lawful delegation from Congress, or have not been authorized by a lawful executive order or proclamation pursuant to a lawful delegation of Congress.

95.    The agency actions modifying the HTSUS explicitly state that they are implementing the Challenged Tariff Orders and cite no other authority—because there is no other authority—for these modifications. Accordingly, these actions fall within Defendants' statutory jurisdiction and authority only to the extent that the Challenged Tariff Orders are themselves lawful. But as discussed above and alleged in Counts I and II, the Challenged Orders are *ultra vires* and unlawful because they exceed the President's authority under IEEPA.

96.    Defendants' agency actions are also "contrary to constitutional right, power, privilege or immunity," *id.* § 706(2)(B), because, as set forth in Count II and incorporated by reference herein, their only purported source of authorization, IEEPA, violates the nondelegation principle and thus Article I, § 1 of the U.S. Constitution.

97.    Plaintiff has suffered injury from Defendants' agency actions in the form of unlawfully imposed tariff payments.

98.    For these reasons, this Court should declare that Defendants' agency actions are "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and "contrary to constitutional right, power, privilege, or immunity," *id.* § 706(2)(B), set the

3400805.1

challenged modifications to the HTSUS aside, and enjoin Defendants and their agents,

employees, and all persons acting under their direction or control from taking any action to

collect any tariffs announced in the Challenged Orders.

## COUNT IV

### REFUND OF UNLAWFULLY IMPOSED TARIFFS, 28 U.S.C. §§ 1581, 2631, 2643

99.     Plaintiff incorporates paragraphs 1-81 above by reference.

100.    28 U.S.C. § 1581(i)(1)(A) states that "the Court of International Trade shall have

exclusive jurisdiction over any civil action commenced against the United States, its agencies, or

its officers, that arises out of any law of the United States providing for revenue from imports or

tonnage." The Federal Circuit has held that a challenge to the Challenged Tariff Orders, by virtue

of their modifying the HTSUS, constitute a civil action that falls within Section 1581(i)(1)(A).

*See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1329 (Fed. Cir. 2025), *cert. granted*, 222 L.

Ed. 2d 1231 (Sept. 9, 2025).

101.    28 USC § 2631(i) provides that "[a]ny civil action of which the Court

of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of

this section, may be commenced in the court by any person adversely affected or aggrieved by

agency action within the meaning of section 702 of title 5."

102.    28 U.S.C. § 2643(a)(1) allows this Court to "enter a money judgment for or

against the United States in any civil action commenced under section 1581 … of this title."

Subsection (c)(1) further provides for "any other form of relief that is appropriate in a civil

action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and

writs of mandamus and prohibition," while 28 U.S.C. § 2644 provides for interest.

103.    Together, these statutory provisions expressly provide a cause of action against the United States by a party whose injury "arises out of any law of the United States providing for revenue from imports," including HTSUS and by extension the Challenged Tariff Orders.

104.    Plaintiff and Class Members, as importers of record, fall within the class of plaintiffs authorized to sue by Section 2631 because they have been adversely affected or aggrieved by agency action, as discussed in Count III (incorporated by reference herein).

105.    In the alternative, 28 U.S.C. §§ 1581, 1631, and 2643 imply a cause of action to collect money damages or any other form of appropriate relief by those who have been adversely affected by agency action relating to the administration of HTSUS.

## COUNT V

## DECLARATORY RELIEF, 28 U.S.C. § 2201

106.    Plaintiff incorporates paragraphs 1-81 above by reference.

107.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

108.    Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

109.    Plaintiff and Class Members are importers of record and have suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods they have imported into the United States.

110.    This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff and Class Members.

3400805.1

## PRAYER FOR RELIEF

111.   Plaintiff respectfully requests that this Court:

   a.     declare that the President lacks authority under IEEPA to set tariffs;

   b.     declare that the Challenged Tariff Orders are *ultra vires* and *void ab initio* with respect to Plaintiff and Class Members;

   c.     declare that, with respect to Plaintiff and Class Members, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

   d.     with respect to Plaintiff and Class Members, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

   e.     order the United States to refund to Plaintiff and Class Members the IEEPA duties collected on those entries, with interest as provided by law;

   f.     award Plaintiff and Class Members their reasonable costs, including attorneys' fees, incurred in bringing this action; and

   g.     grant such further relief as this Court deems proper.

3400805.1

Dated:  February 19, 2026   Respectfully submitted,


By: */s/ Daniel M. Hutchinson*
  Daniel M. Hutchinson

Elizabeth J. Cabraser
ecabraser@lchb.com
Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Nicholas Diamand
ndiamand@lchb.com
Lucas Issacharoff
lissacharoff@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Joel B. Young
jby@tidricklaw.com
THE TIDRICK LAW FIRM LLP
1990 N. California Blvd., 8th Floor
Walnut Creek, CA 94596
Telephone:  (510) 788-5100

*Attorneys for Plaintiff and the Proposed Class*

3400805.1

**CERTIFICATE OF SERVICE**

***Freestyle World, Inc. v. United States Customs and Border Protection et al***

**CIT Case No. 1:26-cv-1088**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on February 19, 2026, I served a copy of the Summons, Class Action Complaint, Form 5, Form 11s, and Form 13 by certified mail, return receipt requested, upon the following:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice 26
Federal Plaza
New York, NY 10278

Attorney-In-Charge Office
of Chief Counsel
U.S. Customs and Border Protection 1300
Pennsylvania Ave., NW Washington, DC
20229

Attorney-In-Charge Commercial
Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson

3400805.1