**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>             Defendants. | Court No. 26-01088 |

**FREESTYLE WORLD INC.'S MOTION TO LIFT THE STAY
AND FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Plaintiff Freestyle World, Inc. respectfully requests that the Court lift the stay in this case

and, in accordance with Rule 23 of the Rules of the United States Court of International Trade,

Plaintiff moves for an order certifying the following class under Rule 23(b)(2):

> All importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025 and February 19, 2026, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments.

Plaintiff further requests that the Court appoint the undersigned counsel as Class Counsel,

pursuant to Rules 23(a)(4) and (g). In support of this motion, Plaintiff submits the accompanying

memorandum of law.

-1-

**CONFIDENTIAL ATTORNEY WORK PRODUCT**
**NOT FOR DISTRIBUTION**

Dated: June 23, 2026                    Respectfully submitted,


By: */s/ Lawrence M. Friedman*

Lawrence M. Friedman[1]
lfriedman@barnesrichardson.com
BARNES, RICHARDSON & COLBURN, LLP
303 East Wacker Drive, Suite 305
Chicago, IL 60601
Telephone: 312.297.9554

Elizabeth J. Cabraser
ecabraser@lchb.com
Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Nicholas Diamand
ndiamand@lchb.com
Lucas Issacharoff
lissacharoff@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Joel B. Young
jby@tidricklaw.com
THE TIDRICK LAW FIRM LLP
1990 N. California Blvd., 8th Floor
Walnut Creek, CA 94596
Telephone: 510.788.5100

---

[1] Counsel filed a notice of appearance in this case for the purpose of joining the instant motion. To the extent necessary, Plaintiff requests that the stay imposed by Administrative Order 25-02 be lifted *nunc pro tunc* to allow Mr. Friedman's notice of appearance. *See* ECF No. 11.

**CONFIDENTIAL ATTORNEY WORK PRODUCT**
**NOT FOR DISTRIBUTION**

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated, | |
| Plaintiff, | |
| v. | Court No. 26-01088 |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, | |
| Defendants. | |

**FREESTYLE WORLD INC.'S MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION TO LIFT THE STAY AND**
**FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     THE CLASS ACTION MECHANISM. ....................................................................... 7

III.    BACKGROUND ......................................................................................................... 9

IV.     ARGUMENT ............................................................................................................. 11

        A.      The Proposed IEEPA Importer Class Definition. ................................................ 13

        B.      Plaintiff Satisfies the Rule 23(a) Factors. ........................................................... 13

                1.      The Proposed Class Is Sufficiently Numerous (Rule 23(a)(1)). .............. 13

                2.      There Are Common Questions of Law and Fact (Rule 23(a)(2)). ........... 14

                3.      Plaintiff's Claims Are Typical of the Class (Rule 23(a)(3)). ................... 15

                4.      Plaintiff and Proposed Class Counsel Will Adequately Represent
                        the Class (Rule 23(a)(4)). ........................................................................ 16

        C.      Plaintiff Satisfies Rule 23(b)(2). ........................................................................ 17

        D.      In the Alternative, Plaintiff Satisfies Rule 23(b)(3). ........................................... 20

V.      PROPOSED CLASS COUNSEL SHOULD BE APPOINTED UNDER RULE
        23(G). ....................................................................................................................... 22

        A.      Barnes Richardson Has the Requisite Experience and Has Contributed to
                the Litigation. ...................................................................................................... 22

        B.      Lieff Cabraser Has the Requisite Experience and Has Contributed to the
                Litigation. ............................................................................................................ 23

VI.     THERE IS GOOD CAUSE TO LIFT THE STAY. ...................................................... 26

VII.    CONCLUSION ......................................................................................................... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windso*r,
  521 U.S. 591 (1997)...................................................................................................7, 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)........................................................................................................7

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) .......................................................................................15

*Baxter Healthcare Corp. v. United States*,
  20 C.I.T. 552, 925 F. Supp. 794 (1996) ............................................................ *passim*

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015)..............................................................................................8

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)..........................................................................................15

*Coreas v. Bounds*,
  No. CV TDC-20-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020) ......................15

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..................................................................................16

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ........................................................................................15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..........................................................................................................8

*Fulton Dental, LLC v. Bisco, Inc.*,
  860 F.3d 541 (7th Cir. 2017) ........................................................................................21

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)........................................................................................................15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................................16

*Hynix Semiconductor Am., Inc. v. United States*,
  30 C.I.T. 103, 414 F. Supp. 2d 1317 (2006)..................................................................1

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Jackson v. Am. Elec. Warfare Assocs., Inc.*,
    No. CV TDC-22-1456, 2024 WL 556230 (D. Md. Feb. 12, 2024) ...........................................8

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    702 F.3d 364 (7th Cir. 2012) ...............................................................................................20

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)..................................................................................................16

*In re Juul Labs Mktg. Sales Practices & Prods. Liab. Litig.*,
    20-cv-8177 (N.D. Cal.) .........................................................................................................25

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ...........................................................................................7

*Learning Resources, Inc. v. Trump*,
    607 U.S. 229 (2026)..............................................................................................2, 7, 9, 20

*McMillan v. Kansas City Life Ins. Co.*,
    762 F. Supp. 3d 443 (D. Md. 2025).....................................................................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................................11

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
    237 F.R.D. 551 (D. Md. 2006)..............................................................................................15

*Nat'l Bonded Warehouse Ass'n v. United States*,
    14 C.I.T. 856, 754 F. Supp. 874 (1990) ...........................................................................2, 12

*Priddy v. Health Care Serv. Corp.*,
    870 F.3d 657 (7th Cir. 2017) ...............................................................................................15

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................................................13

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..............................................................................................16

*Scholl v. Mnuchin*,
    489 F. Supp. 3d 1008 (N.D. Cal. 2020) ....................................................................18, 19, 20

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Smart Techs., Inc. S'holder Litig.*,
 295 F.R.D. 50 (S.D.N.Y. 2013) ................................................................................15

*Sprague v. Gen. Motors Corp.*,
 133 F.3d 388 (6th Cir. 1998) (en banc) ...................................................................16

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025)...................................................................................5, 6, 26

*U.S. Shoe Corp. v. United States*,
 19 C.I.T. 1413, 924 F. Supp. 1191 (1995) ...............................................................18

*Vazquez Perez v. Decker*,
 No. 18-CV-10683 (AJN), 2020 WL 7028637 (S.D.N.Y. Nov. 30, 2020)...............................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 No. MDL 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017) .........................24

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)................................................................................... *passim*

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) ................................................................................16

*Yates v. NewRez LLC*,
 686 F. Supp. 3d 397 (D. Md. 2023) ........................................................................17

**Court Rules**

Rule 23 ............................................................................................1, 7, 8, 12, 14

Rule 23(a)....................................................................................8, 11, 12, 13, 18, 21

Rule 23(a)(1) .................................................................................................13

Rule 23(a)(2) .................................................................................................14

Rule 23(a)(3) .................................................................................................15

Rule 23(a)(4) ...........................................................................................16, 17, 22

Rule 23(b)(2)................................................................................................. *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Rule 23(b)(3)........................................................................................................................20, 21

Rule 23(c)(1)(B)..........................................................................................................................22

Rule 23(g) .............................................................................................................................1, 22

Rule 23(g)(1)...............................................................................................................................25

Rule 23(g)(1)(A)(i)–(iv)..............................................................................................................22

Rule 24(b) ...................................................................................................................................23

**Regulations**

*Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That
    Contribute to Large and Persistent Annual United States Goods Trade
    Deficits*, Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025) ......................................1

*Third Circuit Task Force Report Selection of Class Counsel*, 208 F.R.D. 340, 348
    (2002).........................................................................................................................................5

Plaintiff Freestyle World, Inc. ("Freestyle World" or "Plaintiff") hereby submits this memorandum of law in support of its motion to lift the stay in *Freestyle World, Inc. v. U.S. Customs & Border Protection, et al.*, Court No. 26-01088 ("*Freestyle World*"), to certify the proposed IEEPA Importer Class, and to appoint Plaintiff and its counsel to represent the Class, pursuant to C.I.T. Rules 23(a), (b)(2), and (g).[2]

## I.    <u>INTRODUCTION</u>

Almost immediately after the 2025 inauguration, President Trump declared national emergencies and unilaterally imposed tariffs, wielding the International Emergency Economic Powers Act ("IEEPA") in a manner no president had done before. After imposing tariffs on goods from Mexico, Canada, and China in February, on April 2, 2025, he announced sweeping tariffs on almost *all goods* entering the U.S. from *every country* around the world, compounding already existing tariffs. *See Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025). Since then, the President has repeatedly insisted that foreign companies and countries would bear the cost of the IEEPA tariffs. But that is not and could not be true: U.S. Customs and Border Protection ("CBP") bills the U.S. importer for those tariffs directly, and it is the U.S. importers (including non-resident importers) that must pay the tab. This Court found, and the Supreme Court affirmed earlier this year, that Congress did not authorize the IEEPA tariffs.

---

[2] "USCIT Rule 23 is essentially the same as" Federal Rule of Civil Procedure 23. *Baxter Healthcare Corp. v. United States*, 20 C.I.T. 552, 554 n.4, 925 F. Supp. 794, 797 n.4 (1996). *See also Hynix Semiconductor Am., Inc. v. United States*, 30 C.I.T. 103, 108 n.7, 414 F. Supp. 2d 1317, 1323 n.7 (2006) ("When the Court's rules are materially the same as the [Federal Rules of Civil Procedure ("FRCP")], the Court has found it appropriate to consider decisions and commentary on the FRCP in interpreting its own rules." (citation omitted)).

Now, this Court has the unparalleled task of overseeing the complete return of IEEPA payments, consistent with the Supreme Court's ruling in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). As the Court has acknowledged, "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. U.S. Customs & Border Protection* ("*Atmus Filtration*"), Court No. 26-01259, ECF No. 29 at 1 (the "March 5 Amended Order"). With this in mind, Plaintiff, represented by leading customs counsel and class counsel,[3] respectfully requests that the Court certify a class of importers as the CIT has done before in *Nat'l Bonded Warehouse Ass'n v. United States*, 14 C.I.T. 856, 754 F. Supp. 874 (1990) (approving settlement after class certification), and facilitate a comprehensive notice plan to ensure that all importers—including those "who have not filed suit," *Atmus Filtration*, ECF No. 29 at 1—be provided the benefit of *Learning Resources* and the Court's March 5 Amended Order, and to effectuate a remedy available to all those who paid the illegally imposed duties. Plaintiff seeks certification of a Rule 23(b)(2) injunctive relief class defined as and consisting of:

> All importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025 and February 19, 2026, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments.

Absent class certification, there is no means by which the Court can ensure complete relief. Consistent with the Court's order, CBP established and began administering the Consolidated Administration and Processing of Entries ("CAPE"), through which refunds are being processed and returned to importers. However, as the Court acknowledged:

---

[3] Barnes, Richardson & Colburn, LLP ("Barnes Richardson"), Lieff Cabraser Heimann & Bernstein LLP ("Lieff Cabraser") (collectively, "Class Counsel"), and The Tidrick Law Firm LLP ("Tidrick").

[T]here are billions of dollars of duties that currently cannot be processed by the CAPE program but still must be refunded. It is understood that most of the refunds that have been processed so far have gone to large importers, not small.

**To date, Customs has not proposed a method for complying with the court's order to refund all of the unlawfully collected duties, including those owing to small importers.**

*V.O.S. Selections, Inc. v. U.S. Customs & Border Protection* ("*V.O.S. Selections*"), Court No. 25-00066, ECF No. 89 at 1 (emphasis added). Indeed CBP itself has acknowledged that refunding duties paid on some categories of entries may require "***an alternative approach***." *V.O.S. Selections*, ECF No. 98-1 (June 4, 2026 Thomas Declaration) ¶ 13 (emphasis added).

Plaintiff Freestyle World, a small, California-based importer that has not received a full refund through CAPE, brought this putative class action to ensure the Court can eliminate any gap left by the thousands of individual lawsuits and CAPE claims. Small importers constitute approximately 97% of the importer population. Declaration of Nicholas Diamand ("Diamand Decl.") Ex. A.[4] The Declaration of Executive Assistant Commissioner Susan S. Thomas, provided to the Court in advance of the June 9, 2026 hearing (the "June 9 Hearing"), states that in 2022, CBP found that between 86.4% and 96.4% of importers are small importers. *V.O.S. Selections*, ECF No. 98-1 (June 4, 2026 Thomas Declaration) ¶ 15 n.1. In her answers to the Court's questions during the June 9 Hearing, EAC Thomas noted that 40% of the 85,000 importers who have made CAPE claims have fewer than 20 entries "on file." June 9 Hearing at 32:45, *V.O.S. Selections*.[5] Assuming "on file" means "submitted to CAPE," this statistic leaves a

---

[4] *See* U.S. Census Bureau, *A Profile of U.S. Importing and Exporting Companies, 2022-2023* (Apr. 3, 2025), https://www.census.gov/foreign-trade/Press-Release/edb/edbrel2023.pdf.

[5] The audio recording of the June 9 Hearing is available at: https://www.cit.uscourts.gov/sites/cit/files/20260609_25-00066_RKE.mp3.

significant gap between the 40% of the smallest of importers making claims and the approximately 90% of all importers classified as "small" in the 2022 study.

Smaller businesses subject to IEEPA duties face formidable barriers to accessing the CAPE system, including the lack of access to the Automated Commercial Environment ("ACE"), long wait-times for support, and other concerns the Court expressed in its April 28, 2026 order. *Euro-Notions Florida, Inc. v. United States* ("*Euro-Notions*"), Court No. 25-00595, ECF No. 27; *see also V.O.S. Selections*, ECF No. 98-1 (June 4, 2026 Thomas Declaration) ¶ 13 (identifying "entries not filed in ACE" as a category of entries "for which IEEPA duty refunds still need to be addressed"). Moreover, potential claimants do not have access to clear and digestible information, and may lack independent counsel to ensure the efficient administration of the refund process promised by this Court. *See* ECF No. 4 (Class Action Complaint, "Compl.") at ¶¶ 5–9 & 54–64. The current system also leaves small, less sophisticated, non-English speaking, and other importers vulnerable to customs brokers seeking to generate commercial gain from the refund process. Reportedly, some brokers are seeking a 10–15% cut of recovered duties to process CAPE submissions; but as Peter Mento, Director of Global Trade Advisory Services at Baker Tilly, explained, they cannot provide "judgment, accountability, and someone who is actually standing behind the numbers." *See* Diamand Decl. Ex. B.[6] Among other issues, this illustrates the practical and procedural imperative for proposed Class Counsel to provide clear, easy-to-digest, and accessible notice.

Class action jurisprudence, procedure, and practice are designed to tackle and resolve the issues that unrepresented entities confront when seeking refunds and within these settlement

---

[6] Alexander Whiteman, *Customs brokers eyeing 10% to 15% of US tariff refunds, claim*, The Loadstar (Apr. 17, 2026), https://theloadstar.com/customs-brokers-eyeing-10-to-15-of-us-tariff-refunds-claim/.

negotiations. The Supreme Court already decided the merits in favor of all importers that paid

IEEPA tariffs and, while remaining within the statutory requirements, the claims process should

not unreasonably prevent access to the undisputed remedy. As described more fully below,

proposed Class Counsel seek to serve the Court and the parties by providing corrective solutions

to ongoing notice and due process concerns. *See* Diamand Decl. ¶¶ 5–6. Plaintiff and proposed

Class Counsel are committed to crafting a user-friendly and cost-effective way to obtain the

refunds unrepresented importers are owed, and to do so with the accountability they deserve.

The most efficacious proposal to ensure compliance with the Court's March 5 Amended

Order is certification of an injunctive relief class and appointment of proposed Class Counsel,

who bear the primary responsibility "to work diligently to maximize class recovery." *Third

Circuit Task Force Report Selection of Class Counsel*, 208 F.R.D. 340, 348 (2002). Though

participants in ongoing settlement conferences are acting diligently, none has the legal obligation

to maximize recovery for *all* importers, including the unrepresented. By appointing proposed

Class Counsel to represent the IEEPA Importer Class, the Court can be assured that Class

Counsel has this legal duty to the importers at large. The streamlined settlement procedure

provided by a Rule 23(b)(2) injunctive relief class will not only benefit all proposed Class

Members, but also advantages Defendants, American taxpayers, and judicial economy by

avoiding the costs of duplicative litigation and appeals.

Moreover, a Rule 23(b)(2) injunctive relief class avoids issues as to the application of

*Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025). The Government argues that this Court lacks

power to compel CBP to provide relief to parties not presently before it. *See In re United States

of America*, 26-144, ECF No. 2 (Fed. Cir. June 2, 2026) ("*V.O.S. Selections* Mandamus Pet'n")

at 30–33 (discussing effect of *CASA*, 606 U.S. 831); *see also V.O.S. Selections, Inc. v. Trump*,

26-1895, ECF No. 6 (Fed. Cir. June 12, 2026) (raising on appeal "[w]hether the Court of International Trade erred in issuing a universal injunction requiring the government to refund tariffs"). But any such concern would be mooted because a Rule 23(b)(2) class, by its very nature, transforms those non-parties into absent class members represented by counsel before the Court. Thus, regardless of whether *Trump v. CASA* applies, the Court can achieve the complete relief intended by the March 5 Amended Order and do so without having to wait for decisions on the *V.O.S. Selections* appeal.

Further, there are key benefits to appointing proposed Class Counsel with demonstrated expertise in managing complex class actions in addition to tariff, trade, and customs law. Lieff Cabraser is well-versed in negotiating and implementing successful mass-recovery programs with the federal government, representing classes of hundreds of thousands of impacted consumers, crafting and overseeing comprehensive notice programs, and zealously advancing and protecting the fulsome recovery paid to those consumers. Of particular relevance here, in two recent multi-billion dollar settlements in which Lieff Cabraser served as lead or co-lead counsel, settlement claims rates exceeded 90% of each consumer class. Diamand Decl. ¶ 25. Together, proposed Class Counsel are best equipped to "fairly, effectively, and efficiently represent the interests of all plaintiffs" through organized structures that provide "direction, oversight, and coordination." *See, e.g.*, *In re: Camp Lejeune Water Litig.*, 23-cv-897, ECF No. 10 (E.D.N.C. July 19, 2023) (discussing co-lead counsel duties in litigation of approximately 400,000 consolidated claims); *see* Diamand Decl. ¶¶ 9–25 & Ex. C.

Because certification of a Rule 23(b)(2) class would provide substantial progress toward resolution of this litigation and result in broader relief consistent with this Court's order, there is good cause to lift the stay in this matter. And, as discussed in Section VI, lifting the stay will

provide smaller importers representation in ongoing proceedings that necessarily affect their legal interests.

## II.    THE CLASS ACTION MECHANISM.

As EAC Thomas explained at the June 9 Hearing, CBP is tasked with a "historic" and "unprecedented" undertaking: to refund over $166 billion worth of IEEPA duties collected. June 9 Hearing at 21:03–21:25, *V.O.S. Selections*. This produces "serious practical consequences," including "how[ ] the Government should go about returning the billions of dollars that it has collected from importers." *Learning Resources*, 607 U.S. at 236 (Kavanaugh, J., dissenting). Notably absent from the Declarations of Executive Director of Trade Programs Directorate Brandon Lord (the "**Lord Declarations**") is any clear commitment from the United States to use its resources and data to individually notify all potential claimants of the availability of refunds. This is particularly concerning for non-ACE imports (including, for example, postal imports and non-English speaking importers).

The situation itself may be unprecedented, but courts have long managed and resolved complex, administratively challenging distributions of funds, and they have done so through the use of class actions. Indeed, class certification is a procedural tool to enable the Court to "select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). As the Supreme Court held, the class action mechanism is, at its core, "a means of coping with claims too numerous to secure their 'just, speedy, and inexpensive determination' one by one." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617–18 (1997). "Rule 23 class actions are designed to promote efficiency and economy of litigation . . . without sacrificing procedural fairness." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 527–28 (E.D.N.Y. 2017). Guided by these principles, Plaintiff seeks to

certify a class in this matter to complement the processes already established by the Government, and to expand and bolster the efficient and procedurally fair return of refunds.

"[A] decision to certify a class is based on whether or not a putative class satisfies the Rule 23 factors, not on a preliminary assessment of the underlying merits of the claim." *Jackson v. Am. Elec. Warfare Assocs., Inc.*, No. CV TDC-22-1456, 2024 WL 556230, at *3 (D. Md. Feb. 12, 2024) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). As discussed below, Plaintiff is a prototypical class representative, and its selected counsel likewise indisputably meet the requisite criteria.

A plaintiff seeking class certification must satisfy two inquiries. *First*, Plaintiff must demonstrate the "prerequisite" elements: (1) the class is so numerous that joinder of all members is impracticable ("**numerosity**"); (2) there are questions of law or fact common to the class ("**commonality**"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("**typicality**"); and (4) the representative parties will fairly and adequately protect the interests of the class ("**adequacy**"). C.I.T. Rule 23(a). The class should also be "defined by objective criteria that are administratively feasible" and "establish [ ] definite boundaries." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015) (explaining that a class is not ascertainable where there is an "ever-changing composition of the membership" that "would make determining the identity of [class members] impossible").

*Second*, to certify an injunctive relief class, Plaintiff must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." C.I.T. Rule 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the . . . remedy warranted." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation omitted).

Notably, "opt out rights are not required in (b)(2) class actions." 2 Newberg and Rubenstein on Class Actions § 4:36 (6th ed.).

## III.    BACKGROUND

On February 20, 2026, the Supreme Court invalidated the IEEPA tariffs issued in 2025 via myriad Presidential executive orders. *Learning Resources*, 607 U.S. 229 (2026). Shortly thereafter, IEEPA refund litigation was consolidated before this Court to ensure the streamlined and consistent disposition of these matters. *See Atmus Filtration*, ECF No. 29 at 2. The Court promptly directed CBP to initiate a process of refunding the paid tariffs. *Id.* Specifically, the Court ordered CBP:

> 1. "'with respect to any and all unliquidated entries that were entered subject to the IEEPA duties … to liquidate those entries without regard to the IEEPA duties' and that '[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties'";
>
> 2. "to proceed with development of an automated tool capable of processing the unprecedented volume and value of the refunds of duties collected pursuant to IEEPA"; and
>
> 3. "liquidate unliquidated entries that were entered with IEEPA duties without regard to those IEEPA duties, and reliquidate entries for which liquidation is not final without regard to IEEPA duties."

CSMS #68340863 – UPDATE – Consolidated Administration Processing of Entries (CAPE) for IEEPA Refunds, April 20, 2026 Deployment ("**IEEPA Notice**" or "**CSMS Bulletin**"). The IEEPA Notice deployed at 8AM EDT on April 20, 2026. The volume and value of paid tariffs is estimated at over $166 billion paid by more than 330,000 importers. *Atmus Filtration*, ECF No. 31 (March 6, 2026 Lord Declaration) ¶ 12.

CBP developed CAPE—a holistic system for calculating, processing and delivering tariff refunds—through an iterative process that the Court has monitored in part via the Lord Declarations. As stated in the IEEPA Notice: "CAPE is a new ACE functionality that will

streamline and consolidate refunds and interest payments for entries subject to the IEEPA duties, rather than issuing entry-by-entry refunds." With the engagement and oversight of this Court, CBP also developed and committed to updating its own IEEPA duty refunds website to facilitate importers' ability to understand and exercise their refund rights (the "**IEEPA Refunds Website**").

With respect to international mail imports of goods valued at $2,500 or less, CBP established a requirement that "[c]arriers delivering shipments to the United States via the international postal network, or other qualifying parties that are approved by CBP, must collect and remit" IEEPA duties to CBP at either the applicable IEEPA rate or, until February 28, 2026, as a fixed amount depending on the applicable IEEPA rate. CBP, CSMS # 66311990, *Global Guidance for International Mail* (Sep. 22, 2025) (Diamand Decl. Ex. D). The duty payment for these entries appears to be linked in ACE to the party that collected and remitted the duties rather than to the importer or exporter paying the duty. Presumably, many of those importers paid duties under this arrangement and do not have ACE access to make CAPE claims. In fiscal year 2025, the total value of imports under the then-allowed *de minimis* threshold was $942.5 million, an unknown portion of which was delivered by mail. Diamand Decl. Ex. E.[7] Proposed Class Counsel is seeking to ensure the highest level of participation in the refund process for these and similarly unrepresented importers.

On May 27, 2026, the Court ordered CBP Commissioner Rodney S. Scott to appear at a June 9, 2026 show cause hearing regarding "Customs' compliance" with the Court's order that CBP liquidate or reliquidate, without regard to IEEPA duties, all entries entered subject to

---

[7] CBP, *E-Commerce*, (Jun. 1, 2026), https://www.cbp.gov/trade/basic-import-export/e-commerce.

IEEPA duties. *V.O.S. Selections*, ECF No. 86. The Government sought mandamus over that order and appealed the injunctions at issue. In its mandamus petition, the Government previewed that it would appeal this Court's authority to order relief to all importers. *See V.O.S. Selections*, Mandamus Pet'n at 30–33. After the Federal Circuit stayed the Court's order, the Court allowed a deputy to Commissioner Scott—Susan Thomas—to appear in his stead at the June 9 Hearing and the mandamus petition was withdrawn. CBP reported that, as of June 5, 2026, "approximately $94.94 billion in both potential and certified refunds have been accepted for processing in CAPE" and, of this amount, "refunds (duties plus interest) of approximately $23.68 billion have been completed" through CAPE. *Euro-Notions*, ECF No. 34 (June 10, 2026 Lord Declaration) ¶ 5.

Of the $166 billion to be returned, to date, the CAPE system does not account for over $71 billion, and over $140 billion remains undistributed. June 9 Hearing at 21:45–22:17, *V.O.S. Selections*. And as of June 5, 2026, only 16.74 million entries of the over 53 million entries made through CAPE were validated and accepted by CBP, and another 3.99 million entries have "failed." *Euro-Notions*, ECF No. 34 (June 10, 2026 Lord Declaration) ¶ 4.

## IV.    ARGUMENT

The clearly and objectively defined class of importers who paid the duties imposed by the Challenged Tariff Orders (but have not separately filed an action) that Plaintiff seeks to represent share the same claims. Indeed, all relevant facts and law relating to Defendants' conduct are necessarily common to all members of the proposed Class. The proposed IEEPA Importer Class of hundreds of thousands of importers thus satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. And the vast majority of proposed Class Members are identifiable from information and records in Defendants' possession, custody, or control and/or can readily self-identify, rendering the class ascertainable. *See, e.g.*, *In re Methyl Tertiary Butyl*

-11-

*Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (finding that a class "meets Rule 23(a)'s implied requirement that it be theoretically 'ascertainable'" where the class definition "refers only to objective criteria").

As the Complaint makes clear, Defendants "acted or refused to act on grounds that generally apply to the class" such that final injunctive relief is appropriate with respect to the class as a whole under C.I.T. Rule 23(b)(2). Plaintiff's claims involve binary questions, the determination of which will "generate common answers" that are not only "apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, but will resolve the litigation in full. And "[i]t is undisputed that the remedy for this unlawful collection is for the United States Government to refund the unlawfully collected duties." *V.O.S. Selections*, ECF No. 89 at 1. This applies equally to *all* importers assessed such duties.

The Court of International Trade applied these same Rule 23 standards in *National Bonded Warehouse Association* to certify the class. 14 C.I.T. at 861, 754 F. Supp. at 880 (approving class action settlement). Specifically, Judge Jane Restani "certified this litigation as a class action" and ordered a common settlement fund to be distributed on a *pro-rata* basis to all class members who submitted timely and valid claim forms confirming the amount paid in Customs Services fees. *Id.* at 861, 754 F. Supp. at 880–81. Plaintiff and proposed Class Counsel seek to bring the same efficient administration of justice to this matter. Should Defendants' appeal of the March 5 Amended Order be successful, and absent certification of a class to ensure that all importers have a means of recovering the illegally collected duties, the Court could face many (more) thousands of additional actions. Piecemeal individual cases would likely also be grossly under-inclusive, as many small businesses lack the means and ability to bring individual lawsuits in this Court. Accordingly, a class action represents the best mechanism to accomplish

the Court's stated objective "to refund all of the unlawfully collected duties, including those owing to small importers." *V.O.S. Selections*, ECF No. 89 at 2.

### A.    The Proposed IEEPA Importer Class Definition.

Plaintiff seeks certification of a Rule 23(b)(2) class (the "Class" or "IEEPA Importer Class") defined as and consisting of:

> All importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025 and February 19, 2026, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments.[8]

This proposed Class is carefully defined by objective criteria to ensure that it captures both importers outside the reach of the current CAPE system, as well as those who are eligible for relief through the CAPE system but may need assistance learning of their eligibility for relief, understanding the process, accessing the ACE system (if ultimately required), and receiving full compensation. *See infra* Section V (discussing ongoing notice concerns). In doing so, without encompassing entities already represented by counsel before this Court, it solves any concern of a class in flux based on the implementation or iteration of the various phases of the CAPE system and eliminates any challenge to the Court's power to issue relief to non-parties.

### B.    Plaintiff Satisfies the Rule 23(a) Factors.

#### 1.    The Proposed Class Is Sufficiently Numerous (Rule 23(a)(1)).

Plaintiff indisputably demonstrates that "the class is so numerous that joinder of all members is impracticable," C.I.T. Rule 23(a)(1), given the "over 330,000 importers" who "have

---

[8] Although the *Freestyle World* Complaint was brought on behalf of a class of small importers (those who had paid less than $1,000,000 in IEEPA tariffs), Compl. ¶ 64, Plaintiff seeks certification of a broader injunctive relief class for administrability and universality of relief, and can amend its complaint as appropriate. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint."); *accord McMillan v. Kansas City Life Ins. Co.*, 762 F. Supp. 3d 443, 455 (D. Md. 2025) ("This Court and others have recognized the flexibility involved in crafting a class definition and have permitted deviation from the complaint at the class certification stage." (collecting cases)).

made a total of over 53 million entries in which they have deposited or paid duties imposed pursuant to [IEEPA]." *Atmus Filtration*, ECF No. 31 (March 6, 2026 Lord Declaration) ¶ 12. Although numbers alone are not controlling, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg on Class Actions § 3:12 (6th ed. 2026). Thus, numerosity is easily satisfied.

### 2.    There Are Common Questions of Law and Fact (Rule 23(a)(2)).

The proposed Class satisfies Rule 23's commonality requirement because its members have suffered the same legal wrongs based on the same unlawful course of conduct by Defendants.

Under Rule 23(a)(2), class certification is appropriate where the class members' claims "depend upon a common contention of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. A single common question of law or fact is sufficient to satisfy this criteria. *Id.* "What matters to class certification" is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). Factual differences among class members do not preclude class certification where the class members' claims share the same legal theory.

Here, Plaintiff's claims focus *entirely* on Defendants' course of conduct that caused the common, class-wide injuries, satisfying commonality. Aside from the already settled questions of whether the Challenged Tariff Orders are unlawful and whether proposed Class Members are entitled to refund of duties paid thereunder (they are), *see* Compl. ¶ 68, the claims of the proposed IEEPA Importer Class Members share important and pivotal common questions of law and fact requiring resolution, including but not limited to:

a.    How will the required refund of IEEPA duties be accomplished?

-14-

b.    Has CBP adequately informed affected importers of the availability of refunds and the processes available to secure refunds?

c.    Can and should the Court order CBP to issue refunds to importers who have made or can make otherwise successful claims but who have not successfully secured ACE access or registered for ACH payment?

d.    Can and should the Court order CBP to issue refunds of IEEPA duties paid to importers on entries that are fully liquidated?

Commonality is thus satisfied because Plaintiff is "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

### 3.    Plaintiff's Claims Are Typical of the Class (Rule 23(a)(3)).

Plaintiff satisfies the C.I.T. Rule 23(a)(3) typicality requirement for the same reasons it satisfies commonality. *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) ("The considerations involved in determining whether plaintiffs meet the commonality, typicality and adequacy of representation prongs . . . are similar and overlapping." (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982))); *see also Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) ("[C]ommonality and typicality 'tend to merge.'" (quoting *Falcon*, 457 U.S. at 157 n.13)); *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 54 (S.D.N.Y. 2013) (explaining commonality and typicality are "closely related" (citation omitted)).

To satisfy typicality, "the class representative's claim and defenses must be 'typical of the claims or defenses of the class' in that prosecution of the claim will 'simultaneously tend to advance the interests of the absent class members.'" *Coreas v. Bounds*, No. CV TDC-20-0780, 2020 WL 5593338, at *13 (D. Md. Sept. 18, 2020) (quoting Fed. R. Civ. P. 23(a)(3) and *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) ("This requirement is satisfied when each class member's claim arises from

the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (citation modified)); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) ("Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) (en banc))). The typicality requirement ensures "the interest[s] of the named representative align[] with the interests of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (citation modified); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (typicality "is strong evidence that [plaintiff's] interests are not antagonistic to those of the class"). A common claim or defense need not be identical, but rather "reasonably co-extensive" with those of absent class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) ("[Typicality] does not require that all putative class members share identical claims.").

Typicality, like commonality, is not a close call here. Like all IEEPA Importer Class Members, Plaintiff Freestyle World paid duties imposed pursuant to the Challenged Tariff Orders and now seeks a refund of those duties. *See* Declaration of Russell Wallace ("Wallace Decl.") ¶ 5. In short, Plaintiff's and proposed Class Members' claims are based on the same legal and remedial theories and arise from the same pattern of conduct by Defendants, satisfying the typicality requirement.

### 4.   Plaintiff and Proposed Class Counsel Will Adequately Represent the Class (Rule 23(a)(4)).

Plaintiff and proposed Class Counsel satisfy Rule 23(a)(4)'s adequacy requirement because they "will fairly and adequately protect the interests of the class." C.I.T. Rule 23(a)(4). As the Supreme Court has explained, "[t]he adequacy inquiry under Rule 23(a)(4) serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Courts engage in two inquiries to evaluate whether the adequacy requirement is satisfied: (1) whether the named plaintiffs "'fairly and adequately protect the interests of the class' without a conflict of interest with the absent class members," *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 405 (D. Md. 2023), and (2) whether class counsel is "qualified, experienced, and generally able to conduct the litigation," 1 Newberg on Class Actions § 3:72. Both are satisfied here.

*First*, Plaintiff Freestyle World has no conflicts of interests with proposed absent Class Members because their interests are not antagonistic to one another. Like proposed absent Class Members, Freestyle World has paid tariff duties imposed by the Challenged Tariff Orders, including finally liquidated ones and seeks their refund. Wallace Decl. ¶¶ 3–6, 10. Indeed, as discussed above, Plaintiff's and proposed absent Class Members' claims rise and fall on the same questions of law and fact, and prosecution of those claims will advance the interests of all.

*Second*, proposed Class Counsel are highly qualified by extensive experience litigating and settling constitutional claims, complex class actions, and trade disputes. As set forth in Section V, the attorneys representing the proposed IEEPA Importer Class include trade and class action attorneys with decades of experience in their respective fields, scores of court appointments as class counsel in federal litigation in courts across the nation, and extensive experience in prosecuting and trying complex cases. *See* Diamand Decl. ¶¶ 9–25.

The proposed Class Representative and proposed Class Counsel will fairly and adequately protect the interests of the IEEPA Importer Class, satisfying Rule 23(a)(4).

### C.   **Plaintiff Satisfies Rule 23(b)(2).**

Plaintiff satisfies Rule 23(b)(2) because "the party opposing the class," the Government, "has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole." C.I.T. Rule 23(b)(2). The fundamental focus of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted." *Dukes*, 564 U.S. at 360 (citation omitted). And courts "routinely grant class action status under Rule 23(b)(2) in cases 'alleging systemic administrative failures of government entities,'" like this one. *Vazquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2020 WL 7028637, at *9 (S.D.N.Y. Nov. 30, 2020) (citation omitted); *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1046 (N.D. Cal. 2020) ("The court agrees with plaintiffs that defendants' policy is generally applicable to the class as a whole," satisfying Rule 23(b)(2)).

Rule 23(b)(2) is readily satisfied here: the answer to whether Defendants must reliquidate tariff duties and provide refunds is the same for all proposed Class Members. A single declaration and injunction will be appropriate to cover all proposed Class Members, as demonstrated by the Court's March 5 Amended Order. *See Atmus Filtration*, ECF No. 29.

Though Judge Restani declined to certify a Rule 23(b)(2) class in *Baxter Healthcare Corp. v. United States*, 20 C.I.T. 552, 925 F. Supp. 794 (1996), that case is distinguishable, and indeed its reasoning supports certification in this case:

*First*, although Judge Restani found the Rule 23(a) factors satisfied, she determined that a Rule 23(b)(2) class would be inappropriate because the court *had already enjoined the Government* "from the assessment and collection of the Harbor Maintenance Tax," *U.S. Shoe Corp. v. United States*, 19 C.I.T. 1413, 924 F. Supp. 1191 (1995), and thus the case was "predominantly an action for monetary relief," *Baxter*, 20 C.I.T. at 555, 925 F. Supp. at 798. Here, by contrast, though the illegality of the IEEPA tariffs is settled, the March 5 Amended Order "speaks in terms of liquidation and reliquidation," and "the time has come to ensure all

-18-

duties are refunded." June 9 Hearing at 8:55–9:01, *V.O.S. Selections*. This relief is fundamentally injunctive.

*Second*, the fate of the refund process here is far less certain than in the Harbor Maintenance Tax cases. There, the court expressed "little doubt that the United States [would] cease to collect this tax in accordance with the court's decision." *Baxter*, 20 C.I.T. at 555, 925 F. Supp. at 798. That is not the case here. According to the Court, the Government: "continued to liquidate entries and to collect duties . . . after the Supreme Court's holding" and "while developing the CAPE system"; "has not used the voluntary reliquidation period to reliquidate those entries that were charged IEEPA duties and has permitted some of those entries to become final"; and "has not extended the period of liquidation, letting some entries to finally liquidate when they should never have liquidated in the first place." June 9 Hearing at 9:27–10:15, *V.O.S. Selections*. As the Court acknowledged, "interest is running on the deposits . . . and it's compounded daily," inflicting further injury on American taxpayers. *Id.* at 10:25.

The core relief sought here is therefore quintessentially injunctive: the proposed IEEPA Importer Class seeks an order requiring the Government to reliquidate entries, disgorge unlawfully collected funds, establish a comprehensive notice program, and create mechanisms for small importers—including those without ACE access and ACH-linked bank accounts—to seek refunds. Although the proposed Class Members will—if successful—ultimately recover their unlawfully exacted duties, this is not akin to a damages action because the IEEPA Importer Class is not requesting that the Court calculate and award damages.

Indeed, it is well-established that the character of an injunctive class is not altered by the fact that money may flow to class members as a consequence of the declaratory and injunctive relief sought. For example, in *Scholl v. Mnuchin*, in which Lieff Cabraser was appointed co-lead

counsel, the district court certified a Rule 23(b)(2) class that sought an injunction forcing the

Government to distribute CARES Act relief to individuals it had improperly deemed ineligible

for benefits. The court explained that "plaintiffs request an injunction relating to a generally

applicable policy, but **any individual determination of monetary relief is left to the IRS, not**

**the court**." 489 F. Supp. 3d at 1046 (quoting *Dukes*, 564 U.S. at 360–62 (emphasis added)

(alterations in original) (citation modified)); *see also Johnson v. Meriter Health Servs. Emp. Ret.*

*Plan*, 702 F.3d 364, 371–72 (7th Cir. 2012) (finding Rule 23(b)(2) certification appropriate

because the injunction would require the defendant, not the court, to compute refunds).

Similarly, here, the determination of specific monetary relief belongs with CBP, not the Court;

the Court has already recognized the injunctive character of this litigation for that reason. *See*

*Atmus Filtration*, ECF No. 29 at 1–2. Certification of a Rule 23(b)(2) class is therefore

appropriate.

D.    **In the Alternative, Plaintiff Satisfies Rule 23(b)(3).**

To the extent the Court determines that this *is* an action predominantly for money

damages, certification under Rule 23(b)(3) is an appropriate alternative. Certification of a Rule

23(b)(3) damages class requires the Court to make two findings: (1) questions of law or fact

common to class members predominate over any questions affecting only individual members

("**predominance**"); and (2) a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy ("**superiority**"). C.I.T. Rule 23(b)(3); *see Baxter*, 20

C.I.T. at 555 n.5, 925 F. Supp. at 798 n.5. Here, common questions predominate over individual

ones given that the overriding questions—whether the tariffs were lawful under IEEPA and

whether they must be refunded—have already been resolved by the Supreme Court. *Learning*

*Resources*, 607 U.S. 229. "All that remains" for this Court to resolve is "just how the required

refund of IEEPA duties will be accomplished." *V.O.S. Selections*, ECF No. 95. This, too, is an

overriding question and it is the exact situation the class action mechanism was designed to address.

Although the *Baxter* Court determined that a class action would not be superior because the "maturing litigation" in the test case would "provide the basis for *resolving all of the filed claims*," *Baxter*, 20 C.I.T. at 556, 925 F. Supp. at 798 (citation modified), that ruling depended on the fact that there was "little doubt that the United States [would] cease to collect this tax in accordance with the court's decision," *id.* at 555, 925 F. Supp. at 798, and would administer a refund process in accordance with the outcome of the *Baxter* test case. Here, by contrast, the Government has made clear it will not pay refunds to importers who have made entries that are now or become finally liquidated without final orders in "individual cases." *See V.O.S. Selections*, ECF No. 98 at 9 ("[F]or entries that have been finally liquidated, [CBP] will refund tariffs in individual cases brought by plaintiffs with standing, once final orders have been entered."). A class action allows for holistic relief without risking the frustration caused by selectively providing relief to litigating parties to the exclusion of duty-paying importers who, for various reasons, are unable to litigate claims in this Court. *See, e.g.*, *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 546 (7th Cir. 2017) (holding that defendants cannot "pick off" the lead class representative by offering it alone complete relief). Because the class action mechanism is needed to address the universality of relief, as well as address "the proportionally heavier burden on the small claimant," *Baxter*, 20 C.I.T. at 557, 925 F. Supp. at 880, class certification provides a superior method of adjudication to individual litigation.

Accordingly, Rule 23(a) and Rule 23(b)(2), or, in the alternative, Rule 23(b)(3), are satisfied, and the proposed Class should be certified.

## V.    PROPOSED CLASS COUNSEL SHOULD BE APPOINTED UNDER RULE 23(g).

Rule 23(c)(1)(B) requires the appointment of class counsel at the time of class certification, and, in doing so, to evaluate *both* the factors laid out under Rule 23(g) *and* those encompassed within Rule 23(a)(4)'s adequacy requirement (*see supra* Section IV(B)(4)). Under Rule 23(g), the Court must consider the work done by counsel in identifying or investigating potential claims in the action; counsel's class action, complex litigation, and subject matter experience; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. *See* C.I.T. Rule 23(g)(1)(A)(i)–(iv). Each consideration supports appointing proposed Class Counsel.

### A.    Barnes Richardson Has the Requisite Experience and Has Contributed to the Litigation.

Lawrence Friedman of Barnes, Richardson & Colburn, LLP has filed 16 cases in this Court seeking the refund of IEEPA duties paid by large and small importers, including *Euro-Notions*, Court No. 25-00595. Other members of the firm have filed an additional five IEEPA cases and the firm is providing IEEPA refund assistance to many more clients who are not plaintiffs before the Court. Mr. Friedman and the firm have provided similar advice with respect to the application and enforcement of tariffs imposed pursuant to Sections 301 and 232 as well.

While this litigation and the Section 301 cases were pending in this Court and on appeal, Mr. Friedman worked closely with industry, trade groups, and the bar to assess the merits, manage importer compliance, and evaluate the potential avenues for recovery. After the Supreme Court decision invalidating the IEEPA tariffs, Mr. Friedman routinely and actively engaged with the trade bar to evaluate the outcome and anticipate the route to refunds.

On approximately April 13, 2026, shortly after Atmus Filtration voluntarily dismissed its case, Mr. Friedman began participating in the confidential settlement conferences. In that

capacity, he has engaged with the Court, CBP, and the Department of Justice on the technical and legal aspects of the refund process on behalf of Euro-Notions. He is, therefore, well aware of the status of this matter, the technical challenges CBP is facing, and the legal issues related to the protest process.

More generally, Mr. Friedman has 35 years in private practice focused exclusively on customs and international trade and related litigation. He is recognized as a leader in the customs and trade bar based on his years of experience providing compliance advice to importers and handling matters before the Court. *See* Diamand Decl. ¶¶ 9–11. Together, his experience with the substance and process of the relevant law ensure that he has both contributed to this litigation and the experience to continue to support the settlement process on behalf of the proposed Class of importers who have not yet filed cases with the Court.

## B.      Lieff Cabraser Has the Requisite Experience and Has Contributed to the Litigation.

Lieff Cabraser has demonstrated its commitment to representing the IEEPA Importer Class. For over six months, Lieff Cabraser has investigated the facts as to its client Freestyle World and similarly-situated importers, examined public information about Defendants' conduct, researched the intersection of trade and collective action jurisprudence, and developed case-specific expertise about the impact of Defendants' unlawful tariffs on Plaintiff and others similarly situated. Diamand Decl. ¶ 3. Following the March 3, 2026 hearing in *Atmus Filtration*, Lieff Cabraser filed a Motion to Intervene Pursuant to C.I.T. Rule 24(b) for the Limited Purpose of Attending the March 6, 2026 Conference the next morning, seeking to address the "significant gap" left by the individual lawsuits and offer their "class action and mass action experience on behalf of small importers of record who have not filed their own individual lawsuits." *Atmus Filtration*, ECF No. 24 at 2–3. The Court summarily denied the motion.

Nonetheless, Lieff Cabraser continued to advance the rights of the absent IEEPA Importer Class Members, notably by retaining Dr. Shannon Wheatman of Signal Interactive Media, a preeminent legal notice expert who is frequently appointed by courts to design class settlement notice plans. Dr. Wheatman has been involved in over 700 class actions and bankruptcy cases including those involving the federal government (Federal Trade Commission, Department of Justice, Department of Agriculture, Department of Interior, and Department of Treasury) as well as the country's largest corporations (including Walmart, Microsoft, Johnson & Johnson, and JP Morgan, among others). Diamand Decl. Ex. F,[9] Ex. G.

Dr. Wheatman performed an independent analysis of the IEEPA Notice and IEEPA Refunds Website and focused on: (1) the scope and content of the IEEPA notice program; (2) the scope and content of the IEEPA refunds website; (3) the lack of representation for non-filers; and (4) due process concerns for smaller businesses.

Beyond these proceedings, Lieff Cabraser has a proven track record of ensuring class members receive notice of their right to claim settlement funds and distribution of those funds, and will do the same here. Notably, in the *Volkswagen Clean Diesel* settlement, Lieff Cabraser's extensive notice program resulted in a claims rate of ***over 90%***. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017). And Lieff Cabraser's recent experience as co-lead class counsel in a landmark $1.5 billion class action settlement delivered a similar ***91.3% participation rate*** in the claims program. *See Bartz v. Anthropic PBC*, No. 4:24-cv-05417-AMO, ECF Nos. 437, 668 (N.D. Cal.) (resolving claims that an artificial intelligence company violated the

---

[9] Dr. Shannon Wheatman, Signal Interactive Media, https://signalinteractive.com/team-members/dr-shannon-wheatman/.

Copyright Act by downloading copyrighted works from pirated websites and using these works to train its large language model). These are just two examples of the dozens of $100+ million recoveries in major, cutting-edge matters that Lieff Cabraser has successfully settled, issued notice, and supervised class distributions as lead or co-lead class counsel. *See also, e.g.*, *In re Juul Labs Mktg. Sales Practices & Prods. Liab. Litig.*, 20-cv-8177 (N.D. Cal.) (co-lead counsel securing and overseeing excess of $2.5 billion in settlements); *City and County of San Francisco v. Purdue Pharma L.P.*, No. 3:18-Cv-07591 (N.D. Cal.) (co-lead counsel on behalf of the City of San Francisco, prevailing in landmark bench trial against establishing pharmacy's substantial liability for opioid epidemic); *see also* Diamand Decl. Ex. C.

The proposed Class Counsel meet the criteria for appointment under Rule 23(g)(1); they have the resources, especially the attorneys, staff, and funds, necessary to prosecute and resolve these exceptional proceedings effectively. Moreover, they have consistently demonstrated the ability and willingness to work efficiently, economically and cooperatively with other law firms and defense counsel, and would do so in this case.[10] Further, Class Counsel understand that professionalism, courteous relations and genuine cooperation among joint counsel, as well as between opposing counsel, are essential to the conduct, management, and resolution of this particularly complex matter.

The undersigned proposed Class Counsel includes Lawrence Friedman of Barnes Richardson, and Elizabeth J. Cabraser and Nicholas Diamand of Lieff Cabraser, who have decades of relevant experience and success in federal courts around the country. *See* Diamand

---

[10] Should the Court determine that the interests of the class would be further enhanced by the inclusion of other entities and counsel in the leadership structure, undersigned counsel would of course work cooperatively and efficiently with all designated counsel. *See* Diamand Decl. ¶ 8.

Decl. ¶¶ 9–25. These counsel have made this case a priority matter; they have and will continue to devote their collective efforts and resources to its prosecution.

## VI.   THERE IS GOOD CAUSE TO LIFT THE STAY.

This action was automatically "stayed upon commencement" pursuant to Administrative Order 25-02. However, in accordance with the Administrative Order, there exists good cause to lift the stay. This case "merits earlier consideration" for two primary reasons.

*First*, as discussed at length above, certification of the proposed IEEPA Importer Class is the most efficient and procedurally fair way to effectuate the Court's order and resolve the litigation. The remaining issues in this litigation concern "just how the required refund of IEEPA duties will be accomplished," *V.O.S. Selections*, ECF No. 95, and Plaintiff's proposal to certify the IEEPA Importer Class is the only one to date that ensures compliance as to smaller importers. *See V.O.S. Selections*, ECF No. 89 at 1 ("Customs has not proposed a method . . . to refund all of the unlawfully collected duties . . . owing to small importers."). And, as discussed, lifting the stay and certifying the proposed IEEPA Importer Class moots any issues as to *Trump v. CASA* and clears the path for the Court to achieve complete relief, and to do so without waiting for the universal injunction to make its way through the appellate courts.

*Second*, even setting aside the benefits of class certification, lifting the stay in this case will not prejudice the Government in any way. The only consequence of lifting the stay is that more importers will obtain refunds, which advances the interests of the Government as well.

## VII.   CONCLUSION

Class certification is the most efficient way for the Court to effectuate its goals of ensuring that as many importers as possible have access to a clear and simple process to secure refunds. Barnes Richardson and Lieff Cabraser, working closely together, support that objective. Together, proposed Class Counsel seek to ensure that as much of the duties paid pursuant to

IEEPA are returned to the small businesses and individuals who bore the burden of the illegal assessment. For all the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion, lift the stay, certify the Class, designate Freestyle World as Class Representative, and appoint Barnes Richardson and Lieff Cabraser as co-lead Class Counsel.

Dated: June 23, 2026                    Respectfully submitted,


                                        By: */s/ Lawrence M. Friedman*


                                        Lawrence M. Friedman
                                        lfriedman@barnesrichardson.com
                                        BARNES, RICHARDSON & COLBURN, LLP
                                        303 East Wacker Drive, Suite 305
                                        Chicago, IL 60601
                                        Telephone: 312.297.9554

                                        Elizabeth J. Cabraser
                                        ecabraser@lchb.com
                                        Daniel M. Hutchinson
                                        dhutchinson@lchb.com
                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111-3339
                                        Telephone: 415.956.1000
                                        Facsimile: 415.956.1008

                                        Nicholas Diamand
                                        ndiamand@lchb.com
                                        Lucas Issacharoff
                                        lissacharoff@lchb.com
                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                        250 Hudson Street, 8th Floor
                                        New York, NY 10013-1413
                                        Telephone: 212.355.9500
                                        Facsimile: 212.355.9592

                                        Joel B. Young
                                        jby@tidricklaw.com
                                        THE TIDRICK LAW FIRM LLP
                                        1990 N. California Blvd., 8th Floor
                                        Walnut Creek, CA 94596
                                        Telephone: 510.788.5100

## CERTIFICATE OF COMPLIANCE

I, Lawrence M. Friedman, hereby certify that this brief complies with the 14,000 word limitation of the United States Court of International Trade, set forth in Standard Chambers Procedures § 2(B)(1). This brief contains 9,634 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

*/s/ Lawrence M. Friedman*
Lawrence M. Friedman