IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, *et al.*,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Court No. 26-01088 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
<u>PLAINTIFF'S MOTION TO LIFT THE STAY AND FOR CLASS CERTIFICATION</u>**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

July 28, 2026           *Attorneys for Defendants*

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................3

    I.     Legal Standards.......................................................................................................3

    II.    The Court Should Deny Plaintiff's Motion for Class Certification ..........................5

        A.  Plaintiff's Request Is Far Too Late ....................................................................5

        B.  Plaintiff Has Failed to Establish the Requirements of Rule 23(b) ......................7

            1.   Plaintiff Fails to Satisfy the Threshold Requirements ..................................7

            2.   Plaintiff's Proposed Injunction Under Rule 23(b)(2) Would Not Provide Final Relief to the Class as a Whole .............................................................9

            3.   Class Certification Would Also Be Improper Under Rule 23(b)(3)............16

CONCLUSION..................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*AA Suncoast Chiropractic Clinic v. Progressive Am. Ins. Co.*,
    938 F.3d 1170 (11th Cir. 2019) ................................................................. 11, 12

*Ablan v. United States*,
    162 F.4th 1364 (Fed. Cir. 2025) ...................................................................... 6

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    No. 2011-1538, 2012 WL 10716768 (Fed. Cir. Apr. 2, 2012) ............................ 11

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) .......................................................................................... 6

*Amchem Products v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 18

*Baxter Healthcare Corp. v. United States*,
    925 F. Supp. 794 (Ct. Int'l Trade 1996) ................................................... *passim*

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .......................................................................................... 5

*Chapter1 LLC v. United States*,
    No. 25-cv-97, ECF No. 4 (filed May 29, 2025) ............................................... 7

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) .......................................................................... 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .......................................................................................... 5

*In re Citizens Bank, N.A.*,
    15 F.4th 607 (3d Cir. 2021) .............................................................................. 6

*In re Micron Tech., Inc.*,
    875 F.3d 1091 (Fed. Cir. 2017) ........................................................................ 7

*Jamie S. v. Milwaukee Public Schools*,
    668 F.3d 481 (7th Cir. 2012) ............................................................................ 9

*Johnson v. Meriter Health Services Employee Retirement Plan*,
    702 F.3d 364 (7th Cir. 2012) ............................................................... 13, 14, 15

*Learning Res., Inc. v. Trump*,
   607 U.S. 229 (2026)................................................................................ 2, 7, 18

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ............................................................................ 7

*Overby v. Anheuser-Busch*, LLC,
   --- F.4th ---- No. 25-1520, 2026 WL 1718962, at *3 (4th Cir. June 15, 2026) .......................... 3

*Scholl v. Mnuchin*,
   489 F. Supp. 3d 1008 (N.D. Cal. 2020) .................................................................. 13

*Thomas v. Albright*,
   139 F.3d 227 (D.C. Cir. 1998)........................................................................... 5

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)..................................................................................... 7

*U.S. Shoe Corp. v. United States*,
   22 C.I.T. 880 (1998) ................................................................................... 16

*United States v. U.S. Shoe Corp.*,
   523 U.S. 360 (1998)..................................................................................... 16

*Vivint v. Alarm.com Inc.*,
   856 F. App'x 300 (Fed. Cir. 2021) ...................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................. *passim*

**Statutes**

19 U.S.C. § 1501........................................................................................ 2

26 U.S.C. § 4461(b) ..................................................................................... 16

28 U.S.C. § 1581(i) ..................................................................................... 19

**Rules**

Fed. R. Civ. P. 23....................................................................................... 4

USCIT Rule 23(a)........................................................................................ 4, 7

USCIT Rule 23(b)..........................................................................................................*passim*

USCIT Rule 23(c)(1)(A).............................................................................................. 4

## Other Authorities

6 Newberg and Rubenstein on Class Actions § 18.14 (6th ed. 2023) ........................................... 5

30A C.J.S. Equity § 2.................................................................................................. 6

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Court No. 26-01088 |
| U.S. CUSTOMS AND BORDER PROTECTION, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO LIFT THE STAY AND FOR CLASS CERTIFICATION**

Defendants respectfully oppose plaintiff's motion to lift the stay and for class certification. The stay can only be lifted for good cause, and, because a class is not warranted here, the case should remain stayed.

This Court should deny class certification for two reasons. *First*, plaintiff's request is too late. Courts must certify classes before the merits determinations; otherwise, they create a fundamentally unfair "one-way intervention" that Rule 23 specifically prohibits. That alone should doom plaintiff's request. *Second*, plaintiff's request for refunds does not fit any type of class action under Rule 23(b). Plaintiff relies first on Rule 23(b)(2), but for a Rule 23(b)(2) class to be valid, it must seek a single injunction that would provide *final* indivisible relief to all class members and must not seek non-incidental monetary relief. The injunction proposed here would not provide final relief—it would only set in motion a process that could eventually lead to final relief. The specific refund amounts that plaintiff and putative class members seek would not be decided by the injunction. And in any event, plaintiff's desired relief is fundamentally for non-

1

incidental monetary relief, which is forbidden under Rule 23(b)(2).  Neither is a Rule 23(b)(3)

class warranted.  Common questions of law and fact do not predominate, nor is a class the

superior method of resolution where the Court has already gone far down a different resolution

path that provides a mechanism for any importer who paid tariffs to receive a refund.

**BACKGROUND**

On February 19, 2026, plaintiff filed a lawsuit on behalf of itself "and all others similarly

situated," challenging the President's authority to issue tariffs under the International Emergency

Economic Powers Act (IEEPA).  Complaint, ECF No. 4.  In its complaint, plaintiff requested

"refund" of "IEEPA duties collected on [its] entries." ECF No. 4, Prayer for Relief ¶ e.

On February 20, 2026, the Supreme Court held that IEEPA does not authorize tariffs.

*Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).  Since then, this Court has issued the same

injunction in four cases requiring U.S. Customs and Border Protection (CBP) to liquidate or

reliquidate entries for which IEEPA duties were paid and to refund any such duties paid.  The

Court has also met privately with the parties regularly to discuss and oversee CBP's progress

toward refunding IEEPA duties.  These conferences, which the Court has called "settlement

conferences," have been off-the-record, but the Court has required CBP to file public

declarations—11 in total, so far—advising of its progress.

These declarations make clear that CBP has invested significant resources in the refund

effort, and that this effort has succeeded.  CBP first prioritized programmatic changes to its

system so it could process liquidations or reliquidations and issue refunds for most entries that

had not yet liquidated or were still within CBP's voluntary reliquidation period under 19 U.S.C.

§ 1501.  CBP next expanded the functionality to process IEEPA refunds for such entries that are

flagged for reconciliation but for which no reconciliation entry was filed.  CBP is now

2

channeling its resources to further expand its functionality to reliquidate finally liquidated entries for plaintiffs with cases in this Court.  Declaration of Brandon Lord, ECF No. 45 ¶7 (CIT July 13, 2026).  This enhancement is expected to deploy in late August, at which point any importer who files a complaint in this Court seeking refunds on finally liquidated entries can request those refunds using CBP's Consolidated Administration and Processing of Entries (CAPE) functionality.

In the midst of this progress, and months after it passively observed the resolution of the merits questions from afar, on June 23, 2026, plaintiff filed this motion for class certification. Plaintiff defines the proposed class as "all importers of record who paid duties imposed by the Challenged Tariff Orders," excluding "any entity that has separately filed an action seeking to recover IEEPA duties payments."  ECF 12 at proposed order.

Plaintiff first asks the Court for a Rule 23(b)(2) injunction, proposing "an order requiring the Government to reliquidate entries, disgorge unlawfully collected funds, establish a comprehensive notice program, and create mechanisms for small importers" regardless of whether they have electronic bank accounts "to seek refunds."  ECF 12 at 19.  Alternatively, plaintiff asks for a Rule 23(b)(3) injunction, arguing that class adjudication is a superior method to the existing methods already in progress.

## ARGUMENT

### I.    Legal Standards

A class action "represents an exceptional form of litigation."  *Overby v. Anheuser-Busch*, LLC, --- F.4th ----. No. 25-1520, 2026 WL 1718962, at *3 (4th Cir. June 15, 2026). Class certification is appropriate only if, "after a rigorous analysis," and upon "significant proof" by the moving party, the Court is satisfied that the requirements of Rule 23 have been met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 353 (2011).  USCIT Rule 23 is

"essentially the same as" Federal Rule of Civil Procedure 23. *Baxter Healthcare Corp. v. United States*, 925 F. Supp. 794, 797 n.4 (Ct. Int'l Trade 1996).

Under USCIT Rule 23(c)(1)(A), the Court must determine whether to certify a putative class "[a]t an early practicable time after a person sues or is sued." USCIT Rule 23(a), in turn, provides that a member "of a class may sue" as a "representative part[y] on behalf of all members only if" each of four requirements is met. First, the proposed class must be "so numerous that joinder of all members" would be "impracticable"; second, there must be "questions of law or fact common to the class"; third, "the claims" of the class representative must be "typical of the claims … of the class"; and fourth, the class representative must "fairly and adequately protect the interests of the class." USCIT Rule 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. Failing to meet just one requirement precludes class certification. *Dukes*, 564 U.S. at 349.

Those are only the threshold requirements. Plaintiff must then also satisfy Rule 23(b). Plaintiff here relies first on Rule 23(b)(2), which requires it to establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The last clause is important: the injunctive or declaratory relief sought must be a single injunction that would provide "final" relief to "the class as a whole." The injunction also cannot seek non-incidental or individualized monetary relief. *Dukes*, 564 U.S. at 366-67.

When a proposed class action is instead "predominantly an action for monetary relief," "maintenance of the class action is most appropriately analyzed under Rule 23(b)(3)." *Baxter*, 925 F. Supp. at 797. Alternatively, plaintiff seeks certification of a Rule 23(b)(3) class, which requires additional showings that (1) common issues of law and fact "predominate over

questions affecting individual members" and (2) a class action is superior to other methods "for the fair and efficient adjudication of the controversy." *Id.* at 798; USCIT Rule 23(b)(3); *see also Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998) ("The requirements of predominance and superiority in subsection (b)(3) are, of course, additional to the requirements of subsection (a), which applies to all class actions.").

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## II. The Court Should Deny Plaintiff's Motion for Class Certification

### A. Plaintiff's Request Is Far Too Late

Plaintiff's class-certification request is too late. Plaintiff filed its complaint on behalf of a putative class just one day before the Supreme Court ruled on the merits in February 2026, and then it delayed yet four *more* months, without explanation, to finally request class certification in June 2026. Rule 23 and bedrock principles of equity preclude such a dilatory request made long after the merits of the case have been resolved.

As the Supreme Court has explained, class actions represent "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). The "core idea" of the class action is that both sides run the risk of an adverse class-wide judgment: if the class representatives prevail, "the class members may take advantage of that victory," but "if the representatives lose, the defendant—having risked a large class-wide loss—is entitled to take advantage of its victory by foreclosing litigation by any class member against it in the future." 6 Newberg and Rubenstein on Class Actions § 18.14 (6th ed. 2023).

5

A plaintiff thus cannot wait until after a court has conclusively resolved the merits before deciding whether to seek class certification.  Otherwise, by delaying a motion for certification, a plaintiff could enable absent class members "to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).  That practice, known as one-way intervention, "is 'strikingly unfair' to the defendant."  *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (citation omitted); *see also Ablan v. United States*, 162 F.4th 1364, 1380 (Fed. Cir. 2025) ("Allowing plaintiffs to know the liability ruling before deciding whether to join the class often would be manifestly unjust.").  Most courts, including the Federal Circuit, therefore either prohibit a request this late, or else allow it only when the defendant consents.  *See In re Citizens Bank, N.A.*, 15 F.4th 607, 618-19 & nn.11-12 (3d Cir. 2021) (collecting cases); *Ablan*, 162 F.4th at 1380.  "Rule 23 'stems from equity practice,'" *Dukes*, 564 U.S. at 361, and fairness is critical to equity, *see, e.g.*, 30A C.J.S. Equity § 2 ("Fundamental fairness is the hallmark of all equity jurisprudence.").  Defendants do not consent to plaintiff's fundamentally unfair request, and so it must be rejected.

It is true that plaintiff filed its complaint one day before the Supreme Court's decision and so technically raised the possibility of a class before the final merits decision.  But it waited until long after both this Court and the Federal Circuit had ruled on the merits, and long after the merits had been argued at the Supreme Court, meaning that plaintiff never litigated the case after accepting the risk of a potential class-wide loss.  Rather, plaintiff passively bided its time and waited for months before asking for class certification, during which time the parties had made, and continue to make, substantial progress along an entirely different path for refund payments.  And in any event, defendants do not consent to certification here.

6

It is also true that the Supreme Court rejected universal injunctions in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), but that change long predated both the final resolution of the merits in this case and plaintiff's present motion. *Compare id.* (decided June 27, 2025), *with Learning Res.*, 607 U.S. 229 (decided Feb. 20, 2026). In any event, "the change in the law exception only applies in circumstances where the law was strongly settled against the later ruling." *Vivint v. Alarm.com Inc.*, 856 F. App'x 300, 306 (Fed. Cir. 2021) (citing *In re Micron Tech., Inc.*, 875 F.3d 1091, 1097 (Fed. Cir. 2017)). It does not provide an excuse here when class certification was not squarely foreclosed by precedent when plaintiff originally filed.[1]

**B.      Plaintiff Has Failed to Establish the Requirements of Rule 23(b)**

**1.      Plaintiff Fails to Satisfy the Threshold Requirements**

To satisfy the commonality requirement, all putative class members' "claims must depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification" is "not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). Critically, it is not enough for a well "crafted class complaint" to "literally raise[]" a number of "common questions" that may be somewhat relevant to the class members' claims. *Id.* at 349. The "commonality test is" not "met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members." <u>M.D. ex rel. Stukenberg v. Perry</u>, 675 F.3d 832, 840 (5th Cir. 2012).. "Rather, Rule 23(a)(2) requires that all of the class

---

[1] Indeed, an importer sought to certify a class action long before plaintiff here did and before the merits were decided. *See Chapter1 LLC v. United States*, No. 25-cv-97, ECF No. 4 (filed May 29, 2025).

members' claims depend on a common issue of law or fact whose resolution will resolve an issue that is *central to the validity* of each one of the [class members'] claims in one stroke." *Id.* (emphasis added).

Plaintiff has failed to show that there is a common question of fact or law that is "central to the validity of each" class member's claim for which the Court may provide a "common answer[]" in "one stroke." *Wal-Mart*, 564 U.S. at 350.  Plaintiff alleges four common questions of law and fact: "(a) How will the required refund of IEEPA duties be accomplished?; (b) Has CBP adequately informed affected importers of the ability of refunds and the processes available to secure refunds?; (c) Can and should the Court order CBP to issue refunds to importers who have made or can make otherwise successful claims but who have not successfully secured ACE access or registered for ACH payment?; (d) Can and should the Court order CBP to issue refunds of IEEPA duties paid to importers on entries that are fully liquidated?"  ECF 12 at 14-15.

The Court cannot provide common answers to any of these questions, let alone in "one stroke."  *Wal-Mart*, 564 U.S. at 350.  For example, plaintiff alleges that the proposed class comprises small importers who lack the means or sophistication to file complaints in this Court. The question of whether CBP has adequately informed this range of potential class members is fact-specific and different for different groupings of importers.  Importers who have imported goods valued at less than $2,500 are alleged to sometimes lack access to the Automated Commercial Environment (ACE), while other importers already have access to ACE.  ECF 12 at 10; Yet other importers are alleged to lack electronic bank account access.  ECF 12 at 19. Questions of notice for these groups are inherently different and do not lend themselves to injunctive relief.  Plaintiff has thus failed to show that there is any common factual question, central to each member's claim, that can yield a single, class-wide answer.

8

### 2. Plaintiff's Proposed Injunction Under Rule 23(b)(2) Would Not Provide Final Relief to the Class as a Whole

Plaintiff seeks refunds of IEEPA tariffs.  But plaintiff proposes a class-wide injunction that would give class members only entry to the reliquidation process.  Certifying such a class under Rule 23(b)(2) is improper for numerous reasons.

The Supreme Court has made clear that class certification under Rule 23(b)(2) requires plaintiff to establish that (1) the proposed injunction is a single injunction that provides final indivisible relief to the whole class and (2) plaintiff's ultimate relief is not for non-incidental monetary relief.  *See Dukes*, 564 U.S. at 360-67.  Plaintiff flunks both requirements.

*First*, plaintiff's request violates Rule 23(b)(2)'s requirement that the requested injunctive relief be "single," "indivisible," and "final."  USCIT Rule 23(b)(2); *Dukes*, 564 U.S. at 360.  Plaintiff seeks an order requiring the Government to "reliquidate entries, disgorge unlawfully collected funds, establish a comprehensive notice program, and create mechanisms for small importers—including those without ACE access and ACH-linked bank accounts—to seek refunds."  Mot. at 19.  Each component of the requested injunction serves the same ultimate objective: obtaining repayment of IEEPA duties.  Particularly, plaintiff claims it wants a single injunction for reliquidation of entries.  But for plaintiff, reliquidation is merely a starting point to the actual relief sought (refunds for the tariffs paid), not an end.  Issuing an injunction for reliquidation would not provide relief to each class member—indeed, it would not provide *any* relief to *any* class member—because it would not amount to "final" relief.  *See Dukes*, 564 U.S. at 360.

This principle is further elaborated in post-*Dukes* court-of-appeals cases.  For example, the Seventh Circuit's decision in *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir.

9

2012), is particularly instructive as to why Rule 23(b)(2) is inapplicable here. There, the plaintiffs sought structural reform of Milwaukee Public Schools' provision of special education services and to establish a remedial system for identifying and compensating disabled children who had been delayed or denied access to the individualized educational program process. *Id.* at 485. The court concluded that "the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief [that] does not satisfy Rule 23(b)(2) [because] as a substantive matter the relief sought would merely *initiate a process* through which highly individualized determinations of liability and remedy are made." *Id.* at 499 (citation modified) (emphasis added). The court further explained that "this kind of relief would be class-wide in name only, and it would certainly not be final." *Id.* The remedy sought by plaintiff "merely establishes a *system* for eventually providing individualized relief." *Id.*

Here, like in *Jamie*, an injunction requiring reliquidation of all putative class members' entries would just start the process of each member obtaining some individualized amount of relief, dependent on each members' unique importing circumstances. Reliquidation does not mean all importers are automatically entitled to a refund—it means CBP is reopening entries to reassess duties. Whether an importer is entitled to a refund depends on whether IEEPA duties were actually assessed and paid, whether the entry meets CAPE's eligibility rules, and the amount of the duty. Plaintiff cannot circumvent Rule 23(b)(2)'s requirements by superficially structuring its case around injunctive relief when the real goal is individualized monetary recovery. In short, plaintiff's requested class-wide relief is not "final injunctive relief," USCIT Rule 23(b)(2), because the injunctive relief sought merely initiates a highly individualized process in which different determinations of tariff refunds are made and tailored to each plaintiff. The requested injunctive relief is not "final"

10

when the ultimate relief sought is dependent on downstream CBP action.  Plaintiff itself alleges not all class members can use CAPE.  ECF 12 at7, 10, 13, 14, 18.  For those who cannot, CBP's normal reliquidation process would require individualized and manual review of each entry.  Thomas Decl. ¶¶ 17, 19-20. The requested injunctive relief is not "final" when the ultimate relief sought is dependent on downstream CBP action.

*Second*, plaintiff's request for relief is fundamentally a request for non-incidental monetary relief, so the proposed class cannot be certified under Rule 23(b)(2) for this additional reason.  The Supreme Court has explained that claims for monetary relief cannot be certified under Rule 23(b)(2) where the monetary relief is not incidental to the requested injunctive or declaratory relief.  *Dukes*, 564 U.S. at 360; *see also AA Suncoast Chiropractic Clinic v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019) ("Injunction classes can go forward under Rule 23(b)(2); damages classes must satisfy Rule 23(b)(3).").  Here, the monetary relief sought is explicit and direct. Plaintiff seeks an injunction requiring the Government to "disgorge unlawfully collected funds" in addition to reliquidation.  ECF 12 at 19.  Thus, the ultimate goal is a refund of duties with interest.  And refunds and refund orders are fundamentally non-incidental monetary relief.

It is not an answer to say, as plaintiff does, that the relief is  "quintessentially injunctive" or declaratory.  ECF 12 at 19.  For purposes of Rule 23(b)(2), it is the substance, not the manufactured form, that matters.  *See, e.g.*, *AA Suncoast*, 938 F.3d at 1175-79; *cf., e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2011-1538, 2012 WL 10716768, at *1 (Fed. Cir. Apr. 2, 2012) ("The form of the order to pay money does not matter; what matters is 'whether the judgment involved is monetary or nonmonetary.'").  And the substance of plaintiff's relief is monetary – not injunctive – relief.  Indeed, for purposes of Rule 23(b)(2), "an

11

injunction must be geared toward preventing *future* harm." *AA Suncoast*, 938 F.3d at 1175. But "[e]verything about" plaintiffs' case at this stage "looks back at *past* harms" and ultimately seeks "retrospective, not prospective," relief to remedy those *past* harms. *Id.* at 1175, 1178. Plaintiff also explicitly asks for the Government to "disgorge unlawfully collected funds." ECF 12 at 19. It effectively concedes that its request is for non-incidental monetary relief, which is forbidden under Rule 23(b)(2).

The Supreme Court's decision in *Dukes* further confirms that plaintiffs' request is for non-incidental monetary relief and thus that Rule 23(b)(2) does not apply. In *Dukes*, former and current female Wal-Mart employees sued for sex discrimination seeking backpay, injunctive, and declaratory relief. 564 U.S. at 343. The Supreme Court denied class certification, holding that the necessity of individualized determinations for the backpay claims prevented this monetary relief from being considered "incidental" to the class-wide injunctive relief. *Id.* at 360.

Incidental monetary relief are "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* at 365-66. Such incidental damages "should not require additional hearings to resolve the disparate merits of each individual's case," nor should they "introduce new and substantial legal or factual issues," or "entail complex individualized determinations." *Id.* The Court emphasized that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," because that would require separate determinations for each member. *Id.* at 360. That conflicts with a Rule 23(b)(2) class because a single injunction would not provide final relief to the whole class and because it means that the ultimate relief seeks non-incidental monetary relief. *Id.* at 366-67. Rather, "individualized monetary

claims belong in Rule 23(b)(3)." *Id.* at 362.

That is the case here. Plaintiff's proposed injunction itself gives plaintiff and putative class members no relief. What plaintiff really seeks for itself, and the putative class members, is a payment of money; that means the monetary relief is the furthest thing from incidental to an injunction that is sought solely to obtain that payment. *See* Mot. 18-19. Just as backpay (in *Dukes*) requires individualized determinations of employee's eligibility, necessitates additional proceedings to determine the scope of individual relief, and requires a calculation of interest, *see Dukes*, 564 U.S. at 366, so too are tariff refunds individualized remedies that accrue interest and depend on additional proceedings and other plaintiff-specific determinations to calculate refunds rather than an indivisible class-wide remedy. *See* Lord Decl. ¶¶ 3, 5, 7, 9.

Contrary to plaintiff's contention, *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008 (N.D. Cal. 2020), and *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012), actually confirm that class certification is inappropriate in cases like this one. Mot. 20. In *Scholl*, class members sought an injunction to enjoin enforcement of an Internal Revenue Service (IRS) policy precluding incarcerated persons from receiving economic impact payments (EIP) under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. 489 F. Supp. 3d at 1008. The court viewed the requested injunction solely as relief prohibiting enforcement of an unlawful policy. *Id.* at 1047. The court ruled that any monetary relief was incidental because the injunction addressed a generally applicable policy to all incarcerated individuals and provided final relief by making them eligible under the policy; thus, no individualized determination of money was left to the court. *Scholl*, 489 F. Supp. 3d at 1046.

Here, reliquidation is not a "generally applicable policy" because it still requires the

chance of entry-by-entry adjudication, producing non-incidental, individualized monetary outcomes.  Unlike *Scholl*, where the court could enjoin a blanket eligibility rule and "whether a taxpayer otherwise meets the requirements . . . is left to the IRS," a reliquidation order typically requires CBP to confirm the identity of an importer and determine which of its entries are covered, compute duty differences for each entry, and address offsets, prior refunds, protests, and administrative record issues on an entry-by-entry basis. This is especially true for class members who have no access to ACE or CAPE.  Moreover, the IRS policy in *Scholl* denied payment to all incarcerated persons on the ground that they were categorically ineligible to receive payment.

In contrast, CBP has never adopted a policy precluding importers from seeking an IEEPA refund.  CAPE was specifically created to administer refunds of IEEPA tariffs on a large scale, and refunds are available to all eligible importers, even if an entry has already finally liquidated, as long as the importer files a complaint in this Court.  Importers *have always had* the option of seeking an individualized court order for reliquidation.  Furthermore, because CBP would implement reliquidation and resulting refunds, the Court would essentially be ordering an administrative payment process that results in different dollar amounts for different class members.  That is not the type of relief the Rule 23(b)(2) is intended to address.  Lastly, the class in *Scholl* was certified *before* the merits of the case were resolved.  By contrast, in this case, plaintiff passively waited four months after the merits decision to request certification, thus suing far too late.

In *Johnson*, the class members sought an injunction for reformation of a pension plan to ensure that it reflected the rights of participants. 702 F.3d at 365.  The court held that once the plan was reformed, the monetary relief would be incidental because calculating such relief would "*just be* a matter of laying each class member's pension-related employment records alongside

14

the text of the reformed plan and computing the employee's entitlement by subtracting" the

benefit credited from the benefit entitled to them. *Id.* at 371 (emphasis added).  The court made it

clear that such monetary relief is simple and straightforward.  Thus, that injunction provided

final relief on its own because it addressed the core issue of the plan's compliance with the

declared rights, making the monetary relief an automatic and mechanical, or incidental,

consequence.

That is not the case here. The tariff refunds ultimately sought are not "just a matter of

laying each class member's" entry alongside the duty paid to "comput[e]" the refund once

reliquidation is granted. *Johnson*, 702 F.3d at 371. The pension plans in *Johnson* established a

single, definitive formula to compute each entitlement.  Importers' claims, by contrast, are not

necessarily mechanical or automatic. Automatic reliquidation of importer entries does not mean

they will receive a refund or that they are necessarily eligible for one.  A refund cannot,

therefore, be characterized as incidental.

Finally, this Court's decision in *Baxter*, discussed further below, confirms why class

certification under Rule 23(b)(2) is improper.  There, Judge Restani concluded that class

certification under Rule 23(b)(2) was inappropriate because the Court had "little doubt" that the

Government would make refunds to the extent required by law. 925 F. Supp. at 798.  Plaintiff

incorrectly asserts that this is not the case here. ECF 12 at19.  But the fate of the refund process

here is just as certain as the Harbor Maintenance Tax cases.  CAPE is an efficient and highly

developed functionality created by CBP to calculate and provide refunds of IEEPA duties for

certain entries identified on submissions made by importers.  The government intends to make

refunds to the extent required by law because CBP is required to liquidate under the law and is

required to reliquidate entries pursuant to a court order. And the Government has repeatedly

15

represented that it will not contest the Court's authority to order reliquidation to importers who have filed *individual* suits to effectuate duty refunds as part of that congressionally prescribed process. *AGS Co. Automotive Sols. v. U.S. CBP*, No. 25-255, ECF No. 29 at 6 (holding that "the panel in *In re Section 301 Cases* unanimously agreed—as we do now—that the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'"). Nor has the Government ever contended that any class of importer is prohibited from filing a case in this Court.

Moreover, Judge Restani determined that a Rule 23(b)(2) class would be inappropriate because the Court *had already enjoined the Government* "from the assessment and collection of the Harbor Maintenance Tax." *Baxter*, 925 F. Supp. at 798. Just like in those cases, the illegality of the IEEPA tariffs is settled, CBP has ceased collecting the tariffs, and a refund path is available to all importers. Therefore, this proposed class action "is predominantly an action for monetary relief," and the government is "issuing refunds to the extent required by law," Rule 23(b)(2) is the wrong class mechanism. *Id.* Instead, this action is "most appropriately analyzed under Rule 23(b)(3)." *Id.*

### 3. Class Certification Would Also Be Improper Under Rule 23(b)(3)

The Court's decision in *Baxter* explains why Rule 23(b)(3) is not an option here. There, plaintiffs moved to certify a class of "all persons who ha[d] paid" a tax "in connection with exportation of commercial cargo." 925 F. Supp. at 796; *see* 26 U.S.C. § 4461(b). Before the motions were resolved, the Court found the tax unconstitutional in a test case decided by a three-judge panel. *Baxter*, 925 F. Supp. at 796. The Court "enjoined enforcement" of the tax "and awarded monetary damages" in a subsequent judgment, which was stayed pending appeal. *Id.* The Supreme Court ultimately affirmed, *see United States v. U.S. Shoe Corp.*, 523 U.S. 360

16

(1998), after which this Court entered an order establishing a claims-resolution procedure, *U.S. Shoe Corp. v. United States*, 22 C.I.T. 880 (1998).

But before this Court's judgment was affirmed in the test case, the Court denied the motions for class certification. *Baxter*, 925 F. Supp. at 800. The Court explained that a Rule 23(b)(3) class requires, in addition to the threshold Rule 23 showings, satisfaction of the predominance and superiority tests. *Id.* at 798. Predominance was lacking because the common issues of law "have largely been determined or will be determined in another action"—namely, the then-pending "appeal of *U.S. Shoe Corp.*" *Id.* As such, "the court's function would likely involve overseeing resolution of individual claims for monetary relief," not resolving class-wide questions of law or fact. *Id.*

Next, the Court reasoned that superiority was also lacking. *Id.* at 798-99. Separate "suits [were] ongoing and the test case [had] progressed to the appellate stage," making that "maturing litigation"—not the putative class actions—"the basis for resolving all of the filed claims." *Id.* at 798. Nor was a class action "necessary to accomplish" centralization of claims within one court because of this Court's exclusive jurisdiction over challenges to the tax at issue. *Id.* And procedures would have to be devised to "resolve discovery and recovery issues on a consolidated basis," regardless of whether a class were certified. *Id.* at 799.

Finally, the Court explained that a class action was unwarranted given that "anyone who wishes to recover the tax has the opportunity to seek its recovery in court through procedures established by Congress for that purpose. Due process was and is available, and is being used by numerous claimants." *Id.* That process would require parties to "gather documentation so that it may be presented to the court" "whether certification occurs or not." *Id.* at 800. And "publicity about" the cases was "broad enough so that claimants" would know "that relief [was] available if

17

they [took] action," even without USCIT Rule 23's class notice procedures.  *Id.*  Ultimately, the Court "decline[d] to use the class action device to exact expenditure by the United States for" the purpose of refunding "small amounts" to individual claimants; "the test case procedure, already well along, [was] adequate."  *Id.*

A class action is even less warranted here.  Regarding predominance: Whether an issue predominates depends on what value the resolution of the class-wide issue will have in each class member's underlying cause of action.  *See Amchem Products v. Windsor*, 521 U.S. 591 (1997).  As in *Baxter*, this is not a case in which class-wide questions will outweigh individual ones.  The important common issues – the merits – have already been resolved, and plaintiff concedes this.  *Learning Res.*, 607 U.S. 229; Mot. 20.  And the remaining issue is not, as plaintiff says, "just how the refund of IEEPA duties will be accomplished."  Mot. 20.  As noted above, the CAPE function already provides the administrative mechanism for processing reliquidations and refunds.  Thus, the real underlying legal question is to what amount of refund each plaintiff is entitled.  *That* is what each putative class member cares about and has standing to pursue.  These individualized determinations cannot be made on a class-wide basis.  *See Baxter*, 925 F. Supp. at 798.  And reliquidation is merely a procedural step for receipt of refunds, not an authority for refunds in and of itself.  There still must be individualized court orders to process or pay refunds for finally liquidated entries because reliquidation does not provide CBP with the authority to violate statutory finality. Declaration of Susan S. Thomas, ECF No. 98-1 ¶ 12 (June 4, 2026).

Regarding superiority[2]: First, the approximately 4,000 individual plaintiffs (including

---

[2] The superiority subfactors are (1) "class members' interest in individually controlling the prosecution … of separate actions," (2) the "extent and nature of any litigation concerning

*(cont'd)*

18

small business) that have sued thus far strongly indicate that claimants have an interest in controlling and maintaining their own actions.[3]  No class of importer is prohibited from filing suit.  Second, CBP is prepared to begin refunds for certain finally liquidated entries, through CAPE, by August 2026 for those thousands of importers who have brought actions, should the Court order reliquidation in those cases.  To now insert a completely different path to refunds would only cause confusion and delay.  And given the significant publicity surrounding these cases, there is no credible argument that a "comprehensive notice program" is needed to alert claimants about the availability of relief.  *Baxter*, 925 F. Supp. at 800.  CBP has also engaged in extensive messaging to notify all parties of the availability of CAPE for seeking a refund on appropriate entries, including the establishment of a public webpage on IEEPA refunds, with numerous Frequently Asked Questions (FAQs), public messages, trainings and guidance manuals and documents, particularly because small businesses account for the overwhelming majority of importers.  Declaration of Susan S. Thomas, ECF No. 98-1 ¶ 15 (June 4, 2026).  Third, the ability to centralize litigation in this Court through 28 U.S.C. §§ 1581(i) and 1631 weighs against certifying a class.  Fourth, as framed by plaintiff, the Court would have no role in class management.  But for the reasons explained above, plaintiff's framing does not provide final relief to the class, and so the absence of management difficulties is mere fiction.

Accordingly, defendants respectfully request that the Court deny plaintiff's untimely

---

the controversy already begun by or against class members," (3) the "desirability … of concentrating the litigation of the claims in the particular forum," and (4) "the likely difficulties in managing a class action."  USCIT Rule 23(b)(3)(A)-(D).

[3] *See* ECF No. 81; *Euro-Notions Florida, Inc. v. United States*, No. 25-595, ECF No. 13 (CIT); *AGS*, No. 25-255, ECF No. 42; *Grant & Bowman, Inc. v. U.S. CBP*, No. 25-689, ECF No. 13 (CIT).

motion for class certification.  As for plaintiff's request to appoint class counsel, we suggest the question is unnecessary.  Plaintiff primarily requests certification of a Rule 23(b)(2) injunctive relief class, which by its very nature, envisions final relief by the Court and which would require no management by counsel.  Plaintiff's alternative request to certify a Rule 23(b)(3) class is cursory at best and certainly does not meet their burden.  If the Court determines to pursue this type of class, we respectfully request the ability to comment on plaintiff's suggestion of class counsel then.

DATED: July 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

*Attorneys for Defendants*

20

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6156 words, excluding the table of contents, table of authorities, any addendum containing statutes, rule or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Claudia Burke
CLAUDIA BURKE