**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-01088 |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL[1]**

[1] Plaintiff does not address herein the request to lift the stay in this case given the Court lifted the stay and designated it as the lead case. ECF No. 17.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
ARGUMENT ........ 3
I. The Government's Objections to Class Certification Are Meritless. ........ 3
A. There Is No Issue As to Timeliness. ........ 3
B. C.I.T. Rule 23(a)(2) Commonality Is Satisfied. ........ 6
C. This Case Is Properly Certified Under C.I.T. Rule 23(b)(2). ........ 8
II. Class Certification Delivers the Court's Goal of Facilitating Refunds to All Impacted Importers. ........ 12
A. Class Certification Removes Any Putative Barriers to Universal Relief for Liquidated Tariff Entries ........ 13
B. Class Certification Creates a Ready-Made Mechanism to Address Future Issues Facing Small Importers and Other Edge Cases ........ 14
C. Court-Supervised Class Notice Is Critical to Procedural Fairness. ........ 15
D. Class Certification Ensures Court Supervision of the Refund Process ........ 19
III. Appointment of Class Counsel Is a Necessary Component of Certification. ........ 20
CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
687 F. App'x 10 (2d Cir. 2017) ....................3, 4

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)....................15

*Arnold v. Ariz. Dep't of Pub. Safety*,
233 F.R.D. 537 (D. Ariz. 2005) ....................4

*Barbara v. Trump*,
790 F. Supp. 3d 80 (D.N.H.), *cert. granted before judgment*, 146 S. Ct. 879 (2025), and *aff'd*, 146 S. Ct. 2438 (2026)....................13

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022) ....................11

*Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008)....................6

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
778 F. Supp. 3d 355 (D. Mass. 2025)....................8

*Danziger v. United States*,
181 Fed. Cl. 93 (2026) ....................8

*Geneva Rock Prods., Inc. v. United States*,
100 Fed. Cl. 778 (2011) ....................8

*Goodlaxson v. Mayor & City Council of Balt.*,
776 F. Supp. 3d 311 (D. Md. 2025)....................8

*Huang v. Shanghai City Corp.*,
No. 19-cv-7702 (LJL), 2022 WL 1468450 (S.D.N.Y. May 10, 2022)....................4

*Huntsman v. Sw. Airlines Co.*,
No. 19-CV-00083-PJH, 2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ....................7

*Jamie S. v. Milwaukee Public Schools*,
668 F.3d 481 (7th Cir. 2012) ....................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Johnson v. Meriter Health Services Employee Retirement Plan*,
702 F.3d 364 (7th Cir. 2012) ....................11

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026)....................6

*Overby v. Anheuser-Busch, LLC*,
178 F.4th 175 (4th Cir. 2026) ....................2, 3, 12

*Platero v. United States*,
180 Fed. Cl. 425 (2026) ....................7

*Saravia v. 2799 Broadway Grocery LLC*,
No. 12-cv-7310 (PAC), 2014 WL 2011720 (S.D.N.Y. May 16, 2014)....................4

*Scholl v. Mnuchin*,
489 F. Supp. 3d 1008 (N.D. Cal. 2020) ....................11

*Shakhnes ex rel. Shakhnes v. Eggleston*,
740 F. Supp. 2d 602 (S.D.N.Y. 2010), *aff'd in part, vacated in part on other grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012) ....................8

*Shinyei Corp. of Am. v. United States*,
355 F.3d 1297 (Fed. Cir. 2004)....................13

*Third Circuit Task Force Report on Selection of Class Counsel*,
208 F.R.D. 340, 348 (2002) ....................18

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)....................2, 13

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*,
157 Fed. Cl. 189 (2021) ....................8

*Vazquez Perez v. Decker*,
No. 18-cv-10683, 2020 WL 7028637 (S.D.N.Y. Nov. 30, 2020)....................2

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................7, 10

*Zaragoza v. Union Pac. R.R. Co.*,
112 F.4th 313 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428 (2025)....................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Statutes**

28 U.S.C. § 1581(i) ....................15

**Court Rules**

Fed. R. Civ. P. 23 .................... *passim*

Fed. R. Civ. P. 23(a) ....................6, 7

Fed. R. Civ. P. 23(a)(2) ....................6, 7

Fed. R. Civ. P. 23(b)(2) .................... *passim*

Fed. R. Civ. P. 23(c)(1)(B) ....................20

Fed. R. Civ. P. 23(g) ....................20, 21

Fed. R. Civ. P. 23(g)(4) ....................21

**Treatises**

1 Newberg and Rubenstein on Class Actions § 1:10 (6th ed.) ....................20

1 Newberg and Rubenstein on Class Actions § 3:23 (6th ed.) ....................7

1 Newberg and Rubenstein on Class Actions § 3:27 (6th ed.) ....................6

1 Newberg and Rubenstein on Class Actions § 3:84 (6th ed.) ....................20

2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) ....................12

7A Fed. Prac. & P. Civ. § 1763.1 (4th ed.) ....................6

7AA Fed. Prac. & P. Civ. § 1775 (3d ed.) ....................8

7AA Fed. Prac. & P. § 1785.3 (3d ed.) ....................3, 4

**Regulations**

19 C.F.R. § 128.24(a) ....................15

## INTRODUCTION

Since the commencement of litigation over the legality of the IEEPA tariffs, the Government has assured the courts that "they will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund ***any*** IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties." *Princess Awesome, LLC v. U.S. Customs & Border Protection*, Court No. 25-078, ECF No. 17 ¶ 2 (emphasis added); *accord V.O.S. Selections, Inc. v. U.S. Customs & Border Protection*, Court No. 25-066 ("*V.O.S. Selections*"), ECF No. 32 at 42 ("[E]ven if future entries are liquidated, defendants do not intend to oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged tariffs if the tariffs are found in a final and unappealable decision to have been unlawfully collected. Such reliquidation would result in a refund of ***all*** duties determined to be unlawfully assessed, with interest.") (emphasis added). The Court relied on such representations in denying motions for injunctive relief. *See AGS Company Automotive Solutions v. U.S. Customs & Border Protection*, Court No. 25-255 ("*AGS*"), ECF No. 29. While giving those broad assurances, Defendants have also said that for finally liquidated entries, refunds are limited to "entries for which plaintiffs were the importers of record." *See, e.g.*, *Princess Awesome, LLC*, ECF No. 17 ¶¶ 2–3 ("The proposed approach ensures that the ***plaintiffs*** may obtain judicial relief . . . .") (emphasis added); *AGS*, ECF No. 34 at 2 (The Government defining "similarly situated plaintiffs" entitled to relief as "those who challenge IEEPA tariffs in a manner and on grounds that substantially overlap with the IEEPA tariffs presently before the Supreme Court").

Relying now on this distinction between importers who *have* filed claims in this Court challenging the collection of duties under IEEPA and those who *have not*, Defendants oppose the

Court's order directing them to reliquidate finally liquidated entries on which non-plaintiff importers paid IEEPA duties. *See generally V.O.S. Selections, Inc. v. U.S. Customs & Border Protection*, No. 26-1895, ECF No. 19 (Fed. Cir. Aug. 10, 2026) (Gov't Appeal Br.). Remarkably, Defendants also oppose the certification of a class that would allow the Court to accomplish these ends for non-plaintiff importers from whom CBP illegally collected the duties.

Class certification under C.I.T. Rule 23 will enable the Court to order reliquidation for all importers and avoid concerns over whether *Trump v. CASA* is applicable to this Court or to this matter. An order certifying the proposed Class will create a ready-made structure to address future issues not currently addressed through the CAPE system, including, for example, postal entries, customs brokers who acted as the importer of record for consignees, and entries under protest. Using C.I.T. Rule 23 will allow the Court to provide notice to affected importers who have not made claims for refunds, thereby increasing the usage of the CAPE system and preparing for whatever additional measures may be necessary to extend relief as comprehensively as possible. Further, the appointment of proposed Class Counsel will place an institutional actor officially before the Court with an obligation to represent the interests of all importers in the proposed Class to ensure the most complete relief.

Defendants suggest that the Court should not certify a class because a class action "represents an exceptional form of litigation." Response in Opposition to Class Certification ("Opp."), ECF No. 18 at 3 (quoting *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175 (4th Cir. 2026)). "Exceptional" does not mean inappropriate. Courts "routinely grant class action status under Rule 23(b)(2) in cases 'alleging systemic administrative failures of government entities.'" *Vazquez Perez v. Decker*, No. 18-cv-10683, 2020 WL 7028637, at *9 (S.D.N.Y. Nov. 30, 2020). *Anheuser-Busch* illustrates why a class action is the proper procedural device here: "[T]he class-

action mechanism serves the important function of vindicating the interests of the aggrieved. That is certainly true in cases where low-dollar injuries may otherwise disincentivize litigation. . . . And class actions collect such claims in a manner that promotes efficiency and economy of litigation and discourages a drip of repeated individual actions inundating defendants." 178 F.4th at 181–82 (citation modified). Here, that "drip" is already a flood: as of July 15, there were more than 3,700 refund suits before this Court, with hundreds more filed since then (corresponding to the Government's reticence to refund the payments of non-litigants).[2]

Plaintiff Freestyle World has consistently sought to represent the interests of the small importers most at risk of exclusion from the limited refund process established by CBP. Plaintiff now respectfully requests that the Court set aside the roadblocks thrown up by the Government, use C.I.T. Rule 23 to certify a class of importers wrongfully assessed tariff duties under IEEPA, and appoint the undersigned counsel, who possess experience in complex trade disputes, class action litigation, and successful administration of notice and claims programs, as Class Counsel.

## ARGUMENT

### I. The Government's Objections to Class Certification Are Meritless.

#### A. There Is No Issue As to Timeliness.

"A motion for class certification should 'be denied [as untimely] only when the late timing of the determination may cause prejudice or unduly complicate the case.'" *Acticon AG v. China N. E. Petroleum Holdings Ltd*., 687 F. App'x 10, 12 (2d Cir. 2017) (quoting 7AA Fed.

[2] *See* Isabel Gottlieb, *Tariff Lawsuits Surge as Importers See Path to Blocked Refunds*, BLOOMBERG (Aug. 11, 2026, 11:43 AM), *available at* https://news.bloombergtax.com/international-trade/tariff-lawsuits-surge-as-importers-with-blocked-refunds-see-path (last visited Aug. 14, 2026) (attached as Exhibit 1).

Prac. & P. § 1785.3 (3d ed.)). Defendants, in their papers and before this Court, identify neither prejudice nor complications arising from certification. The purported unfairness Defendants identified but did not elucidate during the August 6 hearing in *V.O.S. Selections* ("August 6 Hearing") was "risk allocation." August 6 Hearing at 29:30, *V.O.S. Selections* ("Aug. 6 Hrg.").[3] But, as this Court noted, it cannot be that "the Government could ever have possibly thought that this case would only involve the plaintiffs that were before the Supreme Court" or that the Supreme Court's decision would not be made generally applicable to all importers. Aug. 6 Hrg. at 29:32. Moreover, Defendants know that Plaintiff's class certification motion "was not so unexpected as to prejudice" them. *Acticon*, 687 F. App'x at 13; *accord Huang v. Shanghai City Corp.*, No. 19-cv-7702 (LJL), 2022 WL 1468450, at *8 (S.D.N.Y. May 10, 2022) ("[W]hen a defendant has notice that the plaintiffs will likely seek certification and the filing of a motion for class certification is 'not so unexpected as to prejudice the defendants,' it is error to deny a motion for class certification on timeliness grounds.").

Any alleged "delay" filing for class certification must be "evaluated in light of the circumstances of the case." 7AA Wright & Miller, Fed. Prac. & P. § 1785.3 (3d ed.). Here, Plaintiff did not "passively bide[] its time and wait[] for months before asking for class certification." Opp. at 6.

---

[3] Defendants incorrectly asserted during the August 6 Hearing that it is "not [their] burden to say how" they would have "respon[ded] differently." Aug. 6 Hrg. at 28:51. Defendants must show prejudice to defeat a class certification motion on grounds of untimeliness. *See Saravia v. 2799 Broadway Grocery LLC*, No. 12-cv-7310 (PAC), 2014 WL 2011720, at *2 (S.D.N.Y. May 16, 2014) ("Defendants have not demonstrated prejudice, and they certainly have had ample notice of the scope this lawsuit. . . . absent a showing of prejudice, the Court will not deny this motion for untimeliness."); *Arnold v. Ariz. Dep't of Pub. Safety*, 233 F.R.D. 537, 541 (D. Ariz. 2005) ("Courts applying Rule 23, as amended, do not deny class certification based on timeliness unless the delay has prejudiced a defendant. In addition, courts, including the Ninth Circuit, have held that so long as no prejudice results, it is permissible to proceed on the merits before class certification.") (internal citations omitted).

- On February 19, 2026, Plaintiff filed its *class action complaint* the day prior to the Supreme Court's merits decision, ECF No. 4, after which, per Administrative Order 25-02, it was automatically "stayed upon commencement."
- On March 5, 2026, Plaintiff filed a motion to intervene in *Atmus Filtration, Inc. v. U.S. Customs and Border Protection*, Court No. 26-1259 ("*Atmus Filtration*"), explaining that Plaintiff and its counsel sought to "offer[] undersigned counsel's *class action* and *mass action experience*" on behalf of importers who "have not filed their own individual lawsuits." *Id.*, ECF No. 24 at 2 (emphasis added).
- The following day, the Court denied the motion. *Id.*, ECF No. 30. As the *Freestyle World* case remained stayed, Plaintiff observed ongoing proceedings in the designated test cases and engaged Dr. Shannon R. Wheatman (of Signal Interactive Media) to address initial concerns about the CBP notice plan, *See* Diamand Decl. ¶¶ 5–6, ECF No. 12-3.
- As the Government's reluctance to make refunds widely available became clear on June 3, 2026, *V.O.S. Selections*, ECF No. 93, Plaintiff moved to lift the stay and for class certification on June 23, 2026, ECF No. 12.
- On July 17, 2026, the Court lifted the stay and designated this the lead test case. ECF No. 17.

Plaintiff's continued and consistent efforts on behalf of the proposed Class do not evidence any sort of tactical delay and have not prejudiced Defendants.

Additionally, Defendants proclaim that because the merits of this case have been resolved in their entirety, class certification is inappropriate. *See* Opp. at 5. This is not so. The Supreme Court "sa[id] nothing . . . about whether, and if so how, the Government should go about

returning the billions of dollars that it has collected from importers." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 390 (2026) (Kavanaugh, J., dissenting). Now, it appears that Defendants may be putting at issue not only how, but to whom refunds should be paid. It is this Court that ordered CBP to issue refunds to all importers and it is this Court that has overseen the progressive development of the refund mechanisms thus far. This Court is still faced with merits questions (common to the proposed Class), including but not limited to: whether *all* affected importers will be entitled to refunds; how refunds will be accomplished outside of CAPE; whether the Court can order CBP to reliquidate finally liquidated entries through a class-wide order (rather than individual orders); and how and to what extent CBP must notify importers of the right to a refund and process by which to obtain it.

**B. <u>C.I.T. Rule 23(a)(2) Commonality Is Satisfied.</u>**

C.I.T. Rule 23(a)(2)'s commonality requirement is necessarily satisfied in a Rule 23(b)(2) action because "[a] claim that the opposing party 'has acted or refused to act on grounds that apply generally to the class' necessarily presents a common question of fact" and "a claim that injunctive or declaratory relief is appropriate for the class as a whole presents a common question of law." 1 Newberg and Rubenstein on Class Actions § 3:27 (6th ed.) (quoting Rule 23(b)(2)); *accord Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) ("The Court's analysis of the commonality requirement of Rule 23(a) necessarily touched on the propriety of certifying the class under Rule 23(b)(2)."). The key inquiry for commonality is "whether there is a common unlawful policy that has injured the class as a whole." 7A Fed. Prac. & P. Civ. § 1763.1 (4th ed.). "If so, liability can be decided based on the common questions and the action will meet the standard." *Id.* Here, it is undisputed that Defendants applied a common, unlawful policy imposing tariffs under IEEPA on importers of

merchandise into the U.S., injuring the proposed Class as a whole. That is all that is required to satisfy the Rule 23(a)(2) commonality requirement in a Rule 23(b)(2) action.[4]

Defendants' arguments to the contrary are unavailing. The common questions are clearly central to each proposed Class Member's claim.[5] The most obvious common question is "whether the Challenged Tariff Orders are unlawful." Class Action Complaint, ECF No. 4 ("Compl.") ¶ 68(a). For purposes of commonality, "it does not matter that" this question "has already been adjudicated." *Platero v. United States*, 180 Fed. Cl. 425, 432 (2026); *see also Huntsman v. Sw. Airlines Co.*, No. 19-CV-00083-PJH, 2021 WL 391300, at *4 (N.D. Cal. Feb. 3, 2021) ("That a resolved issue can still impact the predominance analysis implies that it also can be a common issue."). Defendants cannot dispute that this is "central to the validity of each class member's claim." Opp. at 8. The Government's positions have raised additional common, pivotal questions, including how to best effectuate the required reliquidation and whether only "plaintiffs," or all duties payers, will get refunds.

It is for these reasons that Defendants' reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), is misplaced. The pivotal point in *Dukes* is that Rule 23(a)(2) requires a question with a common *answer*, not simply a common question. *Id.* at 350. The Supreme Court determined that *Dukes* did not present a common answer to the relevant inquiry, which was "the reason for a particular employment decision" as to each affected employee. *See id.* at 352 (citation omitted). The opposite applies here. The Supreme Court has provided a common answer to the question of liability. Now, this Court is tasked with implementing that holding and

[4] Defendants do not challenge the numerosity, typicality, or adequacy requirements of Rule 23(a).

[5] Defendants are wrong to imply that common questions must apply to every individual class member. Opp. at 7–8; *see* 1 Newberg and Rubenstein on Class Actions § 3:23 (6th ed.) ("The common question need not apply to all class members.").

generating the common answer to the question of *how* the affected importers can obtain the relief that flows from the Supreme Court's decision.

Moreover, Defendants' attempt to undermine commonality as to the notice question is unpersuasive. They argue only that "[q]uestions of notice" are different for importers that lack access to ACE or electronic bank accounts versus those that do. Opp. at 8. Those differences pose no issue. "Individual class members need not be identically situated to warrant a finding of commonality." *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 157 Fed. Cl. 189, 198 (2021) (quoting *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 788 (2011)) (citation modified). The kinds of "factual variance between plaintiffs" that Defendants assert are "inconsequential" and irrelevant. *Danziger v. United States*, 181 Fed. Cl. 93, 98 (2026).

**C. <u>This Case Is Properly Certified Under C.I.T. Rule 23(b)(2).</u>**

The focus of C.I.T. Rule 23(b)(2) is the Government's conduct—whether it "acted or refused to act on grounds that apply generally to the class"—*not* the conduct or factual circumstances of individual class members. For this reason, "Rule 23(b)(2) . . . has been used extensively to challenge the enforcement and application of complex statutory schemes." 7AA Fed. Prac. & P. Civ. § 1775 (3d ed.); *accord Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 628 (S.D.N.Y. 2010) (collecting cases), *aff'd in part, vacated in part on other grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012); *Goodlaxson v. Mayor & City Council of Balt.*, 776 F. Supp. 3d 311, 332 (D. Md. 2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 386 (D. Mass. 2025). Here, the Government imposed tariffs and unlawfully collected duties from the proposed Class as a whole, placing this case squarely within C.I.T. Rule 23(b)(2).

Defendants' assertions that the C.I.T. Rule 23(b)(2) standard is not met are based on two faulty premises: (1) that Plaintiff's requested relief is not "final"; and (2) that the monetary relief that will flow from the proposed injunction is not "incidental." Both are incorrect.

First, there can be no dispute that "final injunctive relief . . . is appropriate respecting the class as a whole." C.I.T. Rule 23(b)(2). The usefulness of a single and indivisible injunction here has already been demonstrated by the Court's March 5 Amended Order. Certifying the proposed Class extends the benefits of that order and will obligate Defendants to provide tariff refunds for all proposed Class Members. *See* Motion for Class Certification, ECF No. 12 ("Mot.") at 18–19. Defendants' argument that Plaintiff "wants a single injunction for reliquidation of entries," which they say is "merely a starting point to the actual relief sought," is in error. Opp. at 9. Plaintiff seeks an injunction requiring the Government "to refund to Plaintiff and Class Members the IEEPA duties collected" under the Challenged Tariff Orders, Compl. ¶ 111(e), including by "reliquidat[ing] entries, disgorge[ing] unlawfully collected funds, establish[ing] a comprehensive notice program, and creat[ing] mechanisms for small importers . . . to seek refunds," Mot. at 19. In response, Defendants claim this would not "provide any relief to any class member." Opp. at 9 (emphasis removed). Yet, the Government has acknowledged that the relief provided to a class of importers would be precisely the same and precisely as effective as the injunctive relief this Court has already provided to the individual importers before it.

*Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012), on which Defendants rely, does not say otherwise. The *Jamie S.* Court found that Rule 23(b)(2) was not satisfied where the relief sought would initiate a process to make "determinations of liability and remedy." *Id.* at 499. Here, the Supreme Court made the determination of liability and the remedy is not highly individualized: it is the refund of unlawfully collected funds. Unlike in *Jamie S.*, an

order for class-wide refunds would not require Defendants to manage "thousands of individual determinations of class membership, liability, and appropriate remedies." *Id.* Liability has been determined, the scope of the class is known, and "[i]t is undisputed that the remedy for this unlawful collection is for the United States Government to refund the unlawfully collected duties." *V.O.S. Selections*, ECF No. 89. Moreover, it is undisputed that CBP routinely processes millions of individual transactions to determine importer liabilities and refund overpayments. CBP's statistics indicate that in fiscal year 2025, it processed 50.8 million entries and in fiscal year 2026 (through July 27), it processed 83.1 million entries.[6] In this context, even if CBP needs to make thousands of determinations, it has the ability to do so.

*Dukes*, 564 U.S. 338, is similarly inapt: it, too, found that Rule 23(b)(2) was not satisfied because the plaintiffs brought employment discrimination claims under Title VII, which "includes a detailed remedial scheme" that entitles the defendant to "individualized determinations of each employee's eligibility for backpay." *Id.* at 366. Because the nature of the claims at issue in *Dukes* require "each individual class member" be granted a "*different* injunction" against the defendant and "would be entitled to an individualized award of monetary damages," litigating on a class-wide basis would deprive the defendant of litigating "its statutory defenses to individual claims." *Id.* at 360–61 (emphasis in original). Here, not only is there no issue as to awarding monetary damages, but Defendants have averred that they "don't intend to fight" cases "brought for plaintiffs who are actually owed refunds." Aug. 6 Hrg. at 47:09. Thus, the concerns motivating *Dukes* are not present.

---

[6] *Trade Statistics*, U.S. CUSTOMS AND BORDER PROTECTION, *available at* https://www.cbp.gov/newsroom/stats/trade (last visited Aug. 14, 2026) (attached as Exhibit 2).

One notable and highly relevant recent example of a similar usage of a (b)(2) class is *Scholl v. Mnuchin*, in which the district court certified a Rule 23(b)(2) class (and appointed Lieff Cabraser class counsel) seeking an injunction forcing the Government to distribute CARES Act relief to individuals it had improperly deemed ineligible for benefits. 489 F. Supp. 3d 1008 (N.D. Cal. 2020). Although complex issues initially arose over notice and administration, the court had little trouble acknowledging the suitability of the class action mechanism. *Id.* at 1046 ("The court agrees with plaintiffs that defendants' policy is generally applicable to the class as a whole," satisfying Rule 23(b)(2)). Defendants' attempt to distinguish *Scholl* misses the mark. While *Scholl* involved uniform payment amounts, Rule 23(b)(2) "does not require that 'the relief to each member of the class be identical, only that it be beneficial,'" such that "different class members can benefit differently from an injunction." *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022). And the Government program at issue here—illegally assessing tariffs on importers—is no less broad than the IRS's policy of withholding CARES Act relief from incarcerated individuals, and it is equally susceptible to universal injunctive relief.

The Government's attempt to distinguish *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012), is equally unconvincing. *Johnson* involved a Rule 23(b)(2) injunction that ultimately required the refund of pension benefit funds to the class according to the benefits formula. The Government notes that *Johnson* involved a "single, definitive formula to compute each entitlement," Opp. at 18, but that is no different from the tariff refunds at issue here. The Government identifies a number of procedural steps involved in providing refunds, but—as evidenced by the CAPE program itself—there is little dispute that this mechanical exercise can be performed at scale.

At bottom, the monetary relief that will flow from the injunction is incidental because Plaintiff is not asking the Court to calculate or award monetary damages. Rather, Plaintiff is asking the Court to establish every importer's entitlement to a refund, and then to require CBP to calculate and provide those refunds, through liquidation, reliquidation, or some other appropriate mechanism. CAPE's notable success to date demonstrates that CBP, based on their own records, has been independently able to calculate refunds to each importer. That is the essence of incidental monetary relief. *See* 2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) (Incidental monetary relief exists where "damages would flow to the class as a whole by virtue of its securing the sought after injunctive relief and hence need not be calculated on an individualized basis").

## II. Class Certification Delivers the Court's Goal of Facilitating Refunds to All Impacted Importers.

The Court has consistently expressed its objective in this litigation: "all unlawfully collected IEEPA duties should be refunded to the importers that had made deposits." *V.O.S. Selections*, ECF No. 89; *see also, e.g.*, *id.*, ECF No. 82 ("All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision."); *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection* ("*Euro-Notions*"), Court No. 25-00595, ECF No. 31; *Atmus Filtration*, ECF Nos. 29, 34; June 9 Hearing at 4:04–5:25, *V.O.S. Selections* ("June 9 Hrg."). The Government posits that to ease some of the burdens their approach will place on importers, the Court could develop "creative solutions," such as waiving court-filing fees or crafting template complaints. Aug. 6 Hrg. at 35:32–35:54, 50:32. But C.I.T. Rule 23 *is* the solution already created to "vindicat[e] the interests of the aggrieved. . . . promote[] 'efficiency and economy of litigation,' and discourage[] a drip of repeated individual actions inundating defendants." *Anheuser-Busch, LLC*, 178 F.4th at 181–82 (internal citations

omitted). Certification of a Rule 23(b)(2) class action is the best means of serving the Court's goal.[7]

**A. <u>Class Certification Removes Any Putative Barriers to Universal Relief for Liquidated Tariff Entries.</u>**

As the Court and the Government both acknowledged at the August 6 Hearing, a Rule 23(b)(2) injunctive relief class would resolve any issues as to (1) the application of *Trump v. CASA*, *Inc.*, 606 U.S. 831 (2025),[8] and (2) whether there is any legal prohibition against CBP's reliquidation of finally liquidated entries for all importers who paid IEEPA duties. *See* Aug. 6 Hrg. at 50:30 (The Government is "not disputing" the Court's point that "a class action would provide the necessary order" to satisfy the Government's reading of *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004)). Because the Rule 23(b)(2) class proposed by Plaintiff would, by its very nature, transform all IEEPA importers who are not presently plaintiffs seeking refunds in this Court into represented parties, the Court could extend its order requiring reliquidation (and future relief) without running into the concerns raised by the Government—and without having to wait for a decision in the *V.O.S. Selections* appeal. *See CASA*, 606 U.S. at 850 (describing universal injunctions as a "class-action workaround"); *id.* at

[7] Class certification is the alternative to filing thousands of individual cases and waiving hundreds of thousands of dollars in filing fees. If the Federal Circuit concludes, as Defendants seek, that *CASA* prohibits the universal injunction and this Court denies class certification, the *only* mechanism to obtain refunds on finally liquidated entries will be filing individual lawsuits. *Worse still*, there will undoubtedly be many importers who simply do not file an individual suit, and the Court will thereby have licensed an outcome inimical to its core objectives.

[8] Indeed, in the successor litigation to *Trump v. CASA*, the Supreme Court recently affirmed the district court's order preliminarily enjoining Executive Order No. 14260 and provisionally certifying a nationwide class of children who would be denied citizenship under it. *See Barbara v. Trump*, 790 F. Supp. 3d 80 (D.N.H.), *cert. granted before judgment*, 146 S. Ct. 879 (2025), and *aff'd*, 146 S. Ct. 2438 (2026).

919 (Sotomayor, J., dissenting) ("The majority leaves untouched one important tool to provide broad relief to individuals subject to lawless Government conduct: Rule 23(b)(2) class actions for injunctive relief.").

### B. <u>Class Certification Creates a Ready-Made Mechanism to Address Future Issues Facing Small Importers and Other Edge Cases.</u>

Plaintiff's proposed Class is deliberately not limited to non-plaintiff importers with liquidated entries. Though that may represent the largest and most pressing category of importers presently unable to obtain refunds through CAPE, it is not the only category, and it will not be the last. As this Court stated at the August 6 Hearing:

> [T]he progress on the refund process through CAPE will one day come to an end. Some importers have not and will not take advantage of the system. It is believed that these are small importers who, because of the cost or the effort involved in filing a CAPE declaration, will never take advantage of CAPE. In addition, CAPE itself does not accept certain kinds of entries, including finally liquidated entries for processing. Should further action not be taken, we are left with the prospect of the Treasury retaining billions of dollars of unlawfully collected duties and tens of thousands of importers being denied refunds they are owed.

Aug. 6 Hrg. at 1:38; *accord V.O.S. Selections*, ECF No. 98-1 (June 4, 2026 Thomas Declaration) ¶ 13 (acknowledging the need for "an alternative approach" to process refunds for some categories of entries); Mot. at 3–4 (identifying underrepresentation in CAPE of small importers and barriers faced).

Since Freestyle World commenced this action, its efforts have focused on precisely these small importers excluded from the CAPE system or unable to "take advantage" of it. *See* Compl. ¶¶ 5–9 & 54–64 (discussing barriers faced by small importers and proposing small importer class). Plaintiff's broadly inclusive proposed Class appropriately allows the Court to appoint class counsel formally empowered to represent the interests of all importers in the proposed Class when subsequent issues arise, whether they be postal entries, consolidated informal

entries,[9] entries with open or suspended protests, entries subject to reconciling entries or drawback claims, other as-yet-unforeseen complications, or merely a lack of uptake for whatever reason—particularly among small importers—that the Court has discussed. Certification of a class will also help address the statute of limitations on claims under 28 U.S.C. § 1581(i), which may expire as early as February 2027, both by providing notice and ensuring that all proposed Class Members receive the benefit of tolling.[10] Appointment of a class representative and class counsel will create a formal mechanism to address these issues facing all importers, and particularly small businesses, and ensure that refunds are as widely accessible as possible.

**C. <u>Court-Supervised Class Notice Is Critical to Procedural Fairness.</u>**

The purpose of class action notice is to apprise class members of their rights and options to obtain relief, and to do so through plain, easy-to-understand language. *See* Declaration of Shannon R. Wheatman, Ph.D. ("Wheatman Decl.") ¶¶ 13, 19. If class members cannot receive or understand a notice, they cannot exercise or make informed decisions regarding their rights. Class notice is an indispensable tool available to the Court to avoid "the prospect of the Treasury retaining billions of dollars of unlawfully collected duties," Aug. 6 Hrg. at 1:38, and to maximize the number of importers able to obtain the relief ordered by this Court.

The anticipated quantum of unrecovered funds is staggering. The Government estimated that 10% of IEEPA duties paid and 5% of entries will not be eligible through CAPE, even after

---

[9] Executive Assistant Commissioner Susan Thomas mentioned consolidated informal entries during the June 9 Hearing as an example of an entry not filed in ACE. June 9 Hrg. at 29:57. Under 19 C.F.R. § 128.24(a), an express consignment operator or carrier may consolidate multiple shipments valued at $2,500 or less on one entry.

[10] The statute of limitations for the claims of any proposed Class Members would be tolled upon certification under *American Pipe*. *See Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 319 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428 (2025) ("Thus, when a district court certifies a class, that certified class becomes the pertinent class definition" in the context of *American Pipe* tolling) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)).

Phase 3 is implemented. June 9 Hrg. at 29:30. Those potentially unrecoverable duties represent $16.6 billion in duties the United States unlawfully collected from importers. That does not account for the duties the U.S. collected from importers that will not take advantage of CAPE even if their entries are eligible.

Defendants have not presented a plan to refund the $16.6 billion that will not be processed through CAPE, nor have they committed to doing so, and they have not contemplated a notice plan to importers with CAPE-eligible claims who have not yet filed. Indeed, the CBP public webpage states expressly that it will *not* email CAPE updates and directs importers to affirmatively seek out information on CAPE's progression.[11]

Given that CBP possesses data identifying many of the affected importers,[12] the resistance to active notice to potential claimants not only betrays its position but risks due process challenges. Defendants' expressed approach to notice is an amalgam of the "significant publicity surrounding these cases" and the establishment of a "public webpage" containing "numerous Frequently Asked Questions (FAQs), public messages, trainings and guidance manuals and documents." Opp. at 19. Neither is designed to reach a small-business importer.

---

[11] *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, U.S. CUSTOMS AND BORDER PROTECTION, *available at* https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited Aug. 14, 2026) (attached as Exhibit 3) ("Will CBP email CAPE refund status updates, reports, or related documents? No. CBP will not email CAPE updates. You should use ACE Reports to keep track of your refund or request this information from your customs broker if your broker filed your CAPE Declaration on your behalf."). This instruction assumes access to ACE and the requisite knowledge of how to run ACE reports or that the importer used a broker to make entries. These assumptions are likely untrue for some portion of the expected 10% of the claims.

[12] Individuals and businesses seeking to become importers of record are required to complete CBP Form 5106. This is the Importer Identity Form, which CBP uses to collect and maintain importer identification information, assigning a unique identifying number to each. *See CBP Form 5106 – Create/Update Importer Identity Form*, U.S. CUSTOMS AND BORDER PROTECTION, *available at* https://www.cbp.gov/document/forms/cbp-form-5106-createupdate-importer-identity-form (last visited Aug. 14, 2026) (attached as Exhibit 4).

Wheatman Decl. ¶ 24. This is incomplete, certainly not "extensive," Opp. at 19, and fails the appropriate standards for a comprehensive notice program.

First, "significant publicity surrounding these cases," *id.* at 19, only underscores the importance of class notice. As the Court acknowledged, public discourse (and ongoing political commentary and outreach by third parties seeking to purchase claims from the refund process) has engendered a perception that "the Government is seeking to pick and choose which importers it favors and which duties it wishes to refund and which duties it wishes not to refund." June 9 Hrg. at 13:07. The Parties before the Court may have a different perspective, but the importers not before this Court, nor the public at large, have the benefit of an informed outlook. "Media coverage and public attention are not a substitute for notice" because "[c]overage is not directed to any identified person, reaches audiences that overlap only incidentally with the affected population, and does not tell readers what they must do specifically" to obtain a refund. Wheatman Decl. ¶ 23.

Second, the public webpage is substantively and structurally inadequate. Much of the information on the webpage reports it was last "[u]pdated 4/10/2026."[13] Beyond this, to obtain critical information requires navigating through various layers of web-links. State-of-the-art notice requires current, refreshed, clear, and accessible information. Wheatman Decl. ¶¶ 19, 40. Additionally, by contrast to other Government websites such as the IRS's business tax portal[14]

---

[13] *See supra* note 11.

[14] *Tax information for businesses*, INTERNAL REVENUE SERVICE, *available at* https://www.irs.gov/businesses (last visited Aug. 14, 2026) (attached as Exhibit 5) (offering English, Spanish, Simplified Chinese, Traditional Chinese, Korean, Russian, Vietnamese, and Haitian Creole).

and the SSA's benefits application portal,[15] CBP's notice is in English only. It is also not written in plain or particularly clear language. For example, when describing who can file a CAPE claim, the FAQ page states simply: "Only the IOR or the licensed customs broker who filed the entries can file a CAPE Declaration." Not every importer will know the meaning of "IOR" (importer of record) or that the delivery service that dropped the package on their front door may have acted as the broker to clear the shipment and pay the IEEPA duties. Wheatman Decl. ¶ 26. Plain language is not limited to terminology—"embedded in the term is sentence length, subject/verb order, unambiguous modifiers, and even the active voice."[16] And without plain language, "notice is moot."[17]

Further, the information CBP has published is only available to importers who know to actively seek it out—the Government has not implemented any affirmative outreach to importers (despite its extensive records of importers who have paid IEEPA tariffs). As Dr. Wheatman explains, "[t]he webpage is a 'pull' channel: it informs only a reader who already knows the refund process exists and goes looking for it," whereas "[n]otice programs are built on 'push' communications precisely because the people most at risk of losing a right are the people least likely to go looking for it." Wheatman Decl. ¶ 24.

Certification of a class action provides the means to authorize comprehensive notice. Class counsel bear the responsibility to "work diligently to maximize class recovery," *Third*

---

[15] *Social Security Information in Other Languages*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/multilanguage/ (last visited Aug. 14, 2026) (attached as Exhibit 6) (offering 17 languages in addition to English and Spanish).

[16] Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 Rev. Litig. 53, 69 (2010), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1766035.

[17] *Id.*

*Circuit Task Force Report on Selection of Class Counsel*, 208 F.R.D. 340, 348 (2002), including through developing and implementing a comprehensive notice program. Proposed Class Counsel initiated this process by working with Dr. Shannon Wheatman, a premier notice expert, to design and implement a notice program tailored to reach all importers. Wheatman Decl. ¶ 20.

Court-supervised notice is especially critical to counter the oversaturated media environment with "an authoritative, balanced source of information that enables class members to make informed decisions free from the pressure of interested third parties." *Id.* ¶ 18. Unlike media coverage, class action notice is supervised and approved by the Court, which ensures that all communications to class members are accurate, balanced, and not misleading. *See id.* ¶ 15. It gives the Court the authority and oversight to ensure "all the importers, whether large or small" know that they are entitled to refunds and how to obtain those refunds. June 9 Hrg. at 18:08. Defendants note that "small businesses account for the overwhelming majority of importers." Opp. at 19. It is therefore imperative to provide easy to understand materials outlining the rights and options to obtain a refund, and to ensure that the language selection is targeted against the characteristics of the proposed Class. *See* Wheatman Decl. ¶¶ 19, 20, 25.

**D. Class Certification Ensures Court Supervision of the Refund Process.**

Since the Supreme Court invalidated the Government's imposition of tariffs under IEEPA, the Government suggested that it has sole discretion to fashion and execute a remedy. *See, e.g.*, Gov't Appeal Br. at 5 ("The CIT . . . attempt[s] to superintend the Government's entire process of refunding the IEEPA tariffs."). In doing so, the Government appears to challenge the Court's authority to craft the best remedy available to ensure the fair and efficient return of illegally collected duties to the individuals and small businesses wrongly required to pay them.

For example, Defendants attempt to place their own conditions on obtaining refunds. Defendants argue that an order to refund or reliquidate all entries would only "start the process"

of importers obtaining relief because "[w]hether an importer is entitled to a refund depends on . . . whether the entry meets CAPE's eligibility rules." Opp. at 10.[18] CAPE's limitations—such as requiring a claimant has access to its ACE account or used the broker that filed the entry to make the claim; requiring payment via ACH to an American bank; and so far not addressing entries outside of ACE (including postal entries, Thomas Decl. ¶ 13)—have no bearing on whether an importer is legally entitled to a refund. It is this Court, not Defendants, that has the authority to determine whether an importer is legally entitled to a refund, and the Court's orders in this case need not condition entitlement to a refund on "meet[ing] CAPE's eligibility rules." Opp. at 10. In fact, conditioning refunds on CAPE eligibility directly contravenes the Court's order for "refunds for all importers who have paid IEEPA duties on entries, including those whose liquidations have become final, whether the importer has brought suit or not." *Euro-Notions*, ECF No. 31 (describing *V.O.S. Selections*, ECF No. 82).

C.I.T. Rule 23 affords the Court "broad discretionary powers to assist in its supervision of the representative litigation." 1 Newberg and Rubenstein on Class Actions § 1:10 (6th ed.). Certification of a class and appointment of class counsel can assist the Court in maintaining oversight of all refund mechanisms.

## III. <u>Appointment of Class Counsel Is a Necessary Component of Certification.</u>

C.I.T. Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." *See also* 1 Newberg and Rubenstein on Class Actions § 3:84 (6th ed.) (When Rule 23(g) is "read in conjunction with 23(c)(1)(B), it is clear that a court

[18] Defendants also state that entitlement to a refund "depends on whether IEEPA duties were actually assessed and paid," Opp. at 10, but the proposed Class is defined only to include such importers, so this is irrelevant to finality. Similarly, the "amount of the duty" has no impact on whether an importer is *entitled* to a refund, but rather the amount of the refund.

must appoint class counsel at the same time it certifies the class."). Indeed, it is one of Rule 23's key protections. As the leading class action treatise notes, Rule 23 "protects [ ] class members by requiring court appointment and supervision of class counsel to ensure that they fairly and adequately represent class interests." 1 Newberg and Rubenstein on Class Actions § 1:10 (6th ed.); *see also* C.I.T. Rule 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). Similarly, the Advisory Committee Notes to Rule 23 make clear that Rule 23(g) reflects "the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendments. It is axiomatic that class counsel be appointed upon certification.

As detailed in Plaintiff's motion for class certification, proposed Class Counsel are well-suited to do exactly that: Barnes Richardson possesses the experience and expertise in the substance and process of the relevant law and Lieff Cabraser has a proven track record demonstrating its proficiency and success in litigating, resolving, and administering class actions. *See* Mot. at 22–26. Proposed Class Counsel easily satisfy Rule 23(g).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant class certification, designate Freestyle World as Class Representative, and appoint Barnes Richardson and Lieff Cabraser as Class Counsel.

Dated: August 14, 2026

Respectfully submitted,

By: */s/ Lawrence M. Friedman*

Lawrence M. Friedman
lfriedman@barnesrichardson.com
BARNES, RICHARDSON & COLBURN, LLP
303 East Wacker Drive, Suite 305
Chicago, IL 60601
Telephone: 312.297.9554

Elizabeth J. Cabraser
ecabraser@lchb.com
Daniel M. Hutchinson
dhutchinson@lchb.com
Nicole M. Rubin
nrubin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Nicholas Diamand
ndiamand@lchb.com
Lucas Issacharoff
lissacharoff@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Joel B. Young
jby@tidricklaw.com
THE TIDRICK LAW FIRM LLP
1990 N. California Blvd., 8th Floor
Walnut Creek, CA 94596
Telephone: 510.788.5100

**CERTIFICATE OF COMPLIANCE**

I, Lawrence M. Friedman, hereby certify that this brief complies with the 7,000 word limitation of the United States Court of International Trade, set forth in Standard Chambers Procedures § 2(B)(1). This brief contains 6,838 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

*/s/ Lawrence M. Friedman*
Lawrence M. Friedman