**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD K. EATON, JUDGE**

| | |
|---|---|
| FREESTYLE WORLD, INC.,<br>*Plaintiff*,<br>v.<br>UNITED STATES, *et al.*,<br>*Defendants*. | Court No. 26-01088 |

***AMICUS CURIAE* BRIEF OF**
**THE INTERNATIONAL TRADE SURETY ASSOCIATION**

This *amicus* brief is filed on behalf of the International Trade Surety Association ("ITSA"), an association whose members issue the surety bonds that secure the tariffs on importation of goods. ITSA's members have paid millions of dollars to U.S. Customs & Border Protection ("CBP") on entries where importers (or their brokers) have failed to pay estimated or liquidated tariffs imposed under the authority of the International Emergency Economic Powers Act ("IEEPA").

ITSA has served as the voice of the customs surety bond industry since 1984. It represents surety and insurance professionals who underwrite more than 70% of the bonds that enable international trade. Through administrative, legislative, and judicial fora, and with the trade community, ITSA advocates for consistent, fair, and efficient administration of the laws and regulations which impact the international supply chain. This Court has accepted *amicus curiae* briefs from ITSA before in matters impacting the customs surety bond industry, such as in *United States v. Aegis Security Ins. Co.*, Court No. 20-03628.

This Court also accepted an *amicus curiae* brief from ITSA regarding the sureties' perspective on CAPE Phase 1, in *Euro-Notions Florida, Inc. v. United States*, Court No. 25-00595. The *Euro-Notions amicus* brief is attached as an exhibit to the accompanying motion to appear as an *amicus*.

ITSA files this motion and brief seeking to appear as *amicus* so that the Court can be fully informed about the continued need to include, or at the very least account for, sureties in the CAPE refund program or any other refund program that may be approved by the Court. Sureties were not included in CAPE Phase 1 as requested in the *Euro-Notions amicus* brief. Subsequently, CBP has not advised if surety refunds will be included in any current or future CAPE Phase, if it is developing a surety IEEPA refund process outside the CAPE program, or if sureties will be eligible for refunds through other administrative or judicial procedures. CBP has taken one action to avoid refunding surety payments to wrong parties by inviting sureties to identify entries on which they have paid IEEPA duties. However, CBP has not provided any confirmation that refunds have not been issued to importers or brokers on those entries in Phase 1 or if they will be protected in subsequent CAPE Phases.

As discussed in the *Euro-Notions amicus* brief, under applicable CBP regulations, "[w]hen it is found upon, or prior to, liquidation or reliquidation of an entry … that a refund … is due, a refund shall be prepared *in the name of the person to whom the refund is due*, as determined under paragraphs (b) and (c) of this section[.]" 19 C.F.R. § 24.36(a) (emphasis added). Paragraph (b) in turn provides that "[r]efunds … shall be certified for payment to the importer of record *unless* … a surety submits evidence of payment to CBP, upon default of the principal, of amounts previously determined to be due on the same entry or transaction." *Id.* § 24.36(b) (emphasis added).

CAPE, as currently designed, does not permit sureties to make any refund claims. Nor does CAPE appear to include any mechanism for enforcing § 24.36(b) and preventing an IEEPA tariff refund from being paid to an importer or broker instead of to the surety that actually paid the tariffs to CBP. This is not a hypothetical concern, as ITSA previously explained. ITSA's members have repeatedly experienced situations where importers received refunds of non-IEEPA tariffs that were rightfully owed to the sureties. Yet CBP has still not included or even mentioned sureties in its development of CAPE and its reports to this Court, despite ITSA's *Euro-Notions amicus* brief advising CBP of these issues.

ITSA's *Euro-Notions amicus* brief also noted that CBP had reached out to ITSA members to identify the entries for which they paid IEEPA tariffs, ostensibly so that those entries could be removed from CAPE. ITSA members (and other sureties) have provided that information to CBP on a monthly basis, demonstrating that sureties have paid millions in IEEPA tariffs which should be refunded to sureties and not to defaulting importers.[1] However, CBP has not provided any confirmation to ITSA (and we think to the Court) that entries involving surety IEEPA payments were removed from CAPE.

It should not be difficult for CBP to include sureties, or at the very least account for them, in developing CAPE. While sureties lack visibility into entry line-item data, CBP can easily identify and verify the amounts of IEEPA tariffs paid by sureties on each of the entries identified by the sureties. Incorporating this data into CAPE would allow refunds to be issued to the correct party, or at the very least prevent the wrong party from receiving a refund.

---

[1] Actually, we question whether CBP should refund *any* IEEPA tariffs to importers before refunds are issued to its surety for payments made after the importer's default. It is believed that CBP proposed to withhold refunds on entries on which the surety paid the IEEPA tariffs, but not on other entries by the same importer.

In other situations, CBP has demonstrated that it can program CAPE to prevent an importer from receiving a refund to which it may not be entitled. There are various "entry validation" error messages for this situation. Entries associated with a drawback claim, reconciliation entry, or court injunction, for instance, are automatically rejected by CAPE. *See* U.S. Customs & Border Prot., *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds ("I received an error message when I filed my CAPE Declaration. What does the message mean?") (last modified July 20, 2026). Including an error message for "Surety Paid" should not be difficult, especially given that CBP has all the information that it needs in its internal systems and from ITSA's members.

The issue of IEEPA tariff refunds being paid out to importers instead of the sureties that paid those tariffs is even more critical now that the Court has entered individual reliquidation orders in thousands of cases and CAPE Phase 3 is taking shape. Not a single communication from CBP states that surety-paid IEEPA tariffs will be excluded from CAPE Phase 3. Nor did CBP, in any of its public filings, advise the Court that CAPE Phase 3 would exclude such surety-paid entries. As such, absent further clarification, the Court's individual orders requiring reliquidation of entries more than eighty (80) days liquidated through CAPE Phase 3 would appear to *require* CBP to refund the IEEPA tariffs that were paid by sureties to defaulting importers. CBP could help resolve this problem through a number of ways.

Short of actually refunding IEEPA tariffs to sureties, CBP could take steps to assure the funds remain available for a surety refund program. CBP could include an entry validation error message in CAPE for entries where the sureties paid IEEPA tariffs. Or, CBP could refuse to verify the CAPE-Phase-3 eligibility of plaintiff-importers whose sureties paid IEEPA tariffs. At the least,

CBP should confirm in writing that the identified surety-paid entries have been excluded from all (non-surety) phases of CAPE. Until CBP does so, however, the risk that defaulting importers will receive IEEPA tariff refunds to which their sureties are entitled continues to grow.

Dated: September 3, 2026

Respectfully submitted,

/s/ Gilbert Lee Sandler
Gilbert Lee Sandler
**SANDLER, TRAVIS & ROSENBERG, P.A.**
5835 Waterford District Drive
Suite 200 & 204
Miami, Florida 33126
(305) 267-9200
LSandler@strtrade.com