Slip Op. 26-123

UNITED STATES COURT OF INTERNATIONAL TRADE

FREESTYLE WORLD, INC., on behalf of itself and all others similarly situated,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

Defendants.

Before: Richard K. Eaton, Judge

Court No. 26-01088

**OPINION AND ORDER**

[Plaintiff's motion for class certification and appointment of class counsel is granted.]

Dated: October 8, 2026

*Lawrence M. Friedman*, Barnes, Richardson & Colburn, LLP, of Chicago, IL, *Elizabeth J. Cabraser*, Lieff Cabraser Heimann & Bernstein, LLP, of San Francisco, CA, and *Nicholas Diamand*, Lieff Cabraser Heimann & Bernstein, LLP, of New York, N.Y., argued for Plaintiff. Also on the brief were *Daniel M. Hutchinson*, Lieff Cabraser Heimann & Bernstein, LLP, of San Francisco, CA, *Lucas Issacharoff*, Lieff Cabraser Heimann & Bernstein, LLP, of New York, N.Y., and *Joel B. Young*, The Tidrick Law Firm LLP, of Walnut Creek, CA.

*Justin R. Miller*, Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendants. Also on the brief were *Brett A. Shumate*, Assistant Attorney General, *Eric J. Hamilton*, Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Deputy Director.

Eaton, Judge: Plaintiff Freestyle World, Inc. ("Plaintiff" or "Freestyle") commenced this class action lawsuit on February 19, 2026. *See* Compl., ECF No. 4. Now, by its motion for class certification and appointment of class counsel, Plaintiff asks the court to certify a proposed class

composed of "[a]ll importers of record who paid duties imposed by the Challenged Tariff Orders[1] between February 1, 2025[,] and February 19, 2026,[2] excluding any entity that has separately filed an action seeking to recover [International Emergency Economic Powers Act ("IEEPA")] duties payments." Pl.'s Mem. Law Supp. Mot. Class Certification and Appointment of Class Counsel ("Pl.'s Mot.") at 2, ECF No. 12. Plaintiff asks the court to certify an injunctive class under USCIT Rule 23(b)(2).[3]

The relief sought by Plaintiff, on behalf of itself and the proposed class, is an injunction directing liquidation or reliquidation[4] of entries without regard to unlawfully imposed IEEPA duties. *See* Pl.'s Mot. at 19; Pl.'s Reply at 9, ECF No. 32; *see also* Compl. ¶ 9 (seeking "an injunction preventing any future liquidations of tariff payments made under the invalidated executive orders" and "reliquidation of any IEEPA duties payments that have already been

[1] This case was commenced prior to the Supreme Court's holding in *Learning Resources v. Trump*, 607 U.S. 229 (2026). As a result, Plaintiff defines the "Challenged Tariff Orders" as those that the U.S. Court of Appeals for the Federal Circuit held to be unlawful. Compl. ¶ 31; *see V.O.S. Selections, Inc. v. United States*, 149 F.4th 1312, 1340 (Fed. Cir.), *cert. granted*, 146 S. Ct. 73 (Mem.) (2025), *and aff'd sub nom.*, *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026) (affirming "the CIT's holding that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text" and "the CIT's grant of declaratory relief that the orders are 'invalid as contrary to law'").

[2] These dates represent what Plaintiff believes are the first and last dates that International Emergency Economic Powers Act duties were unlawfully collected, prior to the commencement of this lawsuit. Compl. ¶ 7.

[3] Although Plaintiff pleads Rule 23(b)(3) in the alternative, the court finds that class certification under subsection 23(b)(2) is appropriate. *See* Pl.'s Mot. at 20. Accordingly, this opinion will primarily discuss the requirements of subsection 23(b)(2).

[4] Liquidation is the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. "Reliquidation is the *re-calculation* of the duties . . . accruing on an entry." *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1310 n.8 (Fed. Cir. 2004). An entry is considered "finally liquidated" when it has been liquidated for more than 90 days and is thus beyond the period for voluntary reliquidation by U.S. Customs and Border Protection that is set out in 19 U.S.C. § 1501.

liquidated"). The court has previously ordered reliquidation of entries in more than 4,000 lawsuits brought by individual importers.[5] *See, e.g.*, Order (Apr. 17, 2026), *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 82; Order (July 15, 2026), *Princess Awesome, LLC v. United States*, No. 25-00078, ECF No. 25. For Plaintiff, the relief provided to a class of importers would be "the same and precisely as effective as the injunctive relief this Court has already provided to the individual importers before it." Pl.'s Reply at 9.

Defendants (the "Government") oppose Plaintiff's motion. *See* Defs.' Resp. Opp'n Mot. Class Certification and Appointment of Class Counsel ("Defs.' Resp."), ECF No. 18.

The motion for class certification has been fully briefed, and oral argument was held on August 19, 2026. *See* Transcript of Oral Argument, ECF No. 37. For the reasons that follow, the court grants Freestyle's motion and certifies the proposed class pursuant to USCIT Rule 23(b)(2).

---

[5] The order in the individual lawsuits provides for the reliquidation of finally liquidated entries. The order directs Customs to

> reliquidate, without regard to IEEPA duties, any and all of Plaintiffs' entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA. For the purposes of this order, reliquidation of entries that have been liquidated for more than 80 days is subject to Plaintiffs' counsel's submission to U.S. Customs and Border Protection of Plaintiffs' importer of record identification number(s), in accordance with instructions to be provided by U.S. Customs and Border Protection and conveyed to Plaintiffs' counsel. Also, for the purposes of this order, reliquidation shall occur only following U.S. Customs and Border Protection's acceptance of Plaintiffs' CAPE declarations.

Order (July 15, 2026), *Princess Awesome, LLC v. United States*, No. 25-00078, ECF No. 25.

**STATEMENT**

On February 20, 2026, the Supreme Court held in *Learning Resources, Inc. v. Trump*, that "IEEPA does not authorize the President to impose tariffs."[6] 607 U.S. 229, 255 (2026). On March 2, 2026, the U.S. Court of Appeals for the Federal Circuit (the "CAFC") returned a mandate[7] to this Court in the matter now captioned as *V.O.S. Selections, Inc. v. United States* ("*V.O.S.*"). *See* Mandate (Mar. 2, 2026), *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 73. On March 4, 2026, the court held a hearing in a related case, and on the same day issued an order that directed the liquidation or reliquidation of certain entries of merchandise without regard to IEEPA duties. *See* Order (Mar. 4, 2026), *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 21 (covering unliquidated entries and entries for which liquidation was not final). Thereafter, the order was amended, to include finally liquidated entries in its scope, and then docketed in other cases. Order (Apr. 7, 2026), *Euro-Notions Florida, Inc. v. United States*, No. 25-00595, ECF No. 12; Order (Apr. 17, 2026), *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 82;

---

[6] The Supreme Court's use of the *Learning Resources* caption is a little confusing, since the case commenced by Learning Resources, Inc. was ultimately dismissed for lack of jurisdiction. The case whose mandate was ultimately returned to this Court was captioned *V.O.S. Selections, Inc. v. United States*. This is because the Supreme Court's *Learning Resources* decision finally resolved appeals in two consolidated cases: *V.O.S. Selections, Inc. v. United States*, which originated in this Court, and *Learning Resources, Inc. v. Trump*, which originated in the U.S. District Court for the District of Columbia. The Supreme Court found that that the *V.O.S.* case fell "within the exclusive jurisdiction of [the U.S. Court of International Trade]," under 28 U.S.C. § 1581(i)(1), and that the U.S. District Court for the District of Columbia lacked jurisdiction to hear *Learning Resources*. *See Learning Res.*, 607 U.S. at 240 n.1; *see also Learning Res., Inc. v. Trump*, No. 25-5202, 2026 WL 1514346, at *1 (D.C. Cir. Apr. 3, 2026) (remanding to the District Court with instructions to dismiss the case for lack of jurisdiction).

[7] On February 27, 2026, just one business day prior to the CAFC's mandate, the Government filed its opposition to the immediate issuance of the mandate, indicating that the Court should "withhold issuance of the mandate for 90 days [after the Supreme Court sends down its judgment] to allow the political branches an opportunity to consider options." Defs.-Appellants' Opp'n to Mot. for Immediate Issuance of the Mandate & Cross-Mot. to Stay the Mandate at 3, *V.O.S. Selections, Inc. v. United States*, No. 25-1812 (Fed. Cir. Feb. 27, 2026), ECF No. 171.

Order (Apr. 17, 2026), *AGS Co. Auto. Sols. v. United States*, No. 25-00255, ECF No. 43; Order (Apr. 17, 2026), *Grant & Bowman, Inc. v. United States*, No. 25-00689, ECF No. 14. Ultimately, the order provided

> that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties.

Order (Apr. 17, 2026), *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 82. In other words, the order directed a recalculation of the duties imposed on entries, so that any amount owed no longer included the unlawfully collected IEEPA duties.

On June 3, 2026, the Government appealed to the CAFC that portion of the order providing for liquidation or reliquidation of all affected entries. *See, e.g.*, Defs.' Notice of Appeal, *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 91, *appeal docketed*, No. 26-1895 (Fed. Cir. June 3, 2026). The Government and V.O.S. Selections, Inc. have filed their respective briefs in the appeal, and the CAFC's decision will be rendered in due course.

On March 4, 2026, when the initial order was issued, it was estimated that unlawfully collected duties amounting to $166 billion had been assessed on 53 million entries, involving roughly 330,000 importers of record. *See* Decl. Brandon Lord (Mar. 6, 2026) ¶ 12, *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 31. It was also estimated that interest on the unlawfully imposed duties was "accumulating every day, with approximately $650 million accruing per month."[8] Order (Mar. 6, 2026), *Atmus Filtration, Inc. v. United States*, No. 26-01259,

---

[8] This monthly accrual rate was based on a roughly 4.5% interest rate. The actual rate of interest is determined by the Internal Revenue Service and published quarterly in the Federal

footnote continued . . .

ECF No. 34 ("If the entries are not liquidated before the end of the year, it is further estimated that $10 billion of interest will have accrued.").

Following issuance of the initial order, and its denial of the Government's oral motion for a stay of the order, the court held what it termed a settlement conference on March 6, 2026. At that conference the Government recognized that it was obligated to make IEEPA refunds, and outlined the manner in which it proposed to do so. Thereafter, U.S. Customs and Border Protection ("Customs") proposed, and then implemented, the Consolidated Administration and Processing of Entries ("CAPE") program, providing an automated mechanism for the liquidation and reliquidation of entries on which IEEPA duties had been collected.[9] Because of the "unprecedented volume of entries for [Customs] to update," CAPE's "efficiency gains" have been important for "both importers and [the G]overnment." Decl. Susan S. Thomas (June 4, 2026) ¶ 9, *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 98-1. Notably, these gains in efficiency were made possible by the aggregation of entries under each importer of record number, rather than having them liquidated on an entry-by-entry basis.

---

Register. *See* International Emergency Economic Powers Act (IEEPA) Duty Refunds, Frequently Asked Questions, U.S. CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (providing a link to the Federal Register under "Will I receive interest on my refund? How is that calculated?") (last visited Oct. 8, 2026).

[9] CAPE is a new function within Customs' long-standing system of record for imported merchandise—the Automated Commercial Environment, or ACE—that is designed to update, liquidate, or reliquidate entries, and to calculate refunds, along with interest owed, for entries that were subject to IEEPA duties. In CAPE, an importer aggregates its entries so that they are liquidated as a group rather than separately. CAPE has four integrated components: Claim Portal, Mass Processing, Review and Liquidation/Reliquidation, and Refund. *See* Decl. Brandon Lord (Mar. 12, 2026) ¶ 2, *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 39. To liquidate or reliquidate qualifying entries in CAPE, the importer must file a "CAPE declaration" that consists "of the list of entries for which refunds of IEEPA duties are being requested." *See* International Emergency Economic Powers Act (IEEPA) Duty Refunds, Frequently Asked Questions, U.S. CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited Oct. 8, 2026).

The CAPE program has been a remarkable success. As of October 2, 2026, approximately $136.6 billion in potential and certified refunds has been accepted for processing in CAPE, and of that amount, approximately $126 billion in duties plus interest has been refunded. *See* Decl. of Brandon Lord (Oct. 6, 2026) ¶ 5, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 58. That is, 215 days after the CAFC issued the mandate in the *V.O.S.* case, more than 75% of the $166 billion of unlawfully collected IEEPA duties, plus interest, has been refunded using CAPE. *Id.*; Mandate (Mar. 2, 2026), *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 73. Customs has regularly expanded the types of entries that are accepted by CAPE, including the acceptance of finally liquidated entries whose reliquidation was directed by the court order that was docketed in more than 4,000 individual cases.[10]

But the progress on liquidation and reliquidation, by importers' voluntary use of CAPE, will one day come to an end. Some importers of record have not taken advantage of CAPE. It is believed that these are overwhelmingly small importers who, because of the cost or effort involved in filing a CAPE declaration, or because they are unaware of the program, will never take advantage of CAPE.

In addition, CAPE itself does not accept certain categories of entries for processing, including finally liquidated entries of non-plaintiff importers of record. Should further action not be taken, we are left with the prospect of the U.S. Department of the Treasury ("Treasury") retaining billions of dollars of unlawfully collected duties, and tens of thousands of importers of record being denied the liquidation or the reliquidation of their entries. Without these liquidations or reliquidations, these tens of thousands of importers will not receive the refunds they are owed.

---

[10] As of October 7, 2026, more than 4,000 nearly identical cases have been filed involving around 7,000 plaintiffs.

Indeed, were CAPE to cease to function today approximately $30 billion in unlawfully collected duties would remain on deposit in the Treasury.

There are, however, other avenues that can provide for liquidation and reliquidation of entries and refunds, including class actions. On August 6, 2026, the court held a Rule 23 class certification hearing in the *V.O.S.* case. On August 19, 2026, the court held a Rule 23 hearing for a class certification in this case for a proposed class that is different from that proposed in *V.O.S.*, and which seeks a different remedy. In *V.O.S.* the remedy sought would provide access to CAPE for more types of entries. In this *Freestyle* case, the relief sought is an injunction directing liquidation or reliquidation of all entries without regard to IEEPA duties.

Today, the court is certifying a class in the hope, and expectation, that this certification will lead to the liquidation or reliquidation of all of the entries on which the unlawful IEEPA duties were imposed, and the refund of those duties to the importers of record that paid them.

**ANALYSIS**

USCIT Rule 23, which mirrors Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), governs class actions in this Court. Parties moving for class certification must show, as a threshold matter, that all of the requirements of Rule 23(a) are satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). The requirements of Rule 23(a) are (1) numerosity, i.e., a class "so numerous that joinder of all members is impracticable"; (2) commonality, i.e., "there are questions of law or fact common to the class"; (3) typicality, i.e., "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation, i.e., "the representative parties will fairly and

adequately protect the interests of the class." USCIT R. 23(a); *see also Wal-Mart*, 564 U.S. at 345 (quoting FRCP 23(a)). In addition to meeting these requirements, a proposed class "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345.

In this case, Plaintiff argues that all of Rule 23(a)'s requirements are met and seeks certification of an injunctive class under Rule 23(b)(2). Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." USCIT R. 23(b)(2). Plaintiff also seeks appointment of proposed class counsel, under Rule 23(g)(4). *See* Pl.'s Mot. at 11-27.

For its part, the Government opposes certification by maintaining that the requirements of Rules 23(a) and 23(b) have not been met, and that Plaintiff's motion is untimely under Rule 23(c). The Government makes no argument regarding the adequacy of proposed class counsel. *See* Defs.' Resp. at 3-20.

For the reasons that follow, the court finds that the motion for class certification is timely under Rule 23(c); the requirements of Rule 23(a) have been met; class certification is appropriate under Rule 23(b)(2); and that Plaintiff's proposed class counsel will be able to "fairly and adequately represent the interests of the class," as required by Rule 23(g)(4).

## I. Plaintiff's Motion for Class Certification Is Timely

To begin with the Government's arguments in opposition, the court considers whether Plaintiff's motion for class certification is timely, and finds that it is.

Rule 23(c) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." USCIT R. 23(c)(1)(A). When determining whether a motion for class certification is

timely, a look at the history of Rule 23 is instructive. In 2003, the phrase "at an early practicable time" replaced the more urgent "as soon as practicable" formulation of the earlier version of the rule, "giv[ing] courts more time to address certification." *See* 3 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 7:5 (6th ed. 2026) ("By excising the 'as soon as' formulation, the new language gives courts more time to address certification, bringing the rule in line with what had become a de facto practice even under the older, more urgent language.").

By its terms, Rule 23(c) does not limit the time in which a party may make a motion for class certification. Rather, it speaks to when a court must determine whether to certify a class. *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) (Rule 23(c) "requir[es] the district judge to make an early determination whether the suit is to proceed as a class action and who shall be bound by the judgment as members of the class."). Nonetheless, the Government argues that "Plaintiff's class-certification request is too late." Defs.' Resp. at 5. The Government does not argue that it would be actually prejudiced by class certification now. Rather, it claims that it would be somehow unfair for the court to rule on the motion because "Plaintiff filed its complaint on behalf of a putative class just one day before the Supreme Court ruled on the merits [in *Learning Resources*] in February 2026, and then it delayed yet four *more* months, without explanation, to finally request class certification in June 2026." *Id.* The Government seems to suggest, without ever explicitly saying so, that it would have behaved differently had it been aware at the time this case was filed (or, for that matter, as the *V.O.S.* case was wending its way through the courts) that a class action was in the offing.

In addition, the Government insists that allowing the motion to proceed would permit Plaintiff to engage in "one-way intervention," a practice that "could enable absent class members

'to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.'" *Id.* at 6 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)).

The court is not convinced that Plaintiff's motion for class certification is "too late." On February 19, 2026, Plaintiff commenced this action by filing its summons and "Class Action Complaint." It is worth noting that, as the Government seems to recognize, Plaintiff "technically raised the possibility of a class before the final merits decision,"[11] early on, by styling its complaint as a "Class Action Complaint," and alleging all of the requirements of Rule 23 for class certification. Defs.' Resp. at 6; *see* Compl. ¶¶ 54-81 ("Class Allegations"). Thus, it is difficult to see any real element of surprise when Plaintiff made its motion for class certification on June 23, 2026.

Nor could the Government have thought for one moment that the Supreme Court's answer to the legal question posed in *Learning Resources* would apply only to the plaintiffs in that case. The Supreme Court's holding, that IEEPA did not authorize the President to impose duties, applied to all of those who paid the unlawful duties. While the Government may have been careful to refer to "plaintiffs," when stipulating, as it did in the *V.O.S.* case, that it would not contest this Court's authority to order reliquidation of the *V.O.S. plaintiffs'* entries should they prevail in that case,[12] it

[11] Interestingly, the Government characterizes the Supreme Court's decision in *Learning Resources* as "the final merits decision." That decision held that IEEPA did not authorize the President to impose tariffs. It did not hold that the plaintiffs in that case were entitled to liquidation or reliquidation without regard to IEEPA duties or that the refund of estimated deposits would result from those actions. While the court agrees that liquidation or reliquidation, and any resulting refunds, is the only remedy available under the facts presented here, that does not mean that *Learning Resources* was a final merits decision in this case.

[12] *See, e.g.*, Defs.-Appellants' Emergency Mot. Stay Pending Appeal & Immediate Admin. Stay at 25, *V.O.S. Selections, Inc. v. United States*, No. 25-1812 (Fed. Cir. May 29, 2025), ECF No. 6 ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then

footnote continued . . .

is simply incredible that the Government was caught off guard when Freestyle and the proposed class banded together to seek reliquidation relief as a class. *See V.O.S. Selections, Inc. v. United States*, 49 CIT __, __, 772 F. Supp. 3d 1350, 1383 (2025) (this Court's decision of May 28, 2025, granting summary judgment in favor of plaintiffs) ("There is no question here of narrowly tailored relief; if the challenged Tariff Orders are unlawful as to Plaintiffs they are unlawful as to all.").

Also, the court cannot credit the Government's claim that by filing its motion after the *Learning Resources* decision, Plaintiff has engaged in prohibited one-way intervention. The rule against one-way intervention "bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." *Amati*, 176 F.3d at 957. The one-way intervention worry is that a potential class member might, after a merits decision in the underlying case, choose to intervene (i.e., opt in) or leave the class (i.e., opt out) already knowing whether the plaintiff has won or lost, and thus knowing what will be in its best interest. Here no such worry exists.

First, it is worth keeping in mind that there has been no merits determination in *Freestyle*. While the controlling law was decided by the Supreme Court in *Learning Resources*, that law has yet to be applied to *Freestyle*'s facts. Although the result of this application of the law to the facts, and a resulting injunction, may be a mere formality in the minds of many, it remains the case that

---

the government will issue refunds to plaintiffs, including any post-judgment interest that accrues."); Defs.' Mot. Stay Prelim. Inj. Pending Appeal at 13, *Learning Res., Inc. v. Trump*, No. 25-1248 (D.D.C. June 2, 2025), ECF No. 41 ("For any plaintiff who is an importer, even if a stay is entered and defendants do not prevail on appeal, plaintiffs will assuredly receive payment on their refund with interest. . . . Plaintiffs will not lose their entitlement to a refund, plus interest, if the preliminary injunction is stayed, and they are guaranteed payment by defendants should the Court's decision be upheld. And defendants do not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal.").

a merits decision has not been made here, and that the fortunes of the proposed class members will therefore rise or fall with those of Freestyle itself.

Next, the class Plaintiff wants certified is unsusceptible to the worry that parties can choose to enter or leave the proposed class. Plaintiff seeks class certification under USCIT Rule 23(b)(2), which does not permit a potential class member to either opt in or opt out. While Rule 23 contains an opt out provision for classes certified under Rule 23(b)(3), there is no such provision for classes certified under Rule 23(b)(2).[13] *See* USCIT R. 23(c)(2)(A)-(B). Nor is the possibility of opting into a class present anywhere in the Court's rules. Thus, membership in a class certified under Rule 23(b)(2) is mandatory and fixed.

The primary worry about one-way intervention is that if a party is permitted to become a plaintiff after the merits have been decided, it will be able to take advantage of a favorable decision without having risked an unfavorable one. Because (1) the merits here in *Freestyle* have not been determined, and (2) there is no possibility of a potential class member joining or leaving the proposed class, there can be no worry of a potential class member "waiting on the sidelines to see how the lawsuit turns out." *Amati*, 176 F.3d at 957.

Finally, as previously noted, Rule 23(c) speaks to when the court must certify the class. It was unclear to the court, in the first months after the launch of CAPE, if certifying a class would be necessary or appropriate. It is now clear that it is.

---

[13] The Government cites the case of *Ablan v. United States*, 162 F.4th 1364 (Fed. Cir. 2025) as supporting its one-way intervention arguments. That case, however, involved a class certification under the U.S. Court of Federal Claims Rule 23(b), which directs that "the court will include in the class any member who requests inclusion." RCFC R. 23(c)(2)(B)(v). Thus, in the Court of Claims opt ins are permitted, where under USCIT Rule 23(b)(2), they are not.

Having considered these and the other arguments raised in the parties' papers and at oral argument, the court finds that the motion for class certification was made "[a]t an early practicable time," in accordance with Rule 23(c)'s requirement.

## II. USCIT Rule 23(a)'s Requirements Are Satisfied

Under Rule 23(a), a party seeking class certification must demonstrate that the proposed class meets the four requirements of subsection (a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Wal-Mart*, 564 U.S. at 349. The Government's primary objection is that the commonality requirement is not met. Defs.' Resp. at 8. The court finds, however, that Freestyle has demonstrated that each of the four requirements is satisfied.

### A. Numerosity

The numerosity requirement concerns whether a class is "so numerous that joinder of all members is impracticable." USCIT R. 23(a)(1); *see also Wal-Mart*, 564 U.S. at 345 (quoting FRCP 23(a)(1)). Making this determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Generally, however, "courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.), *cert. denied*, 515 U.S. 1122 (1995) (same); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (same).

Plaintiff's proposed class would include the portion of those 330,000 importers of record who paid IEEPA estimated deposits and have not filed one of the more than 4,000 separate lawsuits seeking IEEPA refunds. Pl.'s Mot. at 13-14. Because the proposed class includes some tens of thousands of importers, it satisfies the numerosity requirement of Rule 23(a)(1).

**B. Commonality**

The Supreme Court has stated that, under Rule 23(a)(2), there must be at least one question of "law or fact common to the class." USCIT R. 23(a)(2); *see also Wal-Mart*, 564 U.S. at 345 (quoting FRCP 23(a)(2)). Thus, in order to obtain class certification, Plaintiff must demonstrate "that the class members have suffered the same injury," and "[t]heir claims must depend upon a common contention," which is "of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350 (citation modified). What matters for this requirement is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).

Plaintiff argues that the commonality requirement is satisfied because the Government applied a common policy "imposing tariffs under IEEPA on importers of merchandise into the U.S., injuring the proposed Class as a whole." Pl.'s Reply at 6-7. So, for Plaintiff, the "most obvious common question" with a potential answer that is "central to each proposed Class Member's claim" is "whether the Challenged Tariff Orders are unlawful." *Id.* at 7. Since Plaintiff filed its complaint, the Supreme Court has settled this question of law in a manner favorable to Plaintiff. The Supreme Court's holding necessarily requires the liquidation or reliquidation of all entries without IEEPA duties, which will result in a class-wide resolution. *See Learning Res.*, 607 U.S. at 255 (holding that "IEEPA does not authorize the President to impose tariffs").

The Government nevertheless maintains that Plaintiff has "failed to show that there is a common question of fact or law that is 'central to the validity of each' class member's claim for which the Court may provide a 'common answer[]' in 'one stroke.'" Defs.' Resp. at 8 (quoting *Wal-Mart*, 564 U.S. at 350). It further asserts that the court "cannot provide common answers to

any of" Plaintiff's proposed common questions. *Id.* This is because, for the Government, the proposed class consists of "individualized claimants with individualized claims [that] may require a specific form of relief." Transcript of Oral Argument at 23. The Government thus contends that "[a]mongst the importing community . . . there's a diversity of claims," and the claimants' "diversity of relief and the diversity [of the] claim[s] show why a class action isn't an appropriate mechanism here." *Id.* at 18, 29.

The Government's primary objection, then, is that Plaintiff's claims are not capable of class-wide resolution because they are diverse. That the importers will receive different monetary amounts as refunds, however, does not defeat a finding of a "common question of law or fact" capable of class-wide resolution. Here, all importers of record share the common questions of whether the Government has lawfully imposed and collected IEEPA duties on their entries, and whether the Government must liquidate or reliquidate their entries without regard to the IEEPA duties. The first is a common question that was answered by the Supreme Court in *Learning Resources*. The second common question concerning the entitlement to liquidation and reliquidation is easily answered, as the liquidation tools are the logical method for determining liability. The issuance of an injunction directing liquidation or reliquidation would benefit all class members equally. That each plaintiff will receive a refund in a different amount does not alter the common resolution afforded by the injunction. This is because, once entitlement to a refund has been determined, "the calculation of monetary relief will be mechanical, formulaic, a task" for a computer program. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012); *see also* Decl. Brandon Lord (Mar. 6, 2026) ¶ 6, *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 31 ("No duty calculation adjustments or refunds are performed in paper format - only electronically in ACE."); 19 U.S.C. § 1505(b) ("The Customs Service shall . . . refund any

excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.”).

Once an injunction is issued, no further action will be required of the court. The injunction alone will provide this common relief. The mechanical, formulaic task of calculating refunds has already been performed by Customs millions of times. Customs’ highly automated CAPE program liquidates and reliquidates entries *en masse*. Indeed, by its own designation, two core components of CAPE are (1) “Mass Processing,” and (2) “Review and Liquidation/Reliquidation.” *See* Decl. Brandon Lord (Mar. 31, 2026) ¶ 2, *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 51. CAPE’s mass processing capabilities include “the ability for [Customs] to review and adjudicate a CAPE Declaration, and the ability to modify entry summaries, as required.” *See id.* ¶ 6. Using this computerized system, Customs has already liquidated or reliquidated over 21.19 million entries, removing the IEEPA duties. Decl. Brandon Lord (Oct. 6, 2026) ¶ 4, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 58. Following liquidation or reliquidation using CAPE, Customs has certified and sent to the Treasury for disbursement, $126 billion in refunds for thousands of individual importers. *Id.* ¶ 5.

The Supreme Court’s holding in *Learning Resources* (that “IEEPA does not authorize the President to impose tariffs”) is controlling and common to all proposed class members. As Plaintiff rightly points out, “‘it does not matter that’ this question ‘has already been adjudicated’” in another case. Pl.’s Reply at 7 (quoting *Platero v. United States*, 180 Fed. Cl. 425, 432 (2026)). Plaintiff and the proposed class members have not received the full benefit of the *Learning Resources* decision—class certification and an order directing liquidation and reliquidation will give them that benefit. Such an injunction would provide a common resolution to the proposed class members’ question of whether their entries must be liquidated or reliquidated without regard to

IEEPA duties—and computers will then calculate the amount of individual duties mechanically. *See Powers v. McDonough*, 163 F.4th 1162, 1185 (9th Cir. 2025) (explaining that, in actions "challenging system-wide practices or policies, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." (citation modified)). The commonality requirement in Rule 23(a)(2) is thus satisfied.

**C. Typicality**

Next, Plaintiff has satisfied the typicality requirement for many of the same reasons it meets the commonality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 at 157 n.13 (1982). But, while commonality "looks at the relationship among the class members generally" (e.g., common questions, common resolution of questions), typicality looks "at the relationship between the proposed class representative and the rest of the class." 1 Rubenstein, *supra*, § 3:26.

The typicality requirement is met if the representative's claim "arises from the same course of events" and is based on the same legal theories as the class members' claims. *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)); *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022) (explaining that typicality is evaluated on "whether the class representatives' legal theory and claim, or the individual circumstances on which those theories and claims are based, are different from those of the class."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002) ("Typicality is achieved where the named plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." (citation modified)).

Plaintiff's and the proposed class's claims arise from the same course of events—the Government's unlawful imposition and collection of estimated IEEPA deposits. *See* Compl. ¶¶ 84-85 ("The Challenged Tariff Orders . . . purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. . . . Plaintiff respectfully requests that this Court apply binding court decisions . . . as to Plaintiff and Class Members . . . ."). Additionally, their common claims are based on the same legal theory that the IEEPA duties are unlawful. *See id.* at ¶ 83. This legal theory has now been upheld by the Supreme Court. Plaintiff and the proposed class seek a common, uniform form of relief—an injunction directing liquidation or reliquidation of Plaintiff's and the proposed class members' entries without regard to IEEPA duties. For these reasons, typicality is satisfied.

**D. Adequacy**

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." USCIT R. 23(a)(4). The CAFC has found that the adequacy requirement is satisfied where "petitioners suffered the same injury as the other proposed class members," and there is no "conflict of interest that would prevent them from serving as class representatives." *Freund v. McDonough*, 114 F.4th 1371, 1377 (Fed. Cir. 2024).

Freestyle asserts that, as the representative plaintiff, it will fairly and adequately protect the interests of the class because it has suffered the same injury as the class members and seeks the same remedy. Pl.'s Mot. at 17 ("Like proposed absent Class Members, [Freestyle] has paid tariff duties imposed by [IEEPA], including finally liquidated ones and seeks their refund."). Plaintiff additionally states that Freestyle "has no conflicts of interests with proposed absent Class Members because their interests are not antagonistic to one another." *Id.* Thus, Rule 23(a)(4) is satisfied here because Plaintiff "suffered the same injury as the other proposed class members," and there is no

purported "conflict of interest that would prevent them from serving as class representatives." *Freund*, 114 F.4th at 1377.[14]

The Government makes no argument with respect to the adequacy requirement, either in its brief or at oral argument. *See* Defs.' Resp. at 7-8 (omitting any argument with respect to adequacy).

The court thus finds that the requirements of Rule 23(a) have been met and next turns to the requirements of Rule 23(b).

## III. Certification of the Proposed Class Under USCIT Rule 23(b)(2) Is Appropriate

In addition to meeting the requirements of Rule 23(a), a proposed class action must also fall into one of the three categories enumerated in Rule 23(b). The court finds that certification of the proposed class under Rule 23(b)(2) is appropriate.

A Rule 23(b)(2) class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." USCIT R. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart*, 564 U.S. at 360 (citation modified). Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

It is the idea of a single injunction that separates a Rule 23(b)(2) class certification from a certification under Rule 23(b)(3), where the requirements for class certification are that the

---

[14] It is worth noting that Freestyle "understand[s]" the duties and responsibilities of being the class representative. *See* Decl. Russell Wallace (June 23, 2026) ¶ 7, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 12-2.

"questions of law or fact common to class members predominate . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." USCIT R. 23(b)(3). Importantly, a "single injunction" providing relief for each class member is not a requirement for 23(b)(3) class certification. Although Rule 23(b)(2) focuses on injunctive and declaratory relief without requiring notice or opt-out rights, Rule 23(b)(3) focuses on monetary damages and mandates class notice and the right for potential class members to opt out. *See generally Wal-Mart*, 564 U.S. 338; *see also* USCIT R. 23(c)(2) (setting out notice requirements). While the "Supreme Court has . . . held that the Due Process Clause requires [additional protections in Rule 23(b)(3)] money damage cases," the class's interests in Rule 23(b)(2) actions are "so cohesive that opting out would be a non sequitur." 2 Rubenstein, *supra*, § 4:1.

Here, the relief sought by Plaintiff, on behalf of itself and the proposed class, falls under Rule 23(b)(2) as Plaintiff requests "an injunction preventing any future liquidations of tariff payments made under the invalidated executive orders," Compl. ¶ 9, and "an order requiring the Government to reliquidate entries, disgorge unlawfully collected funds, establish a comprehensive notice program, and create mechanisms for small importers . . . to seek refunds." Pl.'s Mot. at 19; *see also* Pl.'s Reply at 9. Liquidation is "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1 (2025). "[R]eliquidation is the *re-calculation* of the duties . . . accruing on an entry." *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1310 n.8 (Fed. Cir. 2004). It is thus by way of liquidation (or reliquidation) that an importer's entitlement to a refund is determined and effectuated. *See* 19. U.S.C. § 1505(b). Accordingly, a single, indivisible injunction directing the liquidation or reliquidation of the proposed class members' entries without regard to IEEPA duties will provide class members complete relief.

Up until now, the Government has insisted that reliquidation of finally liquidated entries[15] can only be accomplished by way of individualized court orders. *See, e.g.*, Transcript of Oral Argument at 51. Indeed, to date, the Government has not objected to the order that has been docketed in more than 4,000 individual cases that directs reliquidation of finally liquidated entries. *See supra* note 5 (quoting reliquidation order); *see also* Defs.' Resp. Opp'n to Mot. Prelim. Inj. and Summ. J. at 42, *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 32 (stating that "even if future entries are liquidated, defendants do not intend to oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged tariffs . . . . Such reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest."). On October 6, 2026, Customs deployed CAPE Phase 3, which permits the plaintiffs in the more than 4,000 cases where the court's order has been entered to file a CAPE declaration.[16] Thus, it appears that the Government does not object to the requested relief itself; it only opposes granting this relief on a class-wide basis.

The Government opposes Rule 23(b)(2) class certification for two main reasons. First, it reprises its commonality argument by saying that the proposed class "violates Rule 23(b)(2)'s

---

[15] As noted *supra* note 4, the term "finally liquidated entries" refers to entries that have been liquidated for more than 90 days and are thus beyond the period for voluntary reliquidation set out in 19 U.S.C. § 1501. As of now, the CAPE system has not accepted for processing all finally liquidated entries, nor all entries that have been liquidated for more than 80 days, if an importer has not separately filed a lawsuit. *See* Decl. Brandon Lord (Mar. 31, 2026) ¶ 15(c), *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 51. The Government asserts that, without a court order directing it to do so, Customs does not have the authority to reliquidate finally liquidated entries. Thus, the relief sought on behalf of the class—an order directing liquidation or reliquidation of entries subject to IEEPA duties—would provide the Government with the authority it claims is necessary to reliquidate finally liquidated entries.

[16] As of October 7, 2026, it is the court's understanding that declarations involving 1.1 million entries, and $500 million in claimed refunds, have been accepted for processing in CAPE Phase 3.

requirement that the requested injunctive relief be 'single,' 'indivisible,' and 'final.'" Defs.' Resp. at 9 (citations omitted). Second, the Government asserts that a Rule 23(b)(2) certification is inappropriate because "plaintiff's request for relief is fundamentally a request for non-incidental monetary relief." *Id.* at 11. The Government also argues that the injunctive relief requested here is "retrospective, not prospective," and that (b)(2) injunctions "must be geared toward preventing *future* harm." *Id.* at 12 (quoting *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1175 (11th Cir. 2019)).

For its part, Plaintiff argues that Rule 23(b)(2) is satisfied because "the answer to whether Defendants must reliquidate tariff duties and provide refunds is the same for all proposed Class Members." Pl.'s Mot. at 18. Plaintiff maintains that an order directing Customs to liquidate or reliquidate entries without regard to IEEPA would provide final relief to the proposed class that is the same and as effective "as the injunctive relief this Court has already provided to the individual importers before it." Pl.'s Reply at 9. Plaintiff further argues that "the monetary relief that will flow from the injunction is incidental because Plaintiff is not asking the Court to calculate or award monetary damages." *Id.* at 12 ("Incidental monetary relief exists where 'damages would flow to the class as a whole by virtue of its securing the sought after injunctive relief and hence need not be calculated on an individualized basis." (quoting 2 Rubenstein, *supra,* § 4:37)).

For the following reasons, the court finds that class certification is appropriate pursuant to Rule 23(b)(2).

### A. The Requested Injunction Provides Class-Wide, Final Relief

As it alludes to in its commonality argument, the Government contends that the relief Plaintiff has requested is not final relief because "an injunction requiring reliquidation of all putative class members' entries would just start the process of each member obtaining some

individualized amount of relief, dependent on each member['s] unique importing circumstances." Defs.' Resp. at 10. In support of this argument, the Government cites *Jamie S. v. Milwaukee Public Schools*, in which the Seventh Circuit vacated the District Court's certification of a Rule 23(b)(2) class "seeking structural reform of special education in the Milwaukee public school district," specifically for children entitled to "individualized education programs." 668 F.3d 481, 484-85 (7th Cir. 2012). In *Jamie S.*, the Seventh Circuit found Rule 23(b)(2) class certification inappropriate because "the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made." *Id.* at 499. Significantly, the proposed class in *Jamie S.* sought an "intricate remedial scheme" that "require[d] thousands of individual determinations of class membership, liability, and appropriate remedies" made by a court-appointed board of decisionmakers. *Id.* 489, 499 (discussing the court-created "hybrid [individualized education program] team" that "was charged with evaluating the responses to the class notice to determine how to proceed in each individual case").

In contrast to the "intricate remedial scheme" under review in *Jamie S.*, though, the liquidation or reliquidation of entries without regard to IEEPA duties would not be labor-intensive, individualized, or manual, but rather automated. Here, history is our guide. And it demonstrates that a single, indivisible injunction will provide final relief for all proposed class members. Since April 20, 2026, Customs has liquidated or reliquidated, using the computerized CAPE program, 21.19 million entries without regard to IEEPA duties.[17] Each liquidation or reliquidation resulted

[17] The development of CAPE has further automated the process of liquidation and reliquidation for entries that were entered or liquidated subject to IEEPA duties. Decl. Susan S. Thomas (June 4, 2026) ¶ 6, *V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 98-1 ("CAPE enables the update, liquidation, and calculation of interest for each impacted entry, along with the consolidation of refunds by importer of record . . . and liquidation date, providing

footnote continued . . .

in an individualized refund amount. They did not, however, require thousands, or indeed millions, of "individual determinations." Rather, these refunds were determined by a computer program. The automated program has resulted in over $126 billion in actual refunds. These facts are not recited to minimize the work of Customs. Rather, they demonstrate that by exercising its remarkable expertise, Customs can, and has, turned an otherwise labor-intensive task of formidable proportions, into a manageable, automated one.[18]

Moreover, the Government's argument about "unique importing circumstances" is both unexplained and difficult to credit. For purposes of this lawsuit, the only circumstances that matter are that Plaintiff and the proposed class members (1) were importers of record, (2) entered merchandise into the United States, (3) were assessed an amount of estimated IEEPA duties as recorded on a government form, and (4) actually made a deposit of these duties in a specific amount. All of this information is stored in retrievable form on the Government's computers. It is the refund of the specific amount of estimated duties, that the importer deposited with the Treasury,

---

for . . . efficiency gains for both industry and government."). Since its launch on April 20, 2026, CAPE has processed over 27.4 million entries and has liquidated or reliquidated over 21.19 million entries. Decl. Brandon Lord (Oct. 6, 2026) ¶ 4, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 58.

[18] The court notes the similarities between this case and *Barbara v. Trump*, in which the District Court certified an FRCP Rule 23(b)(2) class to consider whether an "executive order involving birthright citizenship violate[d] the Fourteenth Amendment of the United States Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act." *Barbara v. Trump*, 790 F. Supp. 3d 80, 87 (D.N.H.), *cert. granted before judgment*, 146 S. Ct. 879 (2025), and *aff'd*, 146 S. Ct. 2438 (2026) (citations omitted). There, the District Court found that the members of the proposed class all requested "the same, un-individualized remedy: a declaratory judgment that the Executive Order is unconstitutional and unlawful in its entirety, and a single injunction prohibiting its enforcement." *Id.* at 98 (citation modified). Here, too, Plaintiff challenges the lawfulness of certain similar executive orders and seeks to enjoin enforcement of those orders on behalf of itself and class members. An injunction directing Customs to liquidate or reliquidate entries without regard to IEEPA duties is, like in *Barbara*, an "un-individualized remedy." *Id.*

that will be refunded, with computer-calculated statutory interest, as a result of an injunction directing liquidation or reliquidation of the importers' entries without IEEPA duties—not a penny more or a penny less.[19]

**B. Any Monetary Relief in the Form of Refunds Is Incidental to Liquidation or Reliquidation**

As a related matter, in opposing the proposed class certification under Rule 23(b)(2), the Government argues that "plaintiff's request for relief is fundamentally a request for non-incidental monetary relief." Defs.' Resp. at 11. To support this argument, the Government cites *Wal-Mart Stores, Inc. v. Dukes*, where the Supreme Court found that a class may not be certified under Rule 23(b)(2), "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief." *Wal-Mart*, 564 U.S. at 360; Defs.' Resp. at 12.

*Wal-Mart* was a class action brought on behalf of then-current and former Wal-Mart employees alleging sex discrimination in violation of Title VII of the Civil Rights Act. By their complaint, the plaintiffs sought injunctive relief, declaratory relief, and "an award of backpay," alleging "a strong and uniform 'corporate culture' permit[ting] bias against women" that

---

[19] Importers use Customs Form 7501 "Entry Summary" to "declare the duties owed for imported merchandise on Entry Summary lines." *See* Decl. Brandon Lord (Mar. 6, 2026) ¶ 7, *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 31. For all merchandise subject to IEEPA duties, importers reported "any applicable [IEEPA] provisions" on the relevant Entry Summary line. *See id.* ¶ 8.

Liquidation or reliquidation of entries without regard to IEEPA duties will result in the removal of the amount representing IEEPA duties from the Entry Summary. As noted, this will be done mechanically by Customs' computers, and the resulting refund will follow automatically. *See* 19 U.S.C. § 1505(b) ("The Customs Service shall . . . refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation."). Essentially, this will be done on liquidation or reliquidation when Customs changes a positive number (i.e., the amount of IEEPA duties originally imposed) to zero and adds up the remaining duties on the other lines of the Entry Summary. The resulting sum will then be compared to the amount of estimated deposits actually collected by Customs (a number stored in Customs' computers), and any excess will be refunded to the importer as refunds of IEEPA duties, with interest.

"infect[ed] . . . the discretionary decision making of each one of Wal-Mart's thousands of managers." 564 U.S. at 342, 345. Before the District Court, the plaintiffs moved for class certification pursuant to Rule 23(b)(2), which was granted. *Id.* at 342. The issue before the Supreme Court was "whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2)." *Id.*

In concluding that "claims for backpay were improperly certified" under (b)(2), the Supreme Court stated that claims for monetary relief "may not" be certified under (b)(2) "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 360. The Court further explained that "the combination of individualized and classwide relief in a (b)(2) class is . . . inconsistent with the structure of Rule 23(b)." *Id.* at 361. The Court noted that "[w]hen the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.'" *Id.* at 366 (alteration in original) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977)). Thus, "because the necessity of that [additional] litigation will prevent backpay from being 'incidental' to the classwide injunction, [the plaintiffs'] class could not be certified even assuming, *arguendo*, that 'incidental' monetary relief can be awarded to a 23(b)(2) class."[20] *Id.* at 367.

The facts of *Wal-Mart* are readily distinguishable from those now before the court. Here, the court has not been asked to calculate individualized IEEPA refund claims, nor is there a need for the court to do so. Indeed, the only relief Plaintiff asks for from the court is an order directing Customs to liquidate or reliquidate entries without regard to IEEPA duties, as Customs has now

---

[20] The *Wal-Mart* holding is not dissimilar to that found in the previously discussed case of *Jamie S.*, where a class certification under Rule 23(b)(2) was found inappropriate because the relief sought would require "thousands of individual determinations." 668 F.3d at 499.

done millions of times. The resulting liquidation or reliquidation (and the calculation of any refund) would then be performed mechanically by Customs' computers.

It is, of course, the case that the purpose of Plaintiff's lawsuit is to secure a refund, and that the purpose of seeking class certification is to secure refunds for the proposed class members. Nonetheless, to the extent that the requested injunctive relief results in the refund of unlawfully collected and retained duties, those refunds would not render certification of an injunctive class under Rule 23(b)(2) inappropriate, because any such refunds, having been determined mechanically by a computer, would be incidental. Case law interpreting the word "incidental," as used by the Supreme Court, supports this conclusion.

For instance, in *Johnson v. Meriter Health Services Employee Retirement Plan*, Judge Posner concluded that monetary relief resulting from a declaration of rights is incidental when "the calculation of monetary relief will be mechanical, formulaic, [and] a task not for a trier of fact but for a computer program." 702 F.3d at 372. *Johnson* was a class action that involved several subclasses, each "seek[ing] a declaration of the rights of" members under the defendant's pension plan. *Id.* at 365. Each subclass sought, "at least initially, . . . a reformation of the [defendant's] pension plan—a declaration of the rights that the plan confers and an injunction ordering [the defendant] to conform the text of the plan to the declaration." *Id.* at 371. In holding that a Rule 23(b)(2) class was proper, Judge Posner stated that the "monetary relief will truly be merely 'incidental' to the declaratory and . . . injunctive relief," in that the "monetary relief will just be a matter of laying each class member's . . . records alongside the text of the reformed plan and computing the employee's entitlement." *Id.* This computation would be done simply "by subtracting the benefit already credited . . . to him from the benefit to which the reformed plan document entitles him." *Id.* To the extent that class members could claim additional benefits

following reformation of the plan, Judge Posner stated that "[t]hose benefits would not be damages. They would be the automatic consequence of a judicial order revising the [defendant's] plan." *Id.* at 369.

The present case is analogous. In *Learning Resources*, the Supreme Court declared that "IEEPA does not authorize the President to impose tariffs." 607 U.S. at 255. An order directing liquidation or reliquidation of entries without regard to IEEPA duties is an injunction "ordering [the Government] to conform . . . to th[at] declaration." *Johnson*, 702 F.3d at 371. The refund of IEEPA duties would simply be "the automatic consequence of a judicial order" directing the Government to liquidate or reliquidate entries, in accordance with the holding of *Learning Resources*. *Id.* at 369.

Furthermore, any refunds resulting from an injunction would be arrived at in much the same way as the monetary benefits in *Johnson*. Thus, "each class member's record" (a Form 7501, "Entry Summary") would be laid beside the law (i.e., the holding in *Learning Resources* that IEEPA does not authorize the President to impose tariffs), and any refund amounts will be computed, not by the court, but by "a computer program." The resulting refunds, then, will not be damages, but the "automatic consequence of a judicial order." *Johnson*, 702 F.3d at 372. Moreover, the order to liquidate or reliquidate entries without regard to IEEPA duties gives Customs the authority that it claims it needs to liquidate or reliquidate the proposed class's entries.

Accordingly, the court finds unpersuasive the Government's contention that the injunction Plaintiff seeks is actually "monetary—not injunctive—relief." Defs.' Resp. at 11. An order directing liquidation or reliquidation is squarely injunctive and non-monetary. An injunction "directs the defendant to act, or to refrain from acting in a specified way." Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution* § 2.9(1) (2d ed. 1993). "The mandatory injunction

orders an affirmative act or course of conduct." *Id.* An order directing the Government to liquidate or reliquidate entries does just that.

Last, the Government cites *AA Suncoast Chiropractic Clinic, P.A. v. Progressive American Insurance Co.* ("*AA Suncoast*") for the proposition that, for class certification to be appropriate under Rule 23(b)(2), the relief sought must be "geared toward preventing *future* harm." Defs.' Resp. at 12 (quoting *AA Suncoast*, 938 F.3d at 1175). An examination of that case, and those that follow it, reveals that the opinion's purpose was to discourage class claims, that were really seeking money damages, from masquerading as claims for injunctive relief under Rule 23(b)(2). *See AA Suncoast*, 938 F.3d at 1178 (explaining that "an injunction is not the right remedy in this case—indeed, it is not really the remedy that Suncoast's class is seeking"). While this may have been a concern in *AA Suncoast*, as Judge Posner found in *Johnson*, it is not a concern here. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (noting that Rule 23(b)(2) is appropriate if any incidental monetary relief "flows directly from liability to the class as a whole from claims forming the basis of injunctive or declaratory relief" (citation modified)).

In addition, the Government's citation of *AA Suncoast*, to support the proposition that the proposed class members do not have a reasonable likelihood of future harm, is inapposite. "Past exposure to [unlawful] conduct" can be sufficient to "demonstrate an injury in fact that warrants declaratory or injunctive relief" if it is "accompanied by 'continuing, present adverse effects.'" *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Many importers have entries that have yet to be liquidated. For these importers, there is a reasonable expectation of future harm that their entries will be liquidated with IEEPA duties. For importers with liquidated entries, there is nothing to indicate that Customs will voluntarily

reliquidate their entries and refund their unlawfully collected and thus unlawfully retained money. *See* Decl. Russell Wallace (June 23, 2026) ¶ 3, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 12-2 (explaining that the proposed class consists of "small businesses who cannot easily absorb the costs of the Government's illegal IEEPA tariffs, and whose businesses have been adversely affected").

So, the "continuing, present adverse effects" of the unlawful IEEPA tariffs on small businesses suffice to "demonstrate an injury in fact that warrants declaratory or injunctive relief." *Sullivan*, 920 F.3d at 408.

Therefore, the court finds that this case presents the kind of factual situation that is anticipated by Rule 23(b)(2): all class members share common questions, the law has been decided in their favor, and the relief requested will result in a complete and final remedy for all proposed class members.

## IV. USCIT Rule 23(g) Is Satisfied

Finally, Rule 23(g) requires that, in certifying a class, the court "must appoint class counsel." USCIT R. 23(g)(1). When considering whom to appoint, a court must consider "(1) the work prospective class counsel has done in investigating the claims at issue; (2) counsel's experience with class actions, complex litigation, and the types of claims at issue; (3) counsel's knowledge of the relevant law; and (4) the resources counsel will commit to representing the class." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113, 2016 WL 6542707, at *13 (D. Conn. Nov. 3, 2016) (citing FRCP 23(g)).

In considering these factors, there is no doubt that proposed class counsel will be able to "fairly and adequately represent the interests of the class." USCIT R. 23(g)(4). With the combined

counsel of Barnes, Richardson & Colburn, LLP and Lieff Cabraser Heimann & Bernstein, LLP, proposed class counsel have (1) extensive experience and knowledge in class actions and complex litigation, *see* Decl. Nicholas R. Diamand (June 23, 2026) ¶¶ 12-36, *Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 12-3, and (2) extensive experience in the traditional Customs cases that come before this Court, *id.* ¶¶ 9-11. Additionally, class counsel have dedicated considerable time and resources to investigating the claims in this case by investigating facts, preparing a thorough and detailed complaint, moving for class certification, consulting with numerous experts, participating in conferences, and arguing during hearings. *See id.* ¶¶ 3-8. Class counsel have given assurances that they will continue to devote the same effort and resources moving forward in this case.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion for class certification and appointment of class counsel, ECF No. 12, is granted; it is further

**ORDERED** that the following class is certified:

> All importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025, and February 19, 2026, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments.

This class definition shall apply for all purposes, including settlement; it is further

**ORDERED** that Plaintiff is hereby appointed as class representative; it is further

**ORDERED** that Plaintiff's counsel from Barnes, Richardson & Colburn, LLP and Lieff Cabraser Heimann & Bernstein, LLP are hereby appointed as class counsel; it is further

**ORDERED** that a closed conference with the parties will be held on October 13, 2026, at 3:00 p.m. Eastern time in person and via Webex. Case Management will provide conference details; and it is further

**ORDERED** that the parties shall confer and jointly submit, on or before October 22, 2026, a proposed scheduling order that will include, among other filing dates, the date by which the Government will answer or otherwise respond to the class action complaint.

/s/ Richard K. Eaton
Judge

Dated: October 8, 2026
New York, New York